# Exhibit B

**In the Superior Court of the State of Arizona**
**In and For the County of Maricopa**

# CV2014-014522

**CIVIL COVER SHEET - NEW FILING ONLY**
(Please Type or Print)

MICHAEL K. JEANES, CLERK
BY [signature] DEP
FILED
14 NOV 25 PM 3:57

Is Interpreter Needed? ___ Yes X No
If yes, language type: ______________
Attorney/Pro Per Signature [signature]
To the best of my knowledge, all information is true and correct.

Plaintiff's Attorney **Justin Henry**

Attorney Bar Number **027711**

Plaintiff's Name(s): (List all)
**David Gay**

Plaintiff's Address:
**c/o Levenbaum Trachtenberg PLC**
**362 N. Third Avenue, Phoenix, AZ 85003**

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All) **Almira D. Guderjohn and John Doe Guderjohn**

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT: ☐ Temporary Restraining Order ☐ Provisional Remedy ☐ OSC
☐ Election Challenge ☐ Employer Sanction ☐ Other ______________ (Specify)

☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.
(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

## NATURE OF ACTION

(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
**X Non-Death/Personal Injury**
☐ Property Damage
☐ Wrongful Death

**TORT NON-MOTOR VEHICLE:**
☐ Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort
☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation
☐ Other (Specify) ______________

**MEDICAL MALPRACTICE:**
☐ Physician M.D. ☐ Hospital
☐ Physician D.O ☐ Other

**CONTRACTS:**
☐ Account (Open or Stated)
☐ Promissory Note
☐ Foreclosure
☐ Buyer-Plaintiff
X Fraud
☐ Other Contract (i.e. Breach of Contract)
☐ Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
☐ Six to Nineteen Structures
☐ Twenty or More Structures

**OTHER CIVIL CASE TYPES:**
☐ Eminent Domain/Condemnation

**OTHER CIVIL CASE TYPES: (Continued)**
☐ Eviction Actions (Forcible and Special Detainers)

- [ ] Change of Name
- [ ] Transcript of Judgment
- [ ] Foreign Judgment
- [ ] Quiet Title
- [ ] Forfeiture
- [ ] Election Challenge
- [ ] NCC- Employer Sanction Action (A.R.S. §23-212)
- [ ] Injunction against Workplace Harassment
- [ ] Injunction against Harassment
- [ ] Civil Penalty
- [ ] Water Rights(Not General Stream Adjudication)
- [ ] Real Property
- [ ] Sexually Violent Person (A.R.S. §36-3704) (Except Maricopa County)
- [ ] Minor Abortion (See Juvenile in Maricopa County)
- [ ] Special Action Against Lower Courts (See lower court appeal cover sheet in Maricopa)

**UNCLASSIFIED CIVIL:**

- [ ] Administrative Review (See lower court appeal cover sheet in Maricopa)
- [ ] Tax Appeal

(All other tax matters must be filed in the AZ Tax Court)

- [ ] Declaratory Judgment
- [ ] Habeas Corpus
- [ ] Landlord Tenant Dispute- Other
- [ ] Restoration of Civil Rights (Federal)
- [ ] Clearance of Records (A.R.S. §13-4051)
- [ ] Declaration of Factual Innocence (A.R.S. §12-771)
- [ ] Declaration of Factual Improper Party Status
- [ ] Vulnerable Adult (A.R.S. §46-451)
- [ ] Tribal Judgment
- [ ] Structured Settlement (A.R.S. §12-2901)
- [ ] Attorney Conservatorships (State Bar)
- [ ] Unauthorized Practice of Law (State Bar)
- [ ] Out-of-State Deposition for Foreign Jurisdiction
- [ ] Secure Attendance of Prisoner
- [ ] Assurance of Discontinuance
- [ ] In-State Deposition for Foreign Jurisdiction
- [ ] Eminent Domain– Light Rail Only
- [ ] Interpleader– Automobile Only
- [ ] Delayed Birth Certificate (A.R.S. §36-333.03)
- [ ] Employment Dispute- Discrimination
- [ ] Employment Dispute-Other
- [ ] Other ______________________ (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- [ ] Antitrust/Trade Regulation
- [ ] Construction Defect with many parties or structures
- [ ] Mass Tort
- [ ] Securities Litigation with many parties
- [ ] Environmental Toxic Tort with many parties
- [ ] Class Action Claims
- [ ] Insurance Coverage Claims arising from the above-listed case types
- [ ] A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)

______________________________________________

______________________________________________

______________________________________________

Additional Defendant(s)

______________________________________________

______________________________________________

______________________________________________

MICHAEL K. JEANES
Clerk of the Superior Court
By Patrick Roe, Deputy
Date 11/25/2014 Time 16:00:56
Description Amount
-------- CASE# CV2014-014522 --------
CIVIL NEW COMPLAINT 319.00
TOTAL AMOUNT 319.00
Receipt# 24165520

Justin Henry (SBN #027711)
justinhenry@ltinjurylaw.com
**LEVENBAUM TRACHTENBERG, PLC**
362 North Third Avenue
Phoenix, Arizona 85003
Telephone (602) 271-0183
Facsimile (602) 271-4018

*Attorney for Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| DAVID GAY, individual,<br><br>Plaintiff,<br><br>v.<br><br>ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,<br><br>Defendant. | Case No. CV2014-014522<br><br>**COMPLAINT**<br><br>(Tort-Motor Vehicle)<br>(Fraudulent Transfer) |

Plaintiff, by and through undersigned counsel, and for his Complaint against Defendants alleges as follows:

1. Plaintiff is a single man.

2. Defendants Almira D. Guderjohn and John Doe Guderjohn are husband and wife, and all actions alleged herein were committed on behalf and for the benefit of their marital community.

3. John Does I-V, Jane Does I-V, Black Corporations I-V, and White Partnerships I-V, are fictitious Defendants, the true names or capacities, whether individual, corporate, or otherwise, are unknown to Plaintiff at this time, and Plaintiff therefore sues said

Defendants by such fictitious names and will ask the leave of this Court to amend this Complaint to show their true names and capacities when the same has been ascertained.

4. All Defendants herein have caused an event to occur in Maricopa County, State of Arizona, which event is the subject matter of the claims alleged in this Complaint. The amount in controversy exceeds the minimum jurisdictional amount required for Superior Court jurisdiction.

5. Venue and jurisdiction are proper in this Court.

6. On July 9, 2013, David Gay, riding a 2008 Yamaha motorcycle, was travelling westbound on West Deer Valley Road approaching its intersection with North 67th Avenue in Glendale, Arizona.

7. Defendant Almira D. Guderjohn, operating a 2009 Chevrolet Cobalt, was travelling eastbound on Deer Valley Road.

8. The intersection of West Deer Valley Road and North 67th Avenue is controlled by a traffic control device; specifically, it is controlled by a traffic light.

9. At all relevant times, the traffic signal for eastbound and westbound traffic on Deer Valley Road was green.

10. Plaintiff David Gay was heading westbound on Deer Valley Road at 67th Avenue when he lawfully entered the intersection on a green light.

11. At the same time, Defendant Guderjohn attempted a left turn from Deer Valley Road onto northbound 67th Avenue.

12. Defendant Almira D. Guderjohn failed to yield the right away when she attempted her left turn and turned directly in front of Plaintiff David Gay causing a collision between his motorcycle and her vehicle.

13. Defendant Almira D. Guderjohn's control, operation and use of her motor vehicle violated Arizona statutes for the protection of public safety, including, without limitation, A.R.S. § 28-772.

14. Defendant Almira D. Guderjohn's statute violation, as noted in the preceding paragraph, constitutes negligence *per se.*

15. As a direct and proximate result of the collision, David Gay suffered severe and permanent physical, emotional and economic injuries.

16. As a direct and proximate result of the collision, Plaintiff David Gay has suffered, and will in the future continue to suffer, pain and discomfort, and has undergone, and may in the future undergo, medical and hospital care and treatment.

17. As a direct and proximate result of the collision, Plaintiff David Gay incurred and will continue to incur medical expenses.

18. As a direct and proximate result of the collision, Plaintiff sustained general damages in an amount to be proven at trial.

19. Subsequent to the collision, Plaintiff David Gay made a claim with Safeco Insurance Company of America ("Safeco"), the motor vehicle insurance carrier for Defendant Almira Guderjohn.

20. At the time of the collision, Defendant Almira Guderjohn's Safeco policy provided liability coverage in the amount of $100,000.00 per person, subject to an aggregate limit of $300,000.00 per collision.

21. Plaintiff David Gay submitted a demand to Safeco offering to resolve the pending claims against Defendant Almira Guderjohn for the policy limits of $100,000.00 contingent upon Defendant Guderjohn executing an Affidavit of No Additional Insurance or Assets.

22. In response to the policy limits demand, Safeco offered to tender its policy limits in exchange for a general release on September 9, 2013. In addition, Safeco advised Defendant Guderjohn would not execute an Affidavit of No Additional Insurance or Assets.

23. Thereafter, Safeco advised Plaintiff David Gay to discuss the Affidavit of No Additional Insurance or Assets with counsel for Defendant Guderjohn, Joseph C. Dolan, Esquire at the Law Office of Joseph C. Dolan.

24. Mr. Dolan was advised Plaintiff David Gay intended to pursue personal contribution against Defendant Guderjohn in excess of the policy limits payment.

25. Mr. Dolan advised Plaintiff David Gay "[i]f you have a settlement proposal please put it in writing to my attention." *See* e-mail from Joseph Dolan, Esq. to Justin Henry, Esq., dated September 23, 2013, attached hereto as Exhibit 1.

26. Plaintiff David Gay, through counsel, advised Mr. Dolan he was not medically stable, but he would submit a settlement proposal when he was stable. *See* e-mail from Justin Henry, Esq. to Joseph Dolan, Esq., dated October 1, 2013, attached hereto as Exhibit 2.

27. Defendant Almira Guderjohn, through counsel, was on notice and clearly aware of the personal contribution (in excess of the available policy limits) claim being asserted against her by Plaintiff David Gay arising out of the July 9, 2013 collision.

28. Nearly one year later, while Plaintiff David Gay continued his long recovery from the serious injuries suffered, Jeffrey McKee, Esquire of Davis, McKee, PLLC, contacted Plaintiff David Gay, through counsel, advising Defendant Guderjohn was willing to execute an Affidavit discussing her personal assets.

29. Defendant Guderjohn executed the requested Affidavit. *See* Affidavit of Almira Guderjohn, dated September 25, 2014, attached hereto as Exhibit 3.

30. In the Affidavit, Defendant Guderjohn listed a parcel of real property located at 7101 West Beardsley Road, Unit 831, Glendale, Arizona 85308 ("Beardsley Properyt").

31. The Beardsley Property was purchased on or about August 13, 2014.

32. The Beardsley Property was purchased entirely with non-exempt assets of Defendant Guderjohn. *See* e-mail from Jeffrey McKee, Esq. to Justin Henry, Esq., dated September 30, 2014, attached hereto as Exhibit 4.

33. Defendant Almira Guderjohn converted her non-exempt assets in the Beardsley Property in an attempt to shield those funds from creditors, including but not limited to Plaintiff David Gay.

34. Defendant Almira Guderjohn acted with actual intent to hinder, delay or defraud creditors, including but not limited to Plaintiff David Gay, when she converted her non-exempt assets into the Beardsley Property.

35. As a result of the conversion of non-exempt assets, Defendant Almira Guderjohn is insolvent because her current assets are insufficient to pay the claims against her.

**COUNT ONE**

(Negligence as to Defendants Almira Guderjohn and John Doe Guderjohn)

36. Plaintiff incorporates by reference all previous allegations as though specifically set forth herein.

37. Defendant Guderjohn owed a duty to operate the vehicle under her control with reasonable care under the circumstances.

38. Defendant Guderjohn breached her duty to Plaintiff David Gay when she failed to yield the right-of-way, failed to control her speed and failed to control her vehicle causing a collision with Plaintiff David Gay's motorcycle.

39. As a direct and proximate result of Defendant Guderjohn's negligent conduct, Plaintiff David Gay suffered severe and permanent physical, emotional and economic injuries.

**COUNT TWO**

(Fraudulent Transfer as to Defendants Almira Guderjohn and John Doe Guderjohn)

40. Plaintiff incorporates by reference all previous allegations as though specifically set forth herein.

41. This is an action for equitable and other relief pursuant to the Uniform Fraudulent Transfer Act, A.R.S. § 44-1001, *et seq.*

42. Plaintiff David Gay acquired a claim against Defendant Almira Guderjohn on July 9, 2013 when she negligently caused him physical, emotional and economic injuries as a result of a motor vehicle collision.

43. Defendant Almira Guderjohn knew or should have known her liability insurance was insufficient to adequately indemnify her for the claims asserted by Plaintiff David Gay as a result of the July 9, 2013 collision.

44. Defendant Almira Guderjohn knew or should have known Plaintiff David Gay was pursuing a claim against her personal assets (over and above the available indemnification from Safeco) as a result of the claims asserted from the July 9, 2013 collision.

45. Defendant Almira Guderjohn transferred her non-exempt assets with actual intent to hinder, delay or defraud her creditors, including but not limited to Plaintiff David Gay, when she purchased the Beardsley Property.

46. As a result of the transfer of her non-exempt assets, Defendant Almira Guderjohn is insolvent and will be unable to pay the claims asserted by Plaintiff David Gay when they come due.

47. The transfer of Defendant Guderjohn's non-exempt assets into the Beardsley Property constitutes a fraudulent transfer in violation of A.R.S. § 44-1004(A)(1).

48. Plaintiff David Gay is entitled to relief from the fraudulent transfer pursuant to A.R.S. § 44-1007, including but not limited to (1) avoidance of the transfer to the extent necessary to satisfy Plaintiff David Gay's claim; (2) an attachment against the asset transferred, namely the Beardsley Property; (3) an injunction against further disposition by Defendant Almira Guderjohn of the Beardsley Property and any remaining non-exempt assets.

**WHEREFORE**, Plaintiff David Gay prays for judgment against Defendants as follows:

A. For general damages in a fair, just and reasonable sum in excess of the minimum jurisdictional limits of this Court;

B. For present and future medical expenses incurred by Plaintiff, in a sum according to proof;

C. For lost past and future wages, in a sum according to proof;

D. For pre-judgment interest on Plaintiff's liquidated damages claims;

E. For avoidance of the transfer;

F. For an attachment against the Beardsley Property in an amount sufficient to satisfy Plaintiff David Gay's claim;

G. For an injunction against further disposition by Defendant Almira Guderjohn of the Beardsley Property and any remaining non-exempt assets;

H. For Plaintiff's costs incurred herein;

I. For such other and further relief as this Court may deem just and proper under the circumstances.

DATED this 21 day of November, 2014.

LEVENBAUM TRACHTENBERG, PLC

Justin Henry
*Attorneys for Plaintiff*

**EXHIBIT 1**

**Justin Henry**

**From:** Joe Dolan <joe@jcdolan.com>
**Sent:** Monday, September 23, 2013 9:53 AM
**To:** Justin Henry
**Subject:** David Gay v. Guderjohn

Justin,

If you have a settlement proposal please put it in writing to my attention.

Joe Dolan
Law Office of Joseph C. Dolan
1650 N. 1st Avenue
Phoenix, Arizona 85003
602 495 6521
joe@jcdolan.com

# EXHIBIT 2

**Justin Henry**

**From:** Justin Henry
**Sent:** Tuesday, October 01, 2013 9:48 AM
**To:** 'Joe Dolan'
**Subject:** RE: David Gay v. Guderjohn

**JournalPM:** J

Thank you, Joe.

My client is not medically stable at this point. When he stabilizes, I will forward a demand package to your office.

Regards,

Justin

**Justin Henry**
Attorney

(800) 433-5336
LTinjurylaw.com

PHOENIX / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney-privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you.

---

**From:** Joe Dolan [mailto:joe@jcdolan.com]
**Sent:** Monday, September 23, 2013 9:53 AM
**To:** Justin Henry
**Subject:** David Gay v. Guderjohn

Justin,

If you have a settlement proposal please put it in writing to my attention.

Joe Dolan
Law Office of Joseph C. Dolan
1650 N. 1st Avenue

Phoenix, Arizona 85003
602 495 6521
joe@jcdolan.com

EXHIBIT 3

**AFFIDAVIT OF ALMIRA D. GUDERJOHN**

STATE OF ARIZONA      )
                         ) ss.
County of Maricopa     )

      I, Almira D. Guderjohn, being conscious of my duty to testify truthfully, and having first been duly sworn to do so, depose and say that I am of legal age, of sound mind, and have personal knowledge of the following facts:

1. My full name is Almira D. Guderjohn.

2. My date of birth is February 7, 1926.

3. My driver's license was issued to me by the State of Arizona. My driver's license number is D00246298.

4. My residence address is 7101 West Beardsley Road, Unit 831, Glendale, Arizona 85308.

5. I was involved in a motor vehicle collision with David Gay on July 9, 2013 at the intersection of Deer Valley Road and 67th Avenue in the City of Glendale, Maricopa County, Arizona.

6. On that date, I owned and operated a vehicle involved in the afore-mentioned collision. At that time, this motor vehicle was insured by Safeco Insurance under policy number Y7861140 providing for bodily injury liability coverage in the amount of $100,000.00 per person, subject to an aggregate limit of $300,000.00 per collision.

7. Other than the insurance policy described in the preceding paragraph, I had no other policy, including but not limited to excess insurance coverage, umbrella insurance coverage, catastrophe or similar coverage, or any other insurance that would have provided any liability coverage for the above-mentioned collision.

8. I was not working for any corporation, partnership, proprietorship, or individual at the time of the afore-mentioned collision, and I was not performing any job-related duties.

9. I have an ownership interest in the following real property (list address or description and the type of interest):

Condominium at:
7101 West Beardsley Road, Unit 831
Glendale, AZ 85308

10. The following is a complete list of my bank accounts, deposits, securities, and other assets, and the present balance of each is as follows:

   a. Two accounts at Wells Fargo Bank: Social Security (100% exempt) and Pension Funds (100% exempt);
   b. Two accounts at Sunwest Federal Credit Union: Checking Account ($100 balance-exempt) and Survivor Benefit Annuity (100% exempt); and
   c. Four accounts with AXA Advisors: IRA's and Annuities (100% exempt).

11. I have an ownership interest in the following personal property, including but not limited to motor vehicles and boats, and the present value of each is as follows:

   a. Chevrolet Cruze- jointly titled with daughter (100% exempt); and
   b. Household goods and furnishings (FMV $4,500- 100% exempt).

12. I have no non-exempt assets, under the laws of the State of Arizona, which could be applied to satisfy any judgment rendered in Almira Guderjohn favor against me concerning the satisfaction of damages resulting from the afore-mentioned collision.

13. I have conducted a due and diligent investigation to confirm the accuracy of the information contained in this Affidavit. This information is complete, true and accurate to the best of my knowledge, information and belief.

14. I understand David Gay is relying on the truthfulness of these statements in considering whether to settle his claims of damages arising from the afore-mentioned collision. Should information provided in this Affidavit be false and/or additional insurance is in fact available to pay for any damages, I expressly agree any settlement agreement and release of claims may be set aside as void and enforceable.

FURTHER AFFIANT SAYETH NAUGHT.

Executed this 25th day of September, 2014.

[signature]
Almira D. Guderjohn

SUBSCRIBED AND SWORN TO before me this 25th day of September, 2014 by Almira D. Guderjohn.

[signature]
Notary Public

My Commission Expires:

Notary Public State of Arizona
Maricopa County
Jeffrey A McKee
My Commission Expires 11/01/2015

**EXHIBIT 4**

**Justin Henry**

**From:** Jeff Mckee <jmckee@dmflaw.com>
**Sent:** Tuesday, September 30, 2014 11:04 AM
**To:** Justin Henry
**Subject:** Almira Guderjohn

Justin: To follow up on our conversation from last week, this is to confirm that Mrs. Guderjohn purchased her homestead with funds from a variety of sources (accounts), all of which were non-exempt prior to purchasing the homestead. Based on my review of the case law under Arizona's Uniform Fraudulent Transfer Act as well as Arizona's exemption statutes, Mrs. Guderjohn's acquisition of the homestead does not constitute a fraudulent transfer, and moreover she is entitled to utilize and enjoy her exemptions under Arizona law. As I said last week, if you have some authority that contradicts our position, please send it to me to review. Thank you.

Jeffrey A. McKee
DAVIS, McKEE, P.L.L.C.
1650 North First Avenue
Phoenix, AZ 85003
Phone: 602-266-7667
Fax: 602-277-9839
Email: jmckee@dmflaw.com

MICHAEL K. JEANES, CLERK
BY DEP
FILED

14 NOV 25 PM 3:58

Justin Henry (SBN #027711)
justinhenry@ltinjurylaw.com
LEVENBAUM TRACHTENBERG, PLC
362 North Third Avenue
Phoenix, Arizona 85003
Telephone (602) 271-0183
Facsimile (602) 271-4018

*Attorney for Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| DAVID GAY, individual,<br><br>Plaintiff,<br><br>v.<br><br>ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,<br><br>Defendant. | Case No. CV2014-014522<br><br>**CERTIFICATE OF COMPULSORY ARBITRATION**<br><br>(Tort-Motor Vehicle)<br>(Fraudulent Transfer) |

Plaintiff, by and through counsel undersigned, hereby certifies that he knows the dollar limits and any other limitations set forth by the local rules of practice for the Superior Court, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

DATED this 21 day of November, 2014.

LEVENBAUM TRACHTENBERG, PLC

By ____________________
Justin Henry
Attorney for Plaintiff

MICHAEL K. JEANES, CLERK
BY [signature] DEP
FILED

14 NOV 25 PM 3:58

Justin Henry (SBN #027711)
justinhenry@ltinjurylaw.com
LEVENBAUM TRACHTENBERG, PLC
362 North Third Avenue
Phoenix, Arizona 85003
Telephone (602) 271-0183
Facsimile (602) 271-4018

*Attorney for Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| DAVID GAY, individual,<br><br>Plaintiff,<br><br>v.<br><br>ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,<br><br>Defendant. | Case No. CV2014-014522<br><br>**RULE 38 DEMAND FOR JURY TRIAL**<br><br>(Tort-Motor Vehicle)<br>(Fraudulent Transfer) |

Pursuant to Rule 38(b), Arizona Rules of Civil Procedure, Plaintiff David Gay hereby respectfully requests a jury trial.

Dated this 21 day of November, 2014.

LEVENBAUM TRACHTENBERG, PLC

[signature]
Justin Henry
*Attorney for Plaintiff*

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
S. Bagnall, Deputy
2/11/2015 9:49:00 AM
Filing ID 6399270

BURCH & CRACCHIOLO, P.A.
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

Keith A. Olbricht, SBA #020615
kolbricht@bcattorneys.com
Attorneys for Defendant Almira D. Guderjohn

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| DAVID GAY,<br><br>Plaintiff,<br><br>v.<br><br>ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,<br><br>Defendants. | Case No. CV2014-014522<br><br>**DEFENDANT'S ANSWER**<br><br>(Assigned to Honorable Douglas Gerlach) |

For her Answer to the Complaint, Defendant Almira Guderjohn ("Defendant"), by and through counsel undersigned, admits, denies and alleges as follows:

1. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 1 of the Complaint, and therefore denies the same.

2. Defendant denies the allegations contained in paragraph 2 of the Complaint.

3. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 3 of the Complaint, and therefore denies the same.

4. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 4 of the Complaint, and therefore denies the same.

5.     Defendant admits the allegations contained in paragraph 5 of the Complaint.

6.     Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 6 of the Complaint, and therefore denies the same.

7.     Defendant admits the allegations contained in paragraph 7 of the Complaint.

8.     Defendant admits the allegations contained in paragraph 8 of the Complaint.

9.     Defendant denies the allegations contained in paragraph 9 of the Complaint.

10.     Defendant denies the allegations contained in paragraph 10 of the Complaint.

11.     Defendant denies the allegations contained in paragraph 11 of the Complaint.

12.     Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.     Defendant denies the allegations contained in paragraph 13 of the Complaint.

14.     Defendant denies the allegations contained in paragraph 14 of the Complaint.

15.     Defendant denies the allegations contained in paragraph 15 of the Complaint.

16.     Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.     Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.     Defendant denies the allegations contained in paragraph 18 of the

Complaint.

19. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 19 of the Complaint, and therefore denies the same.

20. Defendant admits the allegations contained in paragraph 20 of the Complaint.

21. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 21 of the Complaint, and therefore denies the same.

22. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 22 of the Complaint, and therefore denies the same.

23. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 23 of the Complaint, and therefore denies the same.

24. This allegation appears to require no response from Defendant. To the extent that a response is required, Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 24 of the Complaint, and therefore denies the same.

25. This allegation appears to require no response from Defendant. To the extent that a response is required, Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 25 of the Complaint, and therefore denies the same.

26. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 26 of the Complaint, and therefore denies the same.

27. Defendant denies the allegations contained in paragraph 27 of the Complaint.

28. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 28 of the Complaint, and therefore denies the same.

29. Defendant admits the allegations contained in paragraph 29 of the Complaint.

30. Defendant admits the allegations contained in paragraph 30 of the Complaint.

31. Defendant denies the allegations contained in paragraph 31 of the Complaint.

32. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 32 of the Complaint, and therefore denies the same.

33. Defendant denies the allegations contained in paragraph 33 of the Complaint.

34. Defendant denies the allegations contained in paragraph 34 of the Complaint.

35. Defendant denies the allegations contained in paragraph 35 of the Complaint.

36. This Defendant incorporates by reference responses to the allegations contained in paragraphs 1-35 of the Complaint above as though fully set forth herein.

37. Defendant admits the allegations contained in paragraph 37 of the Complaint.

38. Defendant denies the allegations contained in paragraph 38 of the Complaint.

39. Defendant denies the allegations contained in paragraph 39 of the Complaint.

40. This Defendant incorporates by reference responses to the allegations contained in paragraphs 1-39 of the Complaint above as though fully set forth herein.

41. This allegation appears to require no response from Defendant. To the extent that a response is required, Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 41 of the Complaint, and therefore denies the same.

42. Defendant denies the allegations contained in paragraph 42 of the Complaint.

43. Defendant denies the allegations contained in paragraph 43 of the Complaint.

44. Defendant denies the allegations contained in paragraph 44 of the Complaint.

45. Defendant denies the allegations contained in paragraph 45 of the Complaint.

46. Defendant is without sufficient information or knowledge to admit or deny the allegations contained in paragraph 46 of the Complaint, and therefore denies the same.

47. Defendant denies the allegations contained in paragraph 47 of the Complaint.

48. Defendant denies the allegations contained in paragraph 48 of the Complaint.

## GENERAL DENIAL

Defendant denies each and every allegation contained in the Complaint not specifically admitted or otherwise pled to herein.

## AFFIRMATIVE DEFENSES

Defendant hereby asserts the following affirmative defenses:

A. Contributory negligence/comparative fault by plaintiff or others;

B. Assumption of risk;

C. Failure to state a claim/cause of action;

D. Statute of limitations;

E. Failure to mitigate damages;

F. Lack of duty;

G. Unavoidable accident; and

H. Without waiving objection, any additional affirmative defenses which become apparent during the course of discovery in this matter, including but not limited to, the additional affirmative defenses set forth in Ariz. R. Civ. P. 8(c) and 12(b).

WHEREFORE, having fully answered the allegations of the Complaint, Defendant prays that:

A. The Complaint be dismissed with prejudice and that plaintiff take nothing thereby;

B. Defendant be awarded her attorneys' fees, pursuant to A.R.S. § 12-341.01;

C. Defendant be awarded her costs for this lawsuit; and

D. For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 11th day of February, 2015.

**BURCH & CRACCHIOLO, P.A.**

By /s/ *Keith A. Olbricht*
Keith A. Olbricht
702 E. Osborn Road, Suite 200
Phoenix, AZ 85014
*Attorneys for Defendant Almira D. Guderjohn*

**ORIGINAL** of the foregoing e-filed this 11th day of February, 2015, with:

Maricopa County Superior Court

**COPY** of the foregoing mailed this 11th day of February, 2015, to:

Honorable Douglas Gerlach
Maricopa County Superior Court
East Court Blvd - 513
101 W. Jefferson St.
Phoenix, AZ 85003

. . .

Justin Henry
Levenbaum Trachenberg, PLC
362 N. Third Avenue
Phoenix, AZ 85003
*Attorneys for Plaintiffs*

*/s/ Patti Lesser*
Patti Lesser

Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
04/29/2015
by Superior Court Admin on behalf of Clerk of the Superior Court

Ct. Admin
Deputy

04/25/2015

COURT ADMINISTRATION

**CASE NUMBER:** CV2014-014522

**David Gay**

**V.**

**Almira D Guderjohn**

---

The Judge assigned to this action is the Honorable Douglas Gerlach

150 DAY ORDER

This action was filed more than 150 days ago. If there is any conflict between this order and any order from the assigned judge, the assigned judge's order governs. This order provides notice of requirements, pursuant to Rule 38. I, Arizona Rules of Civil Procedure. Rule 38. 1 applies to all civil actions including those cases subject to and in arbitration, except cases listed under Rule 16 (b) Arizona Rules of Civil Procedure.

IT IS HEREBY ORDERED:

Rule 38. I will be strictly enforced. The parties shall e-file the following documents:

1. A Joint Report and Proposed Joint Scheduling Order, Rule 16 (b) (c) or an Appeal from Arbitration on or before 8/21/2015 12:00:00AM. If Rule 38.1 is not complied with, the case will be placed on the Dismissal Calendar on the date shown above and it will be dismissed pursuant to Rule 38.1(f) without further notice, on or after 10/21/2015 12:00:00AM. *

2. All parties shall submit their specific objections to witnesses and exhibits listed by other parties in the Joint Pretrial Statement. Reserving all objections to witnesses or exhibits until time of trial will not be permitted.

IF THIS IS AN ARBITRATION CASE. If this case is subject to mandatory arbitration, Rule 74 (b) of the Arizona Rules of Civil Procedure establishes the time for beginning the arbitration hearing. In light of the deadlines established by Rule 38. I (d), counsel should be sure that arbitrators are timely' appointed and that arbitrators complete the arbitration process within the time provided under Rule 38.1(f). As Rule 77(a) of the Arizona Rules of Civil Procedure provides if parties wish to appeal the arbitration decision, they shall file an Appeal from Arbitration and Motion to Set for Trial within 20 days after either the filing of the award or the notice of the arbitrator's decision becomes an award under Rule 76(b), whichever comes first.

Office Distribution

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

**FILED**
04/29/2015
by Superior Court Admin on behalf of Clerk of the Superior Court

04/25/2015

COURT ADMINISTRATION

Ct. Admin
Deputy

**CASE NUMBER:** CV2014-014522

**David Gay**

**V.**

**Almira D Guderjohn**

---

EXTENSIONS OF TIME TO SERVE PROCESS. If there has been an extension of time to serve the summons and complaint, (a) Rule 38. l(f) still applies and (b) some parties and counsel may not receive a copy of this order. Plaintiff should send copies to each of them and retain a copy of the transmittal letter.

ALTERNATIVE DISPUTE RESOLUTION. Pursuant to Rule 1 6 (b), (c) Arizona Rules of Civil Procedures, counsel for the parties, or the parties if not represented by counsel shall confer regarding the feasibility of resolving the parties' dispute through alternative dispute resolution methods such as mediation or arbitration with a mediator or arbitrator agreed to by the parties. Counsel shall discuss with their clients the resolution of the dispute through an alternative dispute resolution method prior to the conference with opposing counsel.

*RELIEF FROM RULE 38.1 DEADLINES;CONTINUANCES ON THE DISMISSAL CALENDAR. The rules require a Joint Report and Joint Scheduling Order within 270 days after the action is filed.

For good cause, the assigned judge may extend time for dismissal or continue the action on the Dismissal Calendar to an appropriate date. If an arbitration hearing has been held, or is set in the near future, the date of that hearing should be included in any motion to extend Rule 38.1 deadlines or to continue on the Dismissal Calendar. Stipulations to continue and delays for settlement negotiations are not good cause. Except in extraordinary cases, the court will not grant trial continuances bused on late discovery.

# Superior Court of Maricopa County - integrated Court Information System

## Endorsee Party Listing

Case Number: CV2014-014522

| Party Name | Attorney Name | |
|---|---|---|
| David Gay | Justin Henry | Bar ID: 027711 |
| Almira D Guderjohn | Keith A Olbricht | Bar ID: 020615 |

Office Distribution

# SUPERIOR COURT OF ARIZONA
# MARICOPA COUNTY

**FILED**
05/27/2015
by Superior Court Admin on behalf of Clerk of the Superior Court

05/27/2015

COURT ADMINISTRATION

Ct. Admin
Deputy

**Case Number: CV2014-014522**

**David Gay**

**V.**

**Almira D Guderjohn**

---

The Honorable Douglas Gerlach is assigned to this action.

100 Day Notice

All parties are on notice that 100 days has elapsed since the filing of the last answer in this matter.

Pursuant to Rule 16, Ariz. R. Civ. P., the parties shall submit a Joint Report and Scheduling Order for the court's approval. Parties shall refer to Rule 16(c) of the AZ Rules of Civil Procedures for the format of the Joint Report and Scheduling Order.

Please note that the court may, at its discretion, direct the parties and their attorneys to participate in a pretrial conference Any party interested in scheduling a pretrial conference should file a written request.

Superior Court of Maricopa County - integrated Court Information System
**Endorsee Party Listing**
Case Number: CV2014-014522

| Party Name | Attorney Name | |
|---|---|---|
| David Gay | Justin Henry | Bar ID: 027711 |
| Almira D Guderjohn | Keith A Olbricht | Bar ID: 020615 |

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
T. Hays, Deputy
6/16/2015 4:42:00 PM
Filing ID 6671179

Justin Henry (SBN #027711)
justinhenry@ltinjurylaw.com
LEVENBAUM TRACHTENBERG, PLC
362 North Third Avenue
Phoenix, Arizona 85003
Telephone (602) 271-0183
Facsimile (602) 271-4018

*Attorney for Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

DAVID GAY, an individual,

Plaintiff,

v.

ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,

Defendant.

Case No. CV2014-014522

**PLAINTIFF'S MOTION TO ADD PLAINTIFFS PURSUANT TO ARCP 19**

(Assigned to the Honorable Douglas Gerlach)

Plaintiff David Gay, by and through undersigned counsel, hereby moves this Court for an Order permitting Plaintiff Gay to add his health care insurer, C.H. Robinson Worldwide, Inc. Welfare Benefit Plan, and its Plan Administrator, C.H. Robinson Worldwide, Inc. (collectively "CH Robinson"), as additional plaintiffs pursuant to Rule 19(a) of the Arizona Rules of Civil Procedure. This Motion is supported by the following Memorandum of Points and Authorities and all pleadings of record, which are incorporated herein by reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. BACKGROUND

### a. The collision and Personal Injury Recovery

On July 9, 2013, David Gay was riding his motorcycle westbound on West Deer Valley Road approaching its intersection with North 67th Avenue in Glendale, Arizona. Defendant Almira Guderjohn, operating a 2009 Chevrolet Cobalt, was driving eastbound on Deer Valley Road intending to turn left onto northbound 67th Avenue. When Defendant Almira Guderjohn

attempted her left turn at the intersection, she failed to ensure it was safe to do so, causing a collision with David Gay's motorcycle.

David suffered severe and extensive personal injuries as a result of the crash. Generally, David suffered a left scaphoid fracture, right femur fracture, right humerus fracture, and a right upper extremity peripheral nerve injury likely resulting in near complete loss of function in his right arm/wrist. David underwent numerous surgeries, and is likely to require additional surgeries in the future in an attempt to restore wrist and finger function in his right hand.

On July 12, 2013, David retained Levenbaum Trachtenberg, PLC ("LT") to represent him for the personal injuries he sustained in the July 9, 2013 collision. Subsequently, LT opened a liability claim with Safeco Insurance, the liability insurance carrier. After submitting a policy limits demand, contingent on execution of an affidavit of no additional insurance or assets, Safeco Insurance agreed to tender its policy limits of $100,000.00 to David Gay in exchange for a general release of liability. Safeco, however, advised Defendant Guderjohn refused to execute the requested affidavit. Accordingly, the parties were unable to resolve the personal injury claim.

Subsequently, Defendant Guderjohn used non-exempt personal assets to purchase real estate on August 13, 2014. Shortly thereafter, David Gay filed this action alleging causes of action for tort and violations of the Uniform Fraudulent Transfer Act against Defendant Guderjohn. During the course of the lawsuit, David Gay served an Offer of Judgment on Defendant Guderjohn and, after negotiations, the parties have reached a settlement (the settlement agreement has not yet been executed) in the amount of $150,000.00, consisting of the $100,000.00 policy limits from Safeco and an additional $50,000.00 from Defendant Guderjohn's personal assets.

Following the Arizona Court of Appeals' decision in *Midtown Medical Group, Inc. v. Farmers Ins. Group*, 235 Ariz. 593, 334 P.3d 1252 (App. 2014), a condition of the proposed settlement agreement requires David Gay to disclose all outstanding potential lien claims against the recovery. Further, the proposed settlement agreement requires all liens to be negotiated, if valid, and disclosed to Defendant Guderjohn. Finally, upon reaching a resolution with any lienholder, Defendant Guderjohn, through counsel, will issue separate checks to each individual

lienholder. Thus, a determination of the validity and amount of all alleged liens is necessary.

**b. The Health Plan's Lien Claim**

David Gay's mother, Nancy Gay, was employed at C.H. Robinson Worldwide, Inc. As part of her employment, she was offered, and purchased, group health insurance through an employee welfare plan ostensibly provided pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The employee welfare benefit plan providing the group health insurance, among other things, is called the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan (the "Plan"). David Gay was a covered dependent under the terms of the Plan.

The Plan has paid $177,045.26 in medical expenses incurred as a result of the July 9, 2013 collision on behalf of David Gay. On February 7, 2014, Optum, acting on behalf of the Plan, mailed a letter to LT alleging the Plan possessed subrogation and/or reimbursement rights against any potential recovery obtained related to the July 9, 2013 collision. According to the Plan, (1) it possesses a "first priority right" to any settlement funds obtained by David Gay essentially providing the entire settlement will be paid to the Plan and (2) David cannot settle his claims against Defendant Guderjohn without the written approval from the Plan (as it does not fully satisfy its lien). While David Gay disputes the validity and enforceability of the Plan's lien claim, it continues to assert it is entitled to full reimbursement of its alleged lien claim. Further, under the terms of the proposed settlement agreement, David Gay cannot finalize the settlement until a resolution has been reached regarding the Plan's purported lien.

**LEGAL STANDARD**

Rule 19 provides, in pertinent part:

> A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede the person's ability to protect that interest (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Ariz.R.Civ.P. 19(a).

Here, CH Robinson should be joined as a party under either prong of the requirements for joinder. The only issue remaining in this action is determining the validity of any lien claims against the proposed settlement. Yet, complete relief cannot be accorded among those already parties without the cooperation and participation of the Plan. According to the Plan, David Gay cannot do anything without written approval from the Plan. Even if written approval from the Plan was not required, David cannot attempt to allocate the proposed settlement as the Plan claims it is entitled to first priority reimbursement essentially entitling it to the entire settlement. As a result, not only is David precluded from finalizing the settlement, but all other remaining lienholders are precluded from negotiating or compromising their lien claims. Accordingly, joinder of the Plan is necessary under Ariz.R.Civ.P. 19(a)(1).

Joinder is also necessary under Rule 19(a)(2). The Plan is asserting an equitable lien over any recovery in this action by David Gay. Thus, it clearly claims an interest related to the subject of this action. Further, disposition of this action in the Plan's absence will, as a practical matter, impede its ability to protect its interest and will leave Defendant Guderjohn (as a potentially liable party to alleged subrogation rights) and Plaintiff Gay subject to a substantial risk of incurring multiple obligations. Thus, joinder of the Plan is required under Ariz.R.Civ.P. 19(a)(2).

**CONCLUSION**

Based on the foregoing, Plaintiff David Gay respectfully requests this Court enter an Order permitting Plaintiff to add C.H. Robinson Worldwide, Inc. and the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan as additional Plaintiffs pursuant to Rule 19 of the Arizona Rules of Civil Procedure.

Respectfully submitted this 16th day of June, 2015.

**LEVENBAUM TRACHTENBERG, PLC**

/s/ Justin Henry
Justin Henry
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing e-filed this 16th day of June, 2015, with COPIES mailed to:

Keith A. Olbricht, Esq.
**BURCH & CRACCHIOLO, PA**
702 East Osborn Road, Suite 200
Phoenix, Arizona 85014
*Attorneys for Defendant Guderjohn*

C.H. Robinson Worldwide, Inc. Welfare Benefit Plan
c/o C.H. Robinson Worldwide, Inc.
14701 Charlson Road, Suite 1600
Eden Prairie, Minnesota 55347
*Plan Administrator*

/s/ Lisa Balbini

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
D. Sandoval, Deputy
6/30/2015 12:31:00 PM
Filing ID 6698671

**BURCH & CRACCHIOLO, P.A.**
702 E. OSBORN ROAD, SUITE 200
PHOENIX, AZ 85014
TELEPHONE 602.274.7611

Keith A. Olbricht, SBA #020615
kolbricht@bcattorneys.com
Attorneys for Defendant Almira D. Guderjohn

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| DAVID GAY,<br><br>Plaintiff,<br><br>v.<br><br>ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,<br><br>Defendants. | Case No. CV2014-014522<br><br>**DEFENDANT'S JOINDER TO PLAINTIFF'S MOTION TO ADD PLAINTIFFS PURSUANT TO ARCP 19**<br><br>(Assigned to Honorable Douglas Gerlach) |

For the legal and factual reasons asserted in Plaintiff's Motion to Add Plaintiffs filed on June 16, 2015, Defendant Guderjohn hereby joins said motion.

DATED this 30th day of June, 2015.

**BURCH & CRACCHIOLO, P.A.**

By */s/ Keith A. Olbricht*
Keith A. Olbricht
702 E. Osborn Road, Suite 200
Phoenix, AZ 85014
*Attorneys for Defendant Almira D. Guderjohn*

**ORIGINAL** of the foregoing e-filed this 30th day of June, 2015, with:

Clerk of the Court
Maricopa County Superior Court

**COPY** of the foregoing mailed this 29th day of June, 2015, to:

Justin Henry
Levenbaum Trachenberg, PLC
362 N. Third Avenue
Phoenix, AZ 85003
*Attorneys for Plaintiffs*

*/s/ Kami Kline*



Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
07/09/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2014-014522 07/07/2015

HONORABLE DOUGLAS GERLACH

CLERK OF THE COURT
C. Fitch
Deputy

DAVID GAY JUSTIN HENRY

v.

ALMIRA D GUDERJOHN KEITH A OLBRICHT

**RULING**

The Court has received and reviewed Plaintiff's Motion to Add Plaintiffs Pursuant to ARCP 19, filed on June 16, 2015. Good cause having been shown,

**IT IS ORDERED** granting Plaintiff's Motion to add Plaintiffs Pursuant to ARCP 19.

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
T. Hays, Deputy
8/7/2015 3:28:00 PM
Filing ID 6783804

Justin Henry (SBN #027711)
justinhenry@ltinjurylaw.com
LEVENBAUM TRACHTENBERG, PLC
362 North Third Avenue
Phoenix, Arizona 85003
Telephone (602) 271-0183
Facsimile (602) 271-4018

*Attorney for Plaintiff*

**SUPERIOR COURT OF ARIZONA**

**COUNTY OF MARICOPA**

DAVID GAY, an individual,

Plaintiff,

v.

ALMIRA D. GUDERJOHN and JOHN DOE GUDERJOHN, wife and husband; JOHN DOES I-V and JANE DOES I-V; and WHITE PARTNERSHIPS I-V,

Defendant.

Case No. CV2014-014522

**PLAINTIFF DAVID GAY'S MOTION TO DETERMINE THE VALIDITY OF PLAINTIFF C.H. ROBINSON WORLDWIDE, INC. WELFARE BENEFIT PLAN'S LIEN RIGHTS**

(Assigned to the Honorable Douglas Gerlach)

(Oral Argument Requested)

Plaintiff David Gay, by and through undersigned counsel, hereby moves this Court for an Order determining the nature and extent, if any, of Plaintiff C.H. Robinson Worldwide, Inc. Welfare Benefit Plan's alleged subrogation and/or reimbursement rights pursuant to Rule 7.1 of the Arizona Rules of Civil Procedure. This Motion is supported by the following Memorandum of Points and Authorities and all pleadings of record, which are incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### a. The collision and Personal Injury Recovery

On July 9, 2013, David Gay was riding his motorcycle westbound on West Deer Valley Road approaching its intersection with North 67th Avenue in Glendale, Arizona. Defendant Almira Guderjohn, operating a 2009 Chevrolet Cobalt, was driving eastbound on Deer Valley Road intending to turn left onto northbound 67th Avenue. When Defendant Almira Guderjohn attempted her left turn at the intersection, she failed to ensure it was safe to do so, causing a

collision with David Gay's motorcycle.

David suffered severe and extensive personal injuries as a result of the crash.  Generally, David suffered a left scaphoid fracture, right femur fracture, right humerus fracture, and a right upper extremity peripheral nerve injury likely resulting in near complete loss of function in his right arm/wrist.   David underwent numerous surgeries, and is likely to require additional surgeries in the future in an attempt to restore wrist and finger function in his right hand.

On July 12, 2013, David retained Levenbaum Trachtenberg, PLC ("LT") to represent him for the personal injuries he sustained in the July 9, 2013 collision.  Subsequently, LT opened a liability claim with Safeco Insurance, the liability insurance carrier.  After submitting a policy limits demand, contingent on execution of an affidavit of no additional insurance or assets, Safeco Insurance agreed to tender its policy limits of $100,000.00 to David Gay in exchange for a general release of liability.   Safeco, however, advised Defendant Guderjohn refused to execute the requested affidavit.  Accordingly, the parties were unable to resolve the personal injury claim.

Subsequently, Defendant Guderjohn used non-exempt personal assets to purchase real estate on August 13, 2014.  Shortly thereafter, David Gay filed this action alleging causes of action for tort and violations of the Uniform Fraudulent Transfer Act against Defendant Guderjohn.  During the course of the lawsuit, David Gay served an Offer of Judgment on Defendant Guderjohn and, after negotiations, the parties have reached a settlement (the settlement agreement has not yet been executed) in the amount of $150,000.00, consisting of the $100,000.00 policy limits from Safeco and an additional $50,000.00 from Defendant Guderjohn's personal assets.

Following the Arizona Court of Appeals' decision in *Midtown Medical Group, Inc. v. Farmers Ins. Group*, 235 Ariz. 593, 334 P.3d 1252 (App. 2014), a condition of the proposed settlement agreement requires David Gay to disclose all outstanding potential lien claims against the recovery.  Further, the proposed settlement agreement requires all liens to be negotiated, if valid, and disclosed to Defendant Guderjohn.  Finally, upon reaching a resolution with any lienholder, Defendant Guderjohn, through counsel, will issue separate checks to each individual lienholder.  Thus, a determination of the validity and amount of all alleged liens is necessary.

**b. The Health Plan's Lien Claim**

David Gay's mother, Nancy Gay, was employed at C.H. Robinson Worldwide, Inc. As part of her employment, she was offered, and purchased, group health insurance through an employee welfare plan ostensibly provided pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The employee welfare benefit plan providing the group health insurance, among other things, is called the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan (the "Plan"). David Gay was a covered dependent under the terms of the Plan.

The Plan has paid $177,045.26 in medical expenses incurred as a result of the July 9, 2013 collision on behalf of David Gay. On February 7, 2014, Optum, acting on behalf of the Plan, mailed a letter to LT alleging the Plan possessed subrogation and/or reimbursement rights against any potential recovery obtained related to the July 9, 2013 collision. According to the Plan, (1) it possesses a "first priority right" to any settlement funds obtained by David Gay essentially providing the entire settlement will be paid to the Plan and (2) David cannot settle his claims against Defendant Guderjohn without the written approval from the Plan (as it does not fully satisfy its lien).

In an attempt to determine whether the Plan possessed valid and enforceable lien rights, David Gay sent a written request for plan documents to the Plan Administrator for the Plan pursuant to 29 U.S.C. § 1024 requesting, among other things, the written instrument required by 29 U.S.C. § 1102 and the Summary Plan Description ("SPD") required by 29 U.S.C. § 1022. In response, the Plan Administrator merely provided the SPD for the Plan. *See* Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc., attached hereto as Exhibit 1. Therefore, a follow-up letter was sent to the Plan Administrator requesting the missing documents. *See* October 2, 2014 letter from Justin Henry, Esq. to C.H. Robinson Worldwide, Inc., attached hereto as Exhibit 2.

The Plan Administrator failed to respond to the October 2, 2014 letter, and a follow-up e-mail was sent requesting status on October 28, 2014. *See* e-mail from Maribel Buford to Heather Blackwell, dated October 28, 2014, attached hereto as Exhibit 3. On November 5, 2014, Ms. Blackwell responded to the request, once again only attaching a copy of the Plan's SPD. *See* e-

mail from Heather Blackwell to Maribel Buford., dated November 5, 2014, attached hereto as Exhibit 4 (excluding attachments).  The next day, undersigned counsel made another request for a copy of the written instrument, rather than the SPD.  *See* November 6, 2014 e-mail from Justin Henry, Esq. to Heather Blackwell, dated November 6, 2014, attached hereto as Exhibit 5.

Once again, the Plan Administrator failed to respond to the request for plan documents. Therefore, on December 3, 2014, another e-mail was sent requesting the written instrument.  *See* e-mail from Maribel Buford to Heather Blackwell, dated December 3, 2014, attached hereto as Exhibit 6.  The same day, Ms. Blackwell responded confirming the Plan did not have a written instrument separate from the SPD as required by ERISA.  *See* December 3, 2014 e-mail from Heather Blackwell to Maribel Buford, dated December 3, 2014, attached hereto as Exhibit 7.

Due to the Plan's failure to produce a written instrument establishing the terms of the plan, undersigned counsel advised the Plan it was not entitled to subrogation and reimbursement based on its failure to provide a written instrument creating such rights.  *See* May 20, 2015 letter from Justin Henry, Esq. to Carol McKissick, attached hereto as Exhibit 8.  Shortly thereafter, Optum provided another copy of the SPD, an updated itemization of the alleged lien claim, and an affidavit from Troy A. Renner, Treasurer of C.H. Robinson Worldwide, Inc.  The affidavit claimed the Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc. is the written instrument for the Plan.  *See* Affidavit of Troy A. Renner, attached hereto as Exhibit 9.

As noted in the Motion to Add Plaintiffs, David Gay disputes the validity and enforceability of the Plan's lien claim.  The Plan, however, continues to assert it is entitled to full reimbursement of its alleged lien claim.  Further, under the terms of the proposed settlement agreement, David Gay cannot finalize the settlement until a resolution has been reached regarding the Plan's purported lien.  Thus, it is necessary for the Court to determine whether the Plan possesses a valid and enforceable lien against any recovery.

## II.    LEGAL ARGUMENT

"ERISA itself is silent with respect to subrogation and reimbursement, neither requiring a welfare plan to contain a subrogation clause, nor baring a clause or otherwise regulating it." *Ryan*

*v. Federal Express Corp.*, 78 F.3d 123, 127 (3d Cir. 1996). Thus, in providing for subrogation and reimbursement, the Plan Sponsor is exercising its private authority to determine the contractual rights governing the employee welfare benefit plan. *Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Health and Welfare Fund*, 25 F.3d 509, 514 (7th Cir. 1994) (noting the parties are free to subject welfare benefit plans to requirements not provided by ERISA under contractual principles).

Not surprisingly then, ERISA "is built around reliance on the face of **written plan documents**." *U.S. Airways, Inc. v. McCutchen*, --- U.S. ---, 133 S.Ct. 1537, 1548 (2013) (emphasis added). Accordingly, to start any analysis of the rights and obligations created by an ERISA plan, a court must determine which documents actually constitute the "written plan documents" creating the terms and conditions of the employee benefit plan. Fortunately, ERISA clearly defines which documents are controlling.

ERISA draws a distinct and legally significant difference between "written instruments," required by 29 U.S.C. § 1102, and SPDs, required by 29 U.S.C. § 1022. This distinction was discussed in *Cigna Corp. v. Amara*, --- U.S. ---, 131 S.Ct. 1866 (2011). In *Amara*, the United States Supreme Court makes it clear the "written instrument," sometimes referred to as the Master Plan Document, is the actual contract between the employee welfare benefit plan and its plan participants. *Amara*, 131 S.Ct. at 1877-78. The SPD, on the other hand, is merely a "summary," is **not** a binding contract between the plan and its participants, and its statements **do not** constitute the terms of the plan. *Id.* at 1878. The Supreme Court further reiterated its holding that SPDs are not terms of the plan in *U.S. Airways, Inc. v. McCutchen*, 133 S.Ct. at 1543, n. 1 ("We have made clear that the statements in a summary plan description 'communicate with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan.") (emphasis in original).

In reaching its conclusion, the Supreme Court relied on ERISA's "repeated differentiation of SPDs from the 'written instruments' that constitute a plan" as well as ERISA's assignment of the responsibility for drafting the separate documents to two different entities. ERISA requires Plan Sponsors to **create the terms of the plan** and execute the written instrument containing those terms. *Amara*, 131 S.Ct. at 1877. Conversely, Plan Administrators are tasked with

managing the plan, **following its terms**, and providing plan participants with summary plan descriptions describing the plan in readily understandable terms. *Id.* Where, as here, the Plan Sponsor and Plan Administrator are the same entity (*i.e.*, Apollo Group, Inc.), the Supreme Court cautioned, "ERISA carefully distinguishes [the roles of the Plan Sponsor and Plan Administrator]. And we have no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan descriptions." *Amara*, 131 S.Ct. at 1877 (citations omitted).

Thus, it is abundantly clear, the written instrument is the **only** document which can create the terms and conditions of the plan. The Plan, however, has been unable to produce the written instrument creating the employee welfare benefit plan and, in fact, admits no such document exists. *See* Exhibit 7 ("We do not have a written instrument separate from the SPD."). Perhaps realizing this fatal defect, the Plan claims the SPD is the plan document. While an employee benefit plan is not entitled to use an SPD as the plan document after *Amara* (in Plaintiff's opinion), it does not matter here because the Plan's SPD explicitly states **it is not the Plan Document**. Specifically, on page 79 of the SPD, it states:

> This Summary Plan Description presents an overview of your Benefits. In the event of any discrepancy between this Summary Plan Description and the **official Plan Document**, the Plan Document will govern.

*See* Exhibit 1 at p. 85 (emphasis added). The SPD clearly establishes it is not the plan document, and the Plan cannot override the plain language of the SPD with its self-serving affidavit. *See Prichard v. Metropolitan Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015) (statement of Plan Administrator that SPD is the plan document is insufficient in the face of contrary language in the actual plan documents); *see also McCutchen*, 133 S.Ct. at 1548 (ERISA "is built around reliance on the face of written plan documents"). As such, the Plan cannot meet its burden establishing it possesses valid and enforceable lien rights against any recovery David Gay may obtain related to the July 9, 2013 collision.

## III. CONCLUSION

Based on the foregoing, Plaintiff David Gay respectfully requests this Court enter an Order determining the Plan does not possess valid or enforceable subrogation and/or reimbursement rights against any potential recovery David Gay may obtain as a result of injuries he sustained in the July 9, 2013 collision.

Respectfully submitted this 7th day of August, 2015.

**LEVENBAUM TRACHTENBERG, PLC**

/s/ Justin Henry
Justin Henry
*Attorneys for Plaintiff*

**ORIGINAL** of the foregoing e-filed this 7th day of August, 2015, COPY to:

Keith A. Olbricht, Esq.
**BURCH & CRACCHIOLO, PA**
702 East Osborn Road, Suite 200
Phoenix, Arizona 85014
*Attorneys for Defendant Guderjohn*

C.H. Robinson Worldwide, Inc. Welfare Benefit Plan
c/o C.H. Robinson Worldwide, Inc.
14701 Charlson Road, Suite 1600
Eden Prairie, Minnesota 55347
*Plan Administrator*

/s/ Lisa Balbini

**EXHIBIT 1**

# Summary Plan Description

# UnitedHealthcare/Medica Choice Plus Plan

# for

# C.H. Robinson Worldwide, Inc.

Group Number: 706717
Effective Date: January 1, 2013

# Table of Contents

Introduction ........ 1
How to Use this Document ........ 1
Information about Defined Terms ........ 1
Your Contribution to the Benefit Costs ........ 1
Customer Service and Claims Submittal ........ 1

Section 1: What's Covered--Benefits ........ 3
Accessing Benefits ........ 3
Copayment ........ 4
Eligible Expenses ........ 4
Notification Requirements ........ 4
Special Note Regarding Mental Health and Substance Use Disorder Services ........ 5
Payment Information ........ 6
Annual Deductible ........ 6
Out-of-Pocket Maximum ........ 6
Maximum Plan Benefit ........ 6
Benefit Information ........ 8
1. Ambulance Services - Emergency only ........ 8
2. Bariatric Surgery ........ 8
3. Cancer Resource Services ........ 9
4. Dental Related Services Covered Under Medical ........ 10
5. Durable Medical Equipment ........ 12

*To continue reading, go to right column on this page.*

6. Emergency Health Services ........ 13
7. Eye Examinations ........ 14
8. Hearing Aids ........ 14
9. Home Health Care ........ 15
10. Hospice Care ........ 16
11. Hospital - Inpatient Stay ........ 17
12. Infertility Services ........ 18
13. Injections received in a Physician's Office ........ 18
14. Maternity Services ........ 19
15. Mental Health Services ........ 20
16. Neurobiological Disorders - Mental Health Services for Autism Spectrum Disorders ........ 22
17. Orthognathic Surgery ........ 24
18. Outpatient Surgery, Diagnostic and Therapeutic Services ........ 25
19. Physician's Office Services - Preventive ........ 28
20. Physician's Office Services - Diagnostic ........ 29
21. Professional Fees for Surgical and Medical Services ........ 29
22. Prosthetic Devices ........ 30
23. Reconstructive Procedures ........ 30
24. Rehabilitation Services - Outpatient Therapy ........ 32
25. Reproductive Resource Services (RRS) ........ 32
26. Skilled Nursing Facility/Inpatient Rehabilitation Facility Services ........ 33
27. Spinal Treatment ........ 34
28. Substance Use Disorder Services ........ 34
29. Transplantation Services ........ 36
30. Urgent Care Center Services ........ 39

*To continue reading, go to left column on next page.*

**Section 2: What's Not Covered--Exclusions....41**
How We Use Headings in this Section....41
We Do not Pay Benefits for Exclusions....41
A. Alternative Treatments....41
B. Comfort or Convenience....41
C. Dental....42
D. Drugs....42
E. Experimental, Investigational or Unproven Services....42
F. Foot Care....42
G. Medical Supplies and Appliances....43
H. Mental Health/Substance Use Disorder....43
I. Nutrition....44
J. Physical Appearance....44
K. Providers....44
L. Reproduction....45
M. Services Provided under Another Plan....45
N. Transplants....45
O. Travel....45
P. Vision and Hearing....45
Q. All Other Exclusions....45

**Section 3: Description of Network and Non-Network Benefits....47**
Network Benefits....47
Non-Network Benefits....49
Emergency Health Services....50

*To continue reading, go to right column on this page.*

**Section 4: When Coverage Begins....51**
How to Enroll....51
If You Are Hospitalized When Your Coverage Begins....51
If You Are Eligible for Medicare....51
Who is Eligible for Coverage....52
Eligible Person....52
Dependent....52
When to Enroll and When Coverage Begins....53
Initial Enrollment Period....53
Open Enrollment Period....53
New Eligible Persons....53
Adding New Dependents....53
Special Enrollment Period....55

**Section 5: How to File a Claim....57**
If You Receive Covered Health Services from a Network Provider....57
Filing a Claim for Benefits....57

**Section 6: Questions, Complaints and Appeals....61**
What to Do First....61
How to Appeal a Claim Decision....61
Appeal Process....62
Appeals Determinations....62
Urgent Claim Appeals that Require Immediate Action....62
Federal External Review Program....63

*To continue reading, go to left column on next page.*

Section 7: Coordination of Benefits ................ 66
Benefits When You Have Coverage under More than One Plan ...... 66
When Coordination of Benefits Applies ...... 66
Definitions ...... 66
Order of Benefit Determination Rules ...... 67
Effect on the Benefits of this Plan ...... 69
Right to Receive and Release Needed Information ...... 70
Payments Made ...... 70
Right of Recovery ...... 70

Section 8: When Coverage Ends ...................... 71
General Information about When Coverage Ends ...... 71
Events Ending Your Coverage ...... 72
The Entire Plan Ends ...... 72
You Are No Longer Eligible ...... 72
The Plan Administrator Receives Notice to End Coverage ...... 72
Other Events Ending Your Coverage ...... 73
Fraud, Misrepresentation or False Information ...... 73
Threatening Behavior ...... 73
Coverage for a Handicapped Child ...... 74
Continuation of Coverage ...... 74
Continuation Coverage under Federal Law (COBRA) ...... 74
Qualifying Events for Continuation Coverage under Federal Law (COBRA) ...... 75
Notification Requirements and Election Period for Continuation Coverage under Federal Law (COBRA) ...... 75
Terminating Events for Continuation Coverage under Federal Law (COBRA) ...... 76

*To continue reading, go to right column on this page.*

Uniformed Services Employment and Reemployment Rights Act ...... 78

Section 9: General Legal Provisions ................ 79
Plan Document ...... 79
Relationship with Providers ...... 79
Your Relationship with Providers ...... 79
Incentives to Providers ...... 80
Incentives to You ...... 80
Interpretation of Benefits ...... 80
Administrative Services ...... 81
Amendments to the Plan ...... 81
Clerical Error ...... 81
Information and Records ...... 81
Examination of Covered Persons ...... 82
Workers' Compensation not Affected ...... 82
Medicare Eligibility ...... 82
Subrogation and Reimbursement ...... 82
Refund of Overpayments ...... 84
Limitation of Action ...... 85

Section 10: Glossary of Defined Terms ........... 86

*To continue reading, go to left column on next page.*

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. - 01/01/13

**iv**

(Table of Contents)

# Introduction

We are pleased to provide you with this Summary Plan Description (SPD). This SPD describes your Benefits, as well as your rights and responsibilities, under the Plan.

## How to Use this Document

We encourage you to read your SPD and any attached Riders and/or Amendments carefully.

We especially encourage you to review the Benefit limitation of this SPD by reading (Section 1: What's Covered--Benefits) and (Section 2: What's Not Covered--Exclusions). You should also carefully read (Section 9: General Legal Provisions) to better understand how this SPD and your Benefits work. You should call the Claims Administrator if you have questions about the limits of the coverage available to you.

Many of the sections of the SPD are related to other sections of the document. You may not have all of the information you need by reading just one section. We also encourage you to keep your SPD and any attachments in a safe place for your future reference.

Please be aware that your Physician does not have a copy of your SPD and is not responsible for knowing or communicating your Benefits.

*To continue reading, go to right column on this page.*

## Information about Defined Terms

Because this SPD is a legal document, we want to give you information about the document that will help you understand it. Certain capitalized words have special meanings. We have defined these words in (Section 10: Glossary of Defined Terms). You can refer to Section 10 as you read this document to have a clearer understanding of your SPD.

When we use the words "we," "us," and "our" in this document, we are referring to the Plan Sponsor. When we use the words "you" and "your" we are referring to people who are Covered Persons as the term is defined in (Section 10: Glossary of Defined Terms).

## Your Contribution to the Benefit Costs

The Plan may require the Participant to contribute to the cost of coverage. Contact your benefits representative for information about any part of this cost you may be responsible for paying.

## Customer Service and Claims Submittal

Please make note of the following information that contains Claims Administrator department names and telephone numbers.

**Customer Service Representative** (questions regarding Coverage or procedures): As shown on your ID card.

**Prior Notification:** As shown on your ID card.

**Mental Health/Substance Use Disorder Services Administrator :** As shown on your ID card.

*To continue reading, go to left column on next page.*

**Claims Submittal Address:**

United HealthCare Services, Inc./ Medica Self-Insured

Attention- Claims

P.O. Box 981502

El Paso, Texas 79998-1502

**Requests for Review of Denied Claims and Notice of Complaints:**

Name and Address For Submitting Requests:

United HealthCare Services, Inc./ Medica Self-Insured

Attention- Appeals

P.O. Box 30432

Salt Lake City, Utah 84130-0432

We also encourage you to visit the Claims Administrator's website, www.myuhc.com, to take advantage of several self-service features including: viewing your claims' status, and finding Network Physicians in your area.

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

# Section 1: What's Covered--Benefits

This section provides you with information about:

- Accessing Benefits.
- Copayments and Eligible Expenses.
- Annual Deductible, Out-of-Pocket Maximum and Maximum Plan Benefit.
- Covered Health Services. We pay Benefits for the Covered Health Services described in this section unless they are listed as not covered in (Section 2: What's Not Covered--Exclusions).
- Covered Health Services that require you or your provider to notify the Claims Administrator before you receive them. In general, Network providers are responsible for notifying the Claims Administrator before they provide certain health services to you. You are responsible for notifying the Claims Administrator before you receive certain health services from a non-Network provider.

## Accessing Benefits

You can choose to receive either Network Benefits or Non-Network Benefits. In most cases, you must see a Network Physician to obtain Network Benefits.

You must show your identification card (ID card) every time you request health care services from a Network provider. If you do not show your ID card, Network providers have no way of knowing that you are enrolled under the Plan. As a result, they may bill you for the entire cost of the services you receive. For details about when Network Benefits apply, see (Section 3: Description of Network and Non-Network Benefits).

Benefits are available only if all of the following are true:

- Covered Health Services are received while the Plan is in effect.
- Covered Health Services are received prior to the date that any of the individual termination conditions listed in (Section 8: When Coverage Ends) occurs.
- The person who receives Covered Health Services is a Covered Person and meets all eligibility requirements specified in the Plan.

Depending on the geographic area and the service you receive, you may have access through the Claims Administrator's Shared Savings Program to non-Network providers who have agreed to discount their charges for Covered Health Services. If you receive Covered Health Services from these providers, and if your Copayment is expressed as a percentage of Eligible Expenses for Non-Network Benefits, that percentage will remain the same as it is when you receive Covered Health Services from non-Network providers who have not agreed to discount their charges; however, the total that you owe may be less when you receive Covered Health Services from Shared Savings Program providers than from other non-Network providers, because the Eligible Expenses may be a lesser amount.

## Copayment

Copayment is the amount you pay each time you receive certain Covered Health Services. For a complete definition of Copayment, see (Section 10: Glossary of Defined Terms). Copayment amounts are listed on the following pages next to the description for each Covered Health Service. Please note that when Copayments are calculated as a percentage (rather than as a set dollar amount) the percentage is based on Eligible Expenses.

## Eligible Expenses

Eligible Expenses for Covered Health Services, incurred while the Plan is in effect, are determined by us or by our designee. In almost all cases our designee is the Claims Administrator. For a complete definition of Eligible Expenses that describes how payment is determined, see (Section 10: Glossary of Defined Terms).

We have delegated to the Claims Administrator the discretion and authority to determine on our behalf whether a treatment or supply is a Covered Health Service and how the Eligible Expense will be determined and otherwise covered under the Plan.

When you receive Covered Health Services from Network providers, you are not responsible for any difference between the Eligible Expenses and the amount the provider bills. When you receive Covered Health Services from non-Network providers, you are responsible for paying, directly to the non-Network provider, any difference between the amount the provider bills you and the amount we will pay for Eligible Expenses.

## Notification Requirements

Prior notification is required before you receive certain Covered Health Services.

In general, Network providers are responsible for notifying the Claims Administrator before they provide these services to you. There are some Network Benefits, however, for which you are responsible for notifying the Claims Administrator.

To notify Care Coordination℠ or the Mental Health/Substance Use Disorder Designee, call the telephone number on your ID card for Customer Service.

***When you choose to receive certain Covered Health Services from non-Network providers, you are responsible for notifying the Claims Administrator before you receive these Covered Health Services.***

Services for which you must provide prior notification appear in this section under the *Must You Notify the Claims Administrator?* column in the table labeled *Benefit Information*.

To notify the Claims Administrator, call the telephone number on your ID card.

When you choose to receive services from non-Network providers, we urge you to confirm with the Claims Administrator that the services you plan to receive are Covered Health Services, even if not indicated in the *Must You Notify the Claims Administrator?* column. That's because in some instances, certain procedures may not meet the definition of a Covered Health Service and therefore are excluded. In other instances, the same procedure may meet the definition of Covered Health Services. By calling before you receive treatment, you can check to see if the service is subject to limitations or exclusions such as:

- The Cosmetic Procedures exclusion. Examples of procedures that may or may not be considered Cosmetic include: breast reduction and reconstruction (except for after cancer surgery when it is always considered a Covered Health Service); vein stripping, ligation and sclerotherapy, and upper lid blepharoplasty.
- The Experimental, Investigational or Unproven Services exclusion.
- Any other limitation or exclusion of the Plan.

### *Special Note Regarding Medicare*

If you are enrolled for Medicare on a primary basis (Medicare pays before we pay Benefits under the Plan), the notification requirements described in this SPD do not apply to you. Since Medicare is the primary payer, we will pay as secondary payer as described in (Section 7: Coordination of Benefits). You are not required to notify the Claims Administrator before receiving Covered Health Services.

## Special Note Regarding Mental Health and Substance Use Disorder Services

You must provide pre-service notification as described below.

When Benefits are provided for any of the services listed below, the following services require notification:

- Mental Health Services - inpatient services (including Partial Hospitalization/Day Treatment and services at a Residential Treatment Facility).
- Neurobiological Disorders - Mental Health Services for Autism Spectrum Disorders -inpatient services (including Partial Hospitalization/Day treatment and services at a Residential Treatment Facility).
- Substance Use Disorder Services - inpatient services (including Partial Hospitalization/Day Treatment and services at a Residential Treatment Facility). Pre-service notification is also required for Benefits provided for Applied Behavioral Analysis (ABA)

For a scheduled admission, you must notify the Mental Health/Substance Use Disorder Administrator prior to the admission, or as soon as reasonably possible for non-scheduled admissions (including Emergency admissions). If you fail to notify the Mental Health/Substance Use Disorder Administrator as required, Benefits will be reduced to 50% of Eligible Expenses.

### *Special Mental Health and Substance Use Disorder Programs and Services*

Special programs and services that are contracted under the Mental Health/Substance Use Disorder Administrator may become available to you as part of your Mental Health and Substance Use Disorder Services benefits. The Mental Health and Substance Use Disorder Services Benefits and financial requirements assigned to these programs or services are based on the designation of the program or service to inpatient, Partial Hospitalization/Day Treatment, Intensive Outpatient Treatment, outpatient or a Transitional Care category of benefit use. Special programs or services provide access to services that are beneficial for the treatment of your Mental Illness or Substance Use Disorder which may not otherwise be covered under this Plan. Any decision to participate in such program or service is at the discretion of the Covered Person and is not mandatory.

## Payment Information

| Payment Term | Description | Amounts |
| --- | --- | --- |
| **Annual Deductible** | The amount you pay for Covered Health Services before you are eligible to receive Benefits. For a complete definition of Annual Deductible, see (Section 10: Glossary of Defined Terms). | ***Network and Non-Network***<br>$300 per Covered Person per calendar year, not to exceed $600 for all Covered Persons in a family. |
| **Out-of-Pocket Maximum** | The maximum you pay, out of your pocket, in a calendar year for Copayments. For a complete definition of Out-of-Pocket Maximum, see (Section 10: Glossary of Defined Terms). | ***Network and Non-Network***<br>$2,000 per Covered Person per calendar year, not to exceed $4,000 for all Covered Persons in a family.<br>The Out-of-Pocket Maximum does include the Annual Deductible. |
| **Maximum Plan Benefit** | There is no dollar limit to the amount the Plan will pay for essential Benefits during the entire period you are enrolled in this Plan.<br><br>Generally the following are considered to be essential benefits under the Patient Protection and Affordable Care Act: Ambulatory patient services; emergency services, hospitalization; maternity and newborn care, mental health and substance use disorder services (including behavioral health treatment); prescription drugs; | ***Network and Non-Network***<br>No Maximum Plan Benefit. |

| Payment Term | Description | Amounts |
| --- | --- | --- |
| | rehabilitative and habilitative services and devices; laboratory services; preventive and wellness services and chronic disease management; and pediatric services, including oral and vision care. | |

# Benefit Information

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **1. Ambulance Services - Emergency only**<br>Emergency ambulance transportation by a licensed ambulance service to the nearest Hospital where Emergency Health Services can be performed. | ***Network***<br>No | *Ground Transportation:*<br>20%<br><br>*Air Transportation:*<br>20% | Yes | Yes |
| | ***Non-Network***<br>No | Same as Network | Same as Network | Same as Network |
| **2. Bariatric Surgery**<br>An individual must be covered by the Plan for 2 years before receiving bariatric surgery covered through the Plan. | ***Network***<br>No | 20% | Yes | Yes |
| Bariatric services must be performed at a Bariatric Center of Excellence in order to be covered under the plan. For information on which facilities are approved Centers of Excellence for Bariatric Surgery, please contact Customer Service at 1-800-718-1267 and speak to a representative. | ***Non-Network***<br>Not Covered | Not Covered | Not Covered | Not Covered |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **3. Cancer Resource Services**<br>We will arrange for access to certain of our Network providers that participate in the Cancer Resource Services Program for the provision of oncology services. We may refer you to Cancer Resource Services, or you may self refer to Cancer Resource Services by calling 866-936-6002. In order to receive the highest level of Benefits, you must contact Cancer Resource Services prior to obtaining Covered Health Services. The oncology services include Covered Health Services and supplies rendered for the treatment of a condition that has a primary or suspected diagnosis relating to cancer.<br><br>In order to receive Benefits under this program, Cancer Resource Services must provide the proper notification to the Network provider performing the services. This is true even if you self refer to a Network provider participating in the program.<br><br>When these services are not performed in a Cancer Resource Services facility, Benefits will be paid the same as Benefits for *Hospital-Inpatient Stay, Outpatient Surgery, Diagnostic and Therapeutic Services, Physician's Office Services*, and *Professional Fees for Surgical and Medical Services* stated in this (Section 1: What's Covered--Benefits). | ***Network***<br>Cancer Resource Services must be called.<br><br>***Non-Network***<br>Non-Network Benefits for the Cancer Resource Services Program are not available. | 20%<br><br>Non-Network Benefits for the Cancer Resource Services Program are not available. | Yes<br><br>Non-Network Benefits for the Cancer Resource Services Program are not available. | Yes<br><br>Non-Network Benefits for the Cancer Resource Services Program are not available. |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **4. Dental Related Services Covered Under Medical**<br>The plan covers Anesthesia and Hospital charges for dental services if any one (1) of the following apply:<br>• Child under age 5.<br>• Severely disabled child.<br>• Medical condition exists that requires hospitalization or general anesthesia for dental services.<br>Dental services when all of the following are true:<br>• Treatment is necessary because of accidental damage.<br>• Dental services are received from a Doctor of Dental Surgery, "D.D.S." or Doctor of Medical Dentistry, "D.M.D.".<br>• The dental damage is severe enough that initial contact with a Physician or dentist occurred within 72 hours of the accident. | ***Network***<br>Yes | 20% | Yes | Yes |
| Benefits are available only for treatment of a sound, natural tooth. The Physician or dentist must certify that the injured tooth was:<br>• A virgin or unrestored tooth, or<br>• A tooth that has no decay, no filling on more than two surfaces, no gum disease associated with bone loss, no root canal therapy, is not a dental implant and functions normally in chewing and | ***Non-Network***<br>Yes | Same as Network | Same as Network | Same as Network |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| speech.<br><br>Dental services for final treatment to repair the damage must be both of the following:<br><br>• Started within three months of the accident.<br>• Completed within 12 months of the accident.<br><br>Please note that dental damage that occurs as a result of normal activities of daily living or extraordinary use of the teeth is not considered an "accident". Benefits are not available for repairs to teeth that are injured as a result of such activities.<br><br>**Notify the Claims Administrator**<br>Please remember that you must notify the Claims Administrator as soon as possible, but at least five business days before follow-up (post-Emergency) treatment begins. (You do not have to provide notification before the initial Emergency treatment.) If you don't notify the Claims Administrator for inpatient care, Benefits will be reduced to 50% of Eligible Expenses. | | | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **5. Durable Medical Equipment**<br>Durable Medical Equipment that meets each of the following criteria: | ***Network***<br>No | 20% | Yes | Yes |
| | ***Non-Network***<br>No | Same as Network | Same as Network | Same as Network |

- Ordered or provided by a Physician for outpatient use.
- Used for medical purposes.
- Not consumable or disposable.
- Not of use to a person in the absence of a disease or disability.

If more than one piece of Durable Medical Equipment can meet your functional needs, Benefits are available only for the most cost-effective piece of equipment.

Examples of Durable Medical Equipment include:

- Equipment to assist mobility, such as a standard wheelchair.
- A standard Hospital-type bed.
- Oxygen concentrator units and the rental of equipment to administer oxygen.
- Delivery pumps for tube feedings (including tubing and connectors).
- Braces that stabilize an Injured body part are considered Durable Medical Equipment and are a Covered Health Service, including necessary adjustments to shoes to accommodate braces.
- Mechanical equipment necessary for the treatment of chronic or acute respiratory failure or conditions.

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| We provide Benefits for a single unit of Durable Medical Equipment (example: one insulin pump) and provide repair for that unit.<br><br>We and the Claims Administrator will decide if the equipment should be purchased or rented. To receive Network Benefits, you must purchase or rent the Durable Medical Equipment from the vendor the Claims Administrator identifies. | | | | |
| **6. Emergency Health Services**<br>Services that are required to stabilize or initiate treatment in an Emergency. Emergency Health Services must be received on an outpatient basis at a Hospital or Alternate Facility.<br><br>You will find more information about Benefits for Emergency Health Services in (Section 3: Description of Network and Non-Network Benefits). | ***Network***<br>Yes, but only for an Inpatient Stay. | 20% | Yes | Yes |
| | ***Non-Network***<br>Yes, but only for an Inpatient Stay. | Same as Network | Same as Network | Same as Network |
| **Notify the Claims Administrator**<br>To ensure prompt and accurate payment of your claim as a Network Benefit, notify the Claims Administrator within two business days or as soon as possible after you receive outpatient Emergency Health Services at a non-Network Hospital or Alternate Facility.<br><br>Please remember that if you are admitted to a non-Network Hospital as a result of an Emergency, you must notify the Claims Administrator within one business day or the same day of admission, or as soon as reasonably possible. | | | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| If you don't notify the Claims Administrator, Benefits for the Hospital Inpatient Stay will be reduced to 50% of Eligible Expenses. Benefits will not be reduced for the outpatient Emergency Health Services. | | | | |
| **7. Eye Examinations**<br>Eye examinations received from a health care provider in the provider's office. Benefits include one routine vision exam, including refraction, to detect vision impairment by a Network Provider each calendar year. Non-Network Benefits are limited to $500 per calendar year, combined with Non-Network Preventive Care. | *Network*<br>No | 0% | N/A | No |
| Please note that Benefits are not available for charges connected to the purchase or fitting of eyeglasses or contact lenses. | *Non-Network*<br>No | Same as Network | Same as Network | Same as Network |
| **8. Hearing Aids**<br>Benefits for hearing aids, including evaluation and fitting for children under age 18 who have hearing loss due to a congenital malformation.<br>• One audiometric examination and hearing aid evaluation test to determine actual hearing acuity and the specific type or brand of hearing aid needed. | *Network*<br>No | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| • Purchase and fitting of hearing aid(s), including one hearing aid check following the fitting. | ***Non-Network***<br>No | 30% | Yes | Yes |
| **9. Home Health Care**<br>Services received from a Home Health Agency that are both of the following:<br>• Ordered by a Physician.<br>• Provided by or supervised by a registered nurse in your home. | ***Network***<br>No | 20% | Yes | Yes |
| Benefits are available only when the Home Health Agency services are provided on a part-time, intermittent schedule and when skilled care is required.<br>Skilled care is skilled nursing, skilled teaching, and skilled rehabilitation services when all of the following are true:<br>• It must be delivered or supervised by licensed technical or professional medical personnel in order to obtain the specified medical outcome, and provide for the safety of the patient.<br>• It is ordered by a Physician.<br>• It is not delivered for the purpose of assisting with activities of daily living, including but not limited to dressing, feeding, bathing or transferring from a bed to a chair.<br>• It requires clinical training in order to be delivered safely and effectively. | ***Non-Network***<br>No | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| • It is not Custodial Care.<br><br>We and the Claims Administrator will decide if skilled care is required by reviewing both the skilled nature of the service and the need for Physician-directed medical management. A service will not be determined to be "skilled" simply because there is not an available caregiver. Any combination of Network and Non-Network Benefits is limited to 180 visits per calendar year. One visit equals four hours of skilled care services. | | | | |
| **10. Hospice Care**<br>Hospice care that is recommended by a Physician. Hospice care is an integrated program that provides comfort and support services for the terminally ill. Hospice care includes physical, psychological, social and spiritual care for the terminally ill person, and short-term grief counseling for immediate family members. Benefits are available when hospice care is received from a licensed hospice agency. | ***Network***<br>No | 20% | Yes | Yes |
| Please contact the Claims Administrator for more information regarding guidelines for hospice care. You can contact the Claims Administrator at the telephone number on your ID card. Any combination of Network and Non-Network Benefits is limited to 360 days during the entire period of time you are covered under the Plan. | ***Non-Network***<br>No | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount % Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **11. Hospital - Inpatient Stay**<br>Inpatient Stay in a Hospital. Benefits are available for:<br>• Services and supplies received during the Inpatient Stay.<br>• Room and board in a Semi-private Room (a room with two or more beds).<br>Benefits for Physician services are described under *Professional Fees for Surgical and Medical Services.* | ***Network***<br>Yes | 20% | Yes | Yes |
| **Notify the Claims Administrator**<br>Please remember that for Non-Network Benefits you must notify the Claims Administrator as follows:<br>• For elective admissions: five business days before admission.<br>• For non-elective admissions: within one business day or the same day of admission.<br>• For Emergency admissions: within one business day or the same day of admission, or as soon as is reasonably possible.<br>If you don't notify the Claims Administrator, Benefits will be reduced to 50% of Eligible Expenses. | ***Non-Network***<br>Yes | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **12. Infertility Services**<br>Services for the treatment of infertility are covered when provided under Reproductive Resource Services (RRS) program. (See Item 25 below for further information).<br><br>Benefits are limited to $10,000 per lifetime per covered person. The $10,000 maximum includes medications, self-injectables and all treatment related to diagnosis of infertility.<br><br>Infertility medications are covered under the medical plan via OptumRx at 1-888-739-5820. A $10 copayment applies per medication for 31 day supply. | ***Network***<br>No | 20% | Yes | Yes |
| | ***Non-Network***<br>Not covered | Not Covered | Not Covered | Not Covered |
| **13. Injections received in a Physician's Office**<br>Benefits are available for injections received in a Physician's office when no other health service is received, for example allergy immunotherapy. | ***Network***<br>No | 20% per injection | Yes | Yes |
| Injectable medications are covered under the medical plan via Prescription Solutions or OptionsCare (for Medica service area members) with a $10 copayment per medication for 31 day supply. | ***Non-Network***<br>No | 30% per injection | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount % Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **14. Maternity Services**<br>Benefits for Pregnancy will be paid at the same level as Benefits for any other condition, Sickness or Injury. This includes all maternity-related medical services for prenatal care, postnatal care, delivery, and any related complications.<br><br>"Healthy Pregnancy Program" There are special prenatal programs to help during Pregnancy. They are completely voluntary and there is no extra cost for participating in the programs. To sign up, you should notify the Claims Administrator during the first trimester, but no later than one month prior to the anticipated childbirth.<br><br>We will pay Benefits for an Inpatient Stay of at least:<br>• 48 hours for the mother and newborn child following a normal vaginal delivery.<br>• 96 hours for the mother and newborn child following a cesarean section delivery.<br><br>These are federally mandated requirements under the Newborns' and Mothers' Health Protection Act of 1996 which apply to this Plan. The Hospital or other provider is not required to get authorization for the time periods stated above. If the mother agrees, the attending Physician may discharge the mother and/or the newborn child earlier than these minimum timeframes. | ***Network***<br>No | Same as Physician's Office Services, Professional Fees, Hospital-Inpatient Stay, Outpatient Diagnostic and Therapeutic Services. | | |
| **Notify the Claims Administrator**<br>Please remember that for Non-Network Benefits you must notify the Claims Administrator as soon as reasonably possible if the | ***Non-Network***<br>Yes, if Inpatient | Same as Physician's Office Services, Professional Fees, | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| Inpatient Stay for the mother and/or the newborn will be more than the time frames described. If you don't notify the Claims Administrator that the Inpatient Stay will be extended, your Benefits for the extended stay will be reduced to 50% of Eligible Expenses. | Stay exceeds time frames. | Hospital-Inpatient Stay, Outpatient Diagnostic and Therapeutic Services. | | |

## 15. Mental Health Services

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| Mental Health Services include those received on an inpatient basis in a Hospital or Alternate Facility, and those received on an outpatient basis in a provider's office or at an Alternate Facility. | ***Network***<br>You must notify the MH/SUD Administrator as outlined under "Notification Required" | Same as Physician's Office Service and Hospital-Inpatient Stay. | | |

Benefits include the following services provided on either an outpatient or inpatient basis:

- Diagnostic evaluations and assessment.
- Treatment planning.
- Referral services.
- Medication management.
- Individual, family, therapeutic group and provider-based case management services.
- Crisis intervention.

Benefits include the following ser vices provided on an inpatient basis:

- Partial Hospitalization/Day Treatment.
- Services at a Residential Treatment Facility.

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount % Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| Benefits include the following services on an outpatient basis:<br>• Intensive Outpatient Treatment.<br>The Mental Health/Substance Use Disorder Administrator determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis.<br>You are encouraged to contact the Mental Health/Substance Use Disorder Administrator for referrals to providers and coordination of care. | | | | |
| **Notification Required**<br>Please remember for Non-Network Benefits, you must notify the MH/SUD Administrator to receive inpatient Benefits. Please call the phone number that appears on your ID card.<br>Without notification, Benefits will be reduced to 50% of Eligible Expenses. | ***Non-Network***<br>You must notify the MH/SUD Administrator as outlined under "Notification Required" | Same as Physician's Office Service and Hospital-Inpatient Stay. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **16. Neurobiological Disorders - Mental Health Services for Autism Spectrum Disorders**<br>The Plan pays Benefits for psychiatric services for Autism Spectrum Disorders that are both of the following:<br>Provided by or under the direction of an experienced psychiatrist and/or an experienced licensed psychiatric provider; and<br>Focused on treating maladaptive/stereotypic behaviors that are posing danger to self, others and property and impairment in daily functioning.<br>These Benefits describe only the psychiatric component of treatment for Autism Spectrum Disorders. Medical treatment of Autism Spectrum Disorders is a Covered Health Service for which Benefits are available as described under the *Enhanced Autism Spectrum Disorders* benefit below.<br>Benefits include the following services provided on either an outpatient or inpatient basis:<br>• Diagnostic evaluations and assessment.<br>• Treatment planning.<br>• Referral services.<br>• Medication management. | ***Network***<br>You must notify the MH/SUD Administrator as outlined under "Notification Required" | Depending upon where the Covered Health Service is provided, Benefits for outpatient *Neurobiological Services - Autism Spectrum Disorder Services* will be the same as those stated under *Physician's Office Services - Sickness and Injury*, and Benefits for inpatient/intermediate *Neurobiological Services - Autism Spectrum Disorder Services* will be the same as those stated under *Hospital - Inpatient Stay* in this *Schedule of Benefits*. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| • Individual, family, therapeutic group and provided-based case management services.<br>• Crisis intervention.<br><br>Benefits include the following services provided on an inpatient basis:<br><br>• Partial Hospitalization/Day Treatment.<br>• Services at a Residential Treatment Facility.<br><br>Benefits include the following services provided on an outpatient basis:<br><br>• Intensive Outpatient Treatment.<br><br>Covered Health Services include enhanced Autism Spectrum Disorder services that are focused on educational/behavioral intervention that are habilitative in nature and that are backed by credible research demonstrating that the services or supplies have a measurable and beneficial health outcome. Benefits are provided for intensive behavioral therapies (educational/behavioral services that are focused on primarily building skills and capabilities in communication, social interaction and learning such as Applied Behavioral Analysis (ABA)).<br><br>The Mental Health/Substance Use Disorder Administrator determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis. | | | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| You are encouraged to contact the Mental Health/Substance Use Disorder Administrator for referrals to providers and coordination of care. | | | | |
| **Notification Required**<br>Please remember for Non-Network Benefits, you must notify the MH/SUD Administrator to receive inpatient Benefits. Please call the phone number that appears on your ID card.<br>Without notification, Benefits will be reduced to 50% of Eligible Expenses. | ***Non-Network***<br>You must notify the MH/SUD Administrator as outlined under "Notification Required" | Depending upon where the Covered Health Service is provided, Benefits for outpatient *Neurobiological Services - Autism Spectrum Disorder Services* will be the same as those stated under *Physician's Office Services - Sickness and Injury*, and Benefits for inpatient/intermediate *Neurobiological Services - Autism Spectrum Disorder Services* will be the same as those stated under *Hospital - Inpatient Stay* in this *Schedule of Benefits*. | | |
| **17. Orthognathic Surgery**<br>Orthognathic surgery is reconstructive and is covered in the following situations:<br>• A jaw deformity resulting from facial trauma, syndromes such as Apert or Crouzon, facial clefts, neoplasms, surgical resection, iatrogenic radiation; or<br>• A facial skeletal anomaly of either the maxilla or mandible, that demonstrates a functional medical impairment such as one of the following:<br>— Inability to incise solid foods;<br>— Choking on incompletely masticated solid foods; | ***Network***<br>No | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| — Damage to soft tissue during mastication;<br>— Documented speech impairment;<br>— Malnutrition and weight loss due to inadequate intake secondary to the jaw deformity;<br>— Documented sleep apnea, airway defects, or soft tissue discrepancies; or<br>— Documented temporomandibular joint pathology.<br>• Orthognathic surgery for the treatment of maxillary and/or mandibular facial skeletal deformities associated with masticatory malocclusion (specific anteroposterior, vertical, transverse discrepancies and asymmetries) is reconstructive. In addition to the above conditions, orthognathic surgery is reconstructive and may be indicated in cases where there are specific documented signs of dysfunction which may include conditions involving airway dysfunction such as sleep apnea, temporomandibular joint disorders and/or speech impairments. | ***Non-Network***<br>No | 30% | Yes | Yes |
| **18. Outpatient Surgery, Diagnostic and Therapeutic Services**<br>*Outpatient Surgery*<br>Covered Health Services received on an outpatient basis at a Hospital or Alternate Facility including:<br>• Benefits under this section include only the facility charge and the charge for required Hospital-based professional services, | ***Network***<br>No | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| supplies and equipment. Benefits for the surgeon fees related to outpatient surgery are described under *Professional Fees for Surgical and Medical Services.* | | | | |
| When these services are performed in a Physician's office, Benefits are described under *Physician's Office Services* below. | ***Non-Network***<br>No | 30% | Yes | Yes |
| ***Outpatient Diagnostic Services***<br>Covered Health Services received on an outpatient basis at a Hospital or Alternate Facility including: | ***Network***<br>No | ***For lab and radiology/ X-ray:*** | | |
| • Lab and radiology/X-ray.<br>• Mammography testing. | | 20% | Yes | Yes |
| Benefits under this section include the facility charge, the charge for required services, supplies and equipment, and all related professional fees. | | ***For diagnostic mammography testing:*** | | |
| When these services are performed in a Physician's office, Benefits are described under *Physician's Office Services* below. | | 20% | Yes | Yes |
| This section does not include Benefits for CT scans, Pet scans, MRIs, or nuclear medicine, which are described immediately below. | ***Non-Network***<br>No | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| ***Outpatient Diagnostic/Therapeutic Services - CT Scans, Pet Scans, MRI and Nuclear Medicine***<br>Covered Health Services for CT scans, Pet scans, MRI, and nuclear medicine received on an outpatient basis at a Hospital or Alternate Facility. | *Network*<br>No | 20% | Yes | Yes |
| Benefits under this section include the facility charge, the charge for required services, supplies and equipment, and all related professional fees. | *Non-Network*<br>No | 30% | Yes | Yes |
| ***Outpatient Therapeutic Treatments***<br>Covered Health Services for therapeutic treatments received on an outpatient basis at a Hospital or Alternate Facility, including dialysis, intravenous chemotherapy or other intravenous infusion therapy, and other treatments not listed above. | *Network*<br>No | 20% | Yes | Yes |
| Benefits under this section include the facility charge, the charge for required services, supplies and equipment, and all related professional fees.<br>When these services are performed in a Physician's office, Benefits are described under *Physician's Office Services* below. | *Non-Network*<br>No | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **19. Physician's Office Services - Preventive**<br>**Covered Health Services for <u>preventive medical care</u>. Preventive medical care includes:**<br>• Preventive medical care.<br>• Voluntary family planning.<br>• Well-baby and well-child care.<br>• Routine physical examinations.<br>• Cancer Screenings including but not limited to: routine mammograms, pap smears, flexible sigmoidoscopies, colonscopies, occult blood work and PSA testing. | ***Network***<br>No | Routine physical examinations, Preventive medical care, well-baby and well-child care, vision and hearing screenings, breast pumps and international immunizations: 0% | N/A | No |
| • Vision and hearing screenings. (Vision screenings do not include refractive examinations to detect vision impairment. See *Eye Examinations* earlier in this section.)<br>• Immunizations, including international immunizations.<br>• Routine Lab & X-ray.<br>• Non-Network Preventive medical care, well-baby and well-child care, routine physical examinations and visions and hearing screenings are limited to a **$500 maximum** per person per calendar year.<br>• Breast Pumps. Preventive care Benefits defined under the Health Resources and Services Administration (HRSA) requirement include the cost of renting one breast pump per Pregnancy in | ***Non-Network***<br>No | Routine physical examinations, Preventive medical care, well-baby and well-child care, vision and hearing screenings, breast pumps and international immunizations: 0% | N/A | No |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| conjunction with childbirth. Benefits for breast pumps also include the cost of purchasing one breast pump per Pregnancy in conjunction with childbirth. These Benefits are described under Section 1, *What's Covered - Benefits*.<br>Benefits are only available if breast pumps are obtained from a DME provider, Hospital or Physician. | | All Other Services:<br>30% | Yes | Yes |
| **20. Physician's Office Services - Diagnostic**<br>Covered Health Services for the diagnosis and treatment of a Sickness or Injury received in a Physician's office. | ***Network***<br>No | 20% | Yes | Yes |
| | ***Non-Network***<br>No | 30% | Yes | Yes |
| **21. Professional Fees for Surgical and Medical Services**<br>Professional fees for surgical procedures and other medical care received in a Hospital, Skilled Nursing Facility, Inpatient Rehabilitation Facility or Alternate Facility, or for Physician house calls.<br>When these services are performed in a Physician's office, Benefits are described under *Physician's Office Services* above. | ***Network***<br>No | 20% | Yes | Yes |
| | ***Non-Network***<br>No | 30% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **22. Prosthetic Devices**<br>External prosthetic devices that replace a limb or an external body part, limited to:<br>• Artificial arms, legs, feet and hands.<br>• Artificial eyes, ears and noses.<br>• Breast prosthesis as required by the Women's Health and Cancer Rights Act of 1998. Benefits include mastectomy bras and lymphedema stockings for the arm. | *Network*<br>No | 20% | Yes | Yes |
| If more than one prosthetic device can meet your functional needs, Benefits are available only for the most cost-effective prosthetic device.<br><br>The prosthetic device must be ordered or provided by, or under the direction of a Physician. Except for items required by the Women's Health and Cancer Rights Act of 1998. | *Non-Network*<br>No | 30% | Yes | Yes |
| **23. Reconstructive Procedures**<br>Services for reconstructive procedures, when a physical impairment exists and the primary purpose of the procedure is to improve or restore physiologic function. Reconstructive procedures include surgery or other procedures which are associated with an Injury, Sickness or Congenital Anomaly. The fact that physical appearance may change or improve as a result of a reconstructive procedure does not classify such surgery as a Cosmetic Procedure when a physical impairment exists, and the surgery restores or improves | *Network*<br>No | Same as Physician's Office Services, Professional Fees, Hospital-Inpatient Stay, Outpatient Diagnostic and Therapeutic Services, and Prosthetic Devices. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| function.<br><br>Cosmetic Procedures are excluded from coverage. Procedures that correct an anatomical Congenital Anomaly without improving or restoring physiologic function are considered Cosmetic Procedures. The fact that a Covered Person may suffer psychological consequences or socially avoidant behavior as a result of an Injury, Sickness or Congenital Anomaly does not classify surgery or other procedures done to relieve such consequences or behavior as a reconstructive procedure.<br><br>Please note that Benefits for reconstructive procedures include breast reconstruction following a mastectomy related to breast cancer, and reconstruction of the non-affected breast to achieve symmetry. Other services required by the Women's Health and Cancer Rights Act of 1998, including breast prostheses and treatment of complications, are provided in the same manner and at the same level as those for any other Covered Health Service. You can contact the Claims Administrator at the telephone number on your ID card for more information about Benefits for mastectomy-related services.<br><br>**Notify the Claims Administrator**<br>Please remember that for Non-Network Benefits you must notify the Claims Administrator five business days before receiving services. When you provide notification, the Claims Administrator can verify that the service is a reconstructive procedure rather than a Cosmetic Procedure. Cosmetic Procedures are always excluded from coverage. If you don't notify the Claims Administrator, Benefits for reconstructive procedures will be reduced to 50% of Eligible | ***Non-Network***<br>Yes | Same as Physician's Office Services, Professional Fees, Hospital-Inpatient Stay, Outpatient Diagnostic and Therapeutic Services, and Prosthetic Devices. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| Expenses. | | | | |
| **24. Rehabilitation Services - Outpatient Therapy**<br>Short-term outpatient rehabilitation services for:<br>• Physical therapy.<br>• Occupational therapy.<br>• Speech therapy.<br>• Pulmonary rehabilitation therapy.<br>• Cardiac rehabilitation therapy. | *Network*<br>No | 20% | Yes | Yes |
| Rehabilitation services must be performed by a licensed therapy provider, under the direction of a Physician. Benefits are available only for rehabilitation services that are expected to result in significant physical improvement in your condition. | ***Non-Network***<br>No | 30% | Yes | Yes |
| **25. Reproductive Resource Services (RRS)**<br>The Plan pays Benefits for infertility services provided under the Reproductive Resource Services (RRS) program, as defined in Section 10, *Glossary*. You will have access to a certain Network of facilities and Physicians participating in the Reproductive Resource Services program for infertility services.<br><br>For infertility services and supplies to be considered Covered Health Services, you **MUST** contact Reproductive Resource Services and | *Network*<br>Yes | Same as Physician's Office Services, Professional Fees, Hospital-Inpatient Stay, Outpatient Diagnostic and Therapeutic Services, and Prosthetic Devices. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| speak with a nurse consultant prior to receiving services. You can contact Reproductive Resource Services by calling toll-free at (866) 774-4626.<br><br>Infertility benefits are limited to $10,000 per lifetime for each covered member. | *Non-Network*<br>Not covered | | | |
| **26. Skilled Nursing Facility/Inpatient Rehabilitation Facility Services**<br>Services for an Inpatient Stay in a Skilled Nursing Facility or Inpatient Rehabilitation Facility. Benefits are available for:<br>• Services and supplies received during the Inpatient Stay.<br>• Room and board in a Semi-private Room (a room with two or more beds).<br><br>Any combination of Network and Non-Network Benefits is limited to 120 days per calendar year.<br><br>Please note that Benefits are available only for the care and treatment of an Injury or Sickness that would have otherwise required an Inpatient Stay in a Hospital. | *Network*<br>No | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount % Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| **Notify the Claims Administrator**<br>Please remember that for Non-Network Benefits you must notify the Claims Administrator as follows:<br>• For elective admissions: five business days before admission.<br>• For non-elective admission: within one business day or the same day of admission.<br>• For Emergency admissions: within one business day or the same day of admission, or as soon as is reasonably possible.<br>If you don't notify the Claims Administrator, Benefits will be reduced to 50% of Eligible Expenses. | *Non-Network*<br>Yes | 30% | Yes | Yes |
| **27. Spinal Treatment**<br>Benefits for Spinal Treatment when provided by a Spinal Treatment provider in the provider's office. | *Network*<br>No | 20% | Yes | Yes |
| | *Non-Network*<br>Not Covered | | | |
| **28. Substance Use Disorder Services**<br>Substance Use Disorder Services include those received on an inpatient basis in a Hospital or an Alternate Facility and those received on an outpatient basis in a provider's office or at an Alternate Facility.<br>Benefits include the following services provided on either an | *Network*<br>You must notify the MH/SUD Administrator as outlined under "Notification Required" | Same as Physician's Office Service and Hospital-Inpatient Stay. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| inpatient or outpatient basis:<br>• Diagnostic evaluations and assessment.<br>• Treatment planning.<br>• Referral services.<br>• Medication management.<br>• Individual, family, therapeutic group and provider-based case management.<br>• Crisis intervention.<br>• Detoxification (sub-acute/non-medical).<br>Benefits include the following services provided on an inpatient basis:<br>• Partial Hospitalization/Day Treatment.<br>• Services at a Residential Treatment Facility.<br>Benefits include the following services provided on an outpatient basis:<br>• Intensive Outpatient Treatment. | | | | |
| The Mental Health/Substance Use Disorder Administrator determines coverage for the inpatient treatment. If an Inpatient Stay is required, it is covered on a Semi-private Room basis. | ***Non-Network***<br>You must notify the MH/SUD Administrator as | Same as Physician's Office Service and Hospital-Inpatient Stay. | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount % Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| You are encouraged to contact the Mental Health/Substance Use Disorder Administrator for referrals to providers and coordination of care.<br>**Notification Required**<br>Please remember for Non-Network Benefits, you must notify the MH/SUD Administrator to receive inpatient Benefits. Please call the phone number that appears on your ID card. Without notification, Benefits will be reduced to 50% of Eligible Expenses. | outlined under "Notification Required" | | | |
| **29. Transplantation Services**<br>Covered Health Services for the following organ and tissue transplants when ordered by a Physician. For Network Benefits, transplantation services must be received at a Designated Facility. Transplantation services provided at a non-Designated Facility will be covered as Non-Network Benefits. Benefits are available to the donor and the recipient when the recipient is covered under this Plan. The transplant must meet the definition of a Covered Health Service and cannot be Experimental or Investigational, or Unproven. The Copayment and Annual Deductible will not apply to Network Benefits when a transplant listed below is received at a Designated Facility. The services described under **Transportation and Lodging** below are Covered Health Services **ONLY** in connection with a transplant received at a Designated Facility. | *Network*<br>Yes | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| • Bone marrow transplants (either from you or from a compatible donor) and peripheral stem cell transplants, with or without high dose chemotherapy. Not all bone marrow transplants meet the definition of a Covered Health Service. The search for bone marrow/stem cell from a donor who is not biologically related to the patient is a Covered Health Service only for a transplant received at a Designated Facility.<br>• Heart transplants.<br>• Heart/lung transplants.<br>• Lung transplants.<br>• Kidney transplants.<br>• Kidney/pancreas transplants.<br>• Liver/kidney transplants.<br>• Liver/intestinal transplants.<br>• Pancreas transplants.<br>• Intestinal transplants.<br><br>Network Benefits are also available for cornea transplants that are provided by a Network Physician at a Network Hospital. We do not require that cornea transplants be performed at a Designated Facility in order for you to receive Network Benefits. For cornea transplants, Benefits will be paid at the same level as Professional Fees, Outpatient Surgery, Diagnostic and Therapeutic Services, and Inpatient Hospital rather than as described in this Section "Transplantation Services". | ***Non-Network***<br>Yes | 30%<br>Benefits are limited to $30,000 per transplant. | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| Organ or tissue transplants or multiple organ transplants other than those listed above are excluded from coverage.<br><br>Under the Plan there are specific guidelines regarding Benefits for transplant services. Contact the Claims Administrator at the telephone number on your ID card for information about these guidelines.<br><br>**Transportation and Lodging**<br>The Claims Administrator will assist the patient and family with travel and lodging arrangements only when services are received from a Designated Facility. Expenses for travel, lodging and meals for the transplant recipient and a companion are available under this Plan as follows:<br><br>• Transportation of the patient and one companion who is traveling on the same day(s) to and/or from the site of the transplant for the purposes of an evaluation, the transplant procedure or necessary post-discharge follow-up.<br>• Eligible Expenses for lodging and meals for the patient (while not confined) and one companion. Benefits are paid at a per diem rate of up to $50 for one person or up to $100 for two people.<br>• Travel and lodging expenses are only available if the transplant recipient resides more than 50 miles from the Designated Facility.<br>• If the patient is an Enrolled Dependent minor child, the transportation expenses of two companions will be covered and lodging and meal expenses will be reimbursed up to the $100 per | | | | |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| diem rate.<br><br>There is a combined overall lifetime maximum Benefit of $10,000 per Covered Person for all transportation, lodging and meal expenses incurred by the transplant recipient and companion(s) and reimbursed under this Plan in connection with all transplant procedures.<br><br>**Notify the Claims Administrator**<br>You must notify the Claims Administrator as soon as the possibility of a transplant arises (and before the time a pre-transplantation evaluation is performed at a transplant center).<br><br>If you do not notify the Claims Administrator, and if the transplantation services are not performed at a Designated Facility, you will be responsible for paying all charges and Network Benefits will not be paid. Non-Network Benefits may be available.<br><br>Please remember that for Non-Network Benefits you must notify the Claims Administrator as soon as the possibility of a transplant arises (and before the time a pre-transplantation evaluation is performed at a transplant center). If you don't notify the Claims Administrator, Benefits will be reduced to 50% of Eligible Expenses. | | | | |
| **30. Urgent Care Center Services**<br>Covered Health Services received at an Urgent Care Center. When services to treat urgent health care needs are provided in a Physician's office, Benefits are available as described under *Physician's Office Services* earlier in this section. | *Network*<br>No | 20% | Yes | Yes |

| Description of Covered Health Service | Must You Notify the Claims Administrator? | Your Copayment Amount<br>% Copayments are based on a percent of Eligible Expenses | Does Copayment Help Meet Out-of-Pocket Maximum? | Do You Need to Meet Annual Deductible? |
|---|---|---|---|---|
| | *Non-Network* | | | |
| | No | 30% | Yes | Yes |

# Section 2: What's Not Covered--Exclusions

This section contains information about:

- How headings are used in this section.
- Medical services that are not covered. We call these Exclusions. It's important for you to know what services and supplies are not covered under the Plan.

## How We Use Headings in this Section

To help you find specific exclusions more easily, we use headings. The headings group services, treatments, items, or supplies that fall into a similar category. Actual exclusions appear underneath headings. A heading does not create, define, modify, limit or expand an exclusion. All exclusions in this section apply to you.

## We Do not Pay Benefits for Exclusions

We will not pay Benefits for any of the services, treatments, items or supplies described in this section, even if either of the following are true:

- It is recommended or prescribed by a Physician.
- It is the only available treatment for your condition.

*To continue reading, go to right column on this page.*

The services, treatments, items or supplies listed in this section are not Covered Health Services, except as may be specifically provided for in (Section 1: What's Covered--Benefits) or through a Rider to the SPD.

## A. Alternative Treatments

1. Acupressure and acupuncture.
2. Aroma therapy.
3. Hypnotism.
4. Massage Therapy.
5. Rolfing.
6. Other forms of alternative treatment as defined by the Office of Alternative Medicine of the National Institutes of Health.

## B. Comfort or Convenience

1. Television.
2. Telephone.
3. Beauty/Barber service.
4. Guest service.
5. Supplies, equipment and similar incidental services and supplies for personal comfort. Examples include:
   - — Air conditioners.
   - — Air purifiers and filters.
   - — Batteries and battery chargers.
   - — Dehumidifiers.
   - — Humidifiers.
6. Devices and computers to assist in communication and speech.

*To continue reading, go to left column on next page.*

## C. Dental

1. Dental care except as described in (Section 1: What's Covered--Benefits) under the heading *Dental Services - Accident Only.*
2. Preventive care, diagnosis, treatment of or related to the teeth, jawbones or gums. Examples include all of the following:
   - Extraction, restoration and replacement of teeth.
   - Medical or surgical treatments of dental conditions.
   - Services to improve dental clinical outcomes.
3. Dental implants.
4. Dental braces.
5. Dental X-rays, supplies and appliances and all associated expenses, including hospitalizations and anesthesia. The only exceptions to this are for any of the following:
   - Transplant preparation.
   - Initiation of immunosuppressives.
   - The direct treatment of acute traumatic Injury, cancer or cleft palate.
6. Treatment of congenitally missing, malpositioned, or super numerary teeth, even if part of a Congenital Anomaly.

## D. Drugs

1. Prescription drug products for outpatient use that are filled by a prescription order or refill.
2. Self-injectable medications.
3. Non-injectable medications given in a Physician's office except as required in an Emergency.
4. Over the counter drugs and treatments.

*To continue reading, go to right column on this page.*

## E. Experimental, Investigational or Unproven Services

Experimental, Investigational and Unproven Services are excluded. The fact that an Experimental, Investigational or Unproven Service, treatment, device or pharmacological regimen is the only available treatment for a particular condition will not result in Benefits if the procedure is considered to be Experimental, Investigational or Unproven in the treatment of that particular condition.

## F. Foot Care

1. Routine foot care (including the cutting or removal of corns and calluses).
2. Nail trimming, cutting, or debriding.
3. Hygienic and preventive maintenance foot care. Examples include the following:
   - Cleaning and soaking the feet.
   - Applying skin creams in order to maintain skin tone.
   - Other services that are performed when there is not a localized illness, Injury or symptom involving the foot.
4. Treatment of flat feet.
5. Treatment of subluxation of the foot.
6. Shoe orthotics.

*To continue reading, go to left column on next page.*

## G. Medical Supplies and Appliances

1. Devices used specifically as safety items or to affect performance in sports-related activities.
2. Prescribed or non-prescribed medical supplies and disposable supplies. Examples include:
   - Elastic stockings.
   - Ace bandages.
   - Gauze and dressings.
   - Syringes.
   - Diabetic test strips.
3. Orthotic appliances that straighten or re-shape a body part (including cosmetic cranial banding and some types of braces). Cranial banding and cranial helmets (non-cosmetics) are covered.
4. Tubings and masks are not covered except when used with Durable Medical Equipment (as described in Section 1: What's Covered--Benefits).

## H. Mental Health/Substance Use Disorder

Exclusions listed directly below apply to services described under *Mental Health Services, Neurobiological Disorders – Mental Health Services for Autism Spectrum Disorders* and/or *Substance Use Disorder Services* as described in (Section 1: What's Covered--Benefits).

1. Services performed in connection with conditions not classified in the current edition of the *Diagnostic and Statistical Manual of the American Psychiatric Association.*

*To continue reading, go to right column on this page.*

2. Services or supplies for the diagnosis or treatment of Mental Illness, alcoholism or Substance Use Disorders that , in the reasonable judgment of the Mental Health/Substance Use Disorder Administrator, are any of the following:
   - Not consistent with generally accepted standards of medical practice for the treatment of such conditions.
   - Not consistent with services backed by credible research soundly demonstrating that the services or supplies will have a measurable and beneficial health outcome, and therefore considered experimental.
   - Not consistent with the Mental Health/Substance Use Disorder Administrator's level of care guidelines or best practices as modified from time to time.
   - Not clinically appropriate for the patient's Mental Illness, Substance Use Disorder or condition based on generally accepted standards of medical practice and benchmarks.
3. Mental Health Services as treatments for V-code conditions as listed within the current edition of the *Diagnostic and Statistical Manual of the American Psychiatric Association.*
4. Mental Health Services as treatment for a primary diagnosis of insomnia other sleep disorders, sexual dysfunction disorders, feeding disorders, neurological disorders and other disorders with a known physical basis.
5. Treatments for the primary diagnoses of learning disabilities, conduct and impulse control disorders, personality disorders and paraphilias (sexual behavior that is considered deviant or abnormal).
6. Educational/behavioral services that are focused on primarily building skills and capabilities in communication, social interaction and learning.

*To continue reading, go to left column on next page.*

7. Tuition for or services that are school-based for children and adolescents under the *Individuals with Disabilities Education Act*.
8. Learning, motor skills and primary communication disorders as defined in the current edition of the *Diagnostic and Statistical Manual of the American Psychiatric Association*.
9. Mental retardation as a primary diagnosis defined in the current edition of the *Diagnostic and Statistical Manual of the American Psychiatric Association*.
10. Methadone treatment as maintenance, L.A.A.M. (1-Alpha-Acetyl-Methadol), Cyclazocine, or their equivalents for drug addiction.

## I. Nutrition

1. Megavitamin and nutrition based therapy.
2. Nutritional counseling for either individuals or groups.
3. Enteral feedings and other nutritional and electrolyte supplements, including infant formula and donor breast milk.

## J. Physical Appearance

1. Cosmetic Procedures. See the definition in (Section 10: Glossary of Defined Terms). Examples include:
   - Pharmacological regimens, nutritional procedures or treatments.
   - Scar or tattoo removal or revision procedures (such as salabrasion, chemosurgery and other such skin abrasion procedures).
   - Skin abrasion procedures performed as a treatment for acne.
2. Replacement of an existing breast implant if the earlier breast implant was performed as a Cosmetic Procedure.

*To continue reading, go to right column on this page.*

**Note:** Replacement of an existing breast implant is considered reconstructive if the initial breast implant followed mastectomy. See *Reconstructive Procedures* in (Section 1: What's Covered--Benefits).

3. Physical conditioning programs such as athletic training, body-building, exercise, fitness, flexibility, and diversion or general motivation.
4. Weight loss programs whether or not they are under medical supervision. Weight loss programs for medical reasons are also excluded.
5. Wigs regardless of the reason for the hair loss.

## K. Providers

1. Services performed by a provider who is a family member by birth or marriage, including spouse, brother, sister, parent or child. This includes any service the provider may perform on himself or herself.
2. Services performed by a provider with your same legal residence.
3. Services provided at a free-standing or Hospital-based diagnostic facility without an order written by a Physician or other provider. Services that are self-directed to a free-standing or Hospital-based diagnostic facility. Services ordered by a Physician or other provider who is an employee or representative of a free-standing or Hospital-based diagnostic facility, when that Physician or other provider:
   - Has not been actively involved in your medical care prior to ordering the service, or
   - Is not actively involved in your medical care after the service is received.

*To continue reading, go to left column on next page.*

## L. Reproduction

1. Surrogate pregnancies.
2. The reversal of voluntary sterilization.

## M. Services Provided under Another Plan

1. Health services for which other coverage is required by federal, state or local law to be purchased or provided through other arrangements. This includes, but is not limited to, coverage required by workers' compensation, no-fault auto insurance, or similar legislation.

   If coverage under workers' compensation or similar legislation is optional for you because you could elect it, or could have it elected for you, Benefits will not be paid for any Injury, Sickness or Mental Illness that would have been covered under workers' compensation or similar legislation had that coverage been elected.
2. Health services for treatment of military service-related disabilities, when you are legally entitled to other coverage and facilities are reasonably available to you.
3. Health services while on active military duty.

## N. Transplants

1. Health services for organ and tissue transplants, except those described in (Section 1: What's Covered--Benefits) unless UnitedHealthcare determines the transplant to be appropriate according to UnitedHealthcare's transplant guidelines.
2. Health services connected with the removal of an organ or tissue from you for purposes of a transplant to another person. (Donor costs for removal are payable for a transplant through the organ recipient's Benefits under the Plan).

*To continue reading, go to right column on this page.*

3. Health services for transplants involving mechanical or animal organs.
4. Any solid organ transplant that is performed as a treatment for cancer.
5. Any multiple organ transplant not listed as a Covered Health Service under the heading *Transplantation Health Services* in (Section 1: What's Covered--Benefits).

## O. Travel

1. Health services provided in a foreign country, unless required as Emergency Health Services.
2. Travel or transportation expenses, even though prescribed by a Physician. Some travel expenses related to covered transplantation services may be reimbursed at our discretion.

## P. Vision and Hearing

1. Purchase cost of eye glasses or contact lenses.
2. Fitting charge for eye glasses or contact lenses.
3. Eye exercise therapy unless covered due to convergent insufficiency in the absence of accommodative disorder.
4. Surgery that is intended to allow you to see better without glasses or other vision correction including radial keratotomy, laser, and other refractive eye surgery.

## Q. All Other Exclusions

1. Health services and supplies that do not meet the definition of a Covered Health Service - see the definition in (Section 10: Glossary of Defined Terms).

   This exclusion does not apply to breast pumps for which Benefits are provided under the Health Resources and Services Administration (HRSA) requirement.

*To continue reading, go to left column on next page.*

2. Physical, psychiatric or psychological exams, testing, vaccinations, immunizations or treatments that are otherwise covered under the Plan when:
   - Required solely for purposes of career, education, sports or camp, employment, insurance, marriage or adoption.
   - Related to judicial or administrative proceedings or orders.
   - Conducted for purposes of medical research.
   - Required to obtain or maintain a license of any type.
3. Health services received as a result of war or any act of war, whether declared or undeclared or caused during service in the armed forces of any country.
4. Health services received after the date your coverage under the Plan ends, including health services for medical conditions arising before the date your coverage under the Plan ends.
5. Health services for which you have no legal responsibility to pay, or for which a charge would not ordinarily be made in the absence of coverage under the Plan.
6. In the event that a non-Network provider waives Copayments and/or the Annual Deductible for a particular health service, no Benefits are provided for the health service for which the Copayments and/or Annual Deductible are waived.
7. Charges in excess of Eligible Expenses or in excess of any specified limitation.
8. Services for the evaluation and treatment of temporomandibular joint syndrome (TMJ), when the services are considered to be medical or dental in nature.
9. Upper and lower jawbone surgery except as required for direct treatment of acute traumatic Injury or cancer. Jaw alignment and treatment for the temporomandibular joint, except as a treatment of obstructive sleep apnea, jaw deformity facial

*To continue reading, go to right column on this page.*

skeletal anomaly, etc. Please see item 17 of Benefit Information for completed description of this Benefit.

10. Growth hormone therapy.
11. Sex transformation operations.
12. Custodial Care.
13. Domiciliary care.
14. Private duty nursing.
15. Respite care.
16. Rest cures.
17. Psychosurgery.
18. Treatment of benign gynecomastia (abnormal breast enlargement in males).
19. Medical and surgical treatment of excessive sweating (hyperhidrosis).
20. Medical and surgical treatment for snoring, except when provided as a part of treatment for documented obstructive sleep apnea.
21. Oral appliances for snoring.
22. Any charges for missed appointments, room or facility reservations, completion of claim forms or record processing.
23. Any charge for services, supplies or equipment advertised by the provider as free.
24. Any charges prohibited by federal anti-kickback or self-referral statutes.
25. Services needed because you engaged in an illegal occupation, or committed or attempted to commit a felony.

*To continue reading, go to left column on next page.*

# Section 3: Description of Network and Non-Network Benefits

This section includes information about:

- Network Benefits.
- Non-Network Benefits.
- Emergency Health Services.

## Network Benefits

Network Benefits are generally paid at a higher level than Non-Network Benefits. Network Benefits are payable for Covered Health Services which are either of the following:

- Provided by or under the direction of a Network Physician or other Network provider in the Physician's office or at a Network facility.
- Emergency Health Services.

### *Comparison of Network and Non-Network Benefits*

| | Network | Non-Network |
|---|---|---|
| **Benefits** | A higher level of Benefits means less cost to you. See (Section 1: What's Covered--Benefits). | A lower level of Benefits means more cost to you. See (Section 1: What's Covered--Benefits). |
| **Who Should Notify the Claims Administrator for Care Coordination** | Network providers generally handle notification for you. However, there are exceptions. See (Section 1: What's Covered--Benefits), under the *Must You Notify the Claims Administrator?* column. | You must notify the Claims Administrator for certain Covered Health Services. Failure to notify results in reduced Benefits or no Benefits. See (Section 1: What's Covered--Benefits), under the *Must You Notify the Claims Administrator?* column. |
| **Who Should File Claims** | Not required. We pay Network providers directly. | You must file claims. See (Section 5: How to File a Claim). |
| **Outpatient Emergency Health Services** | Emergency Health Services are always paid as a Network Benefit (paid the same whether you are in or out of the Network). That means that if you seek Emergency care at a non-Network facility, you are not required to meet the Annual Deductible or to pay any difference between Eligible Expenses and the amount the provider bills. | |

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

### *Provider Network*

The Claims Administrator arranges for health care providers to participate in a Network. Network providers are independent practitioners. They are not our employees or employees of the Claims Administrator. It is your responsibility to select your provider.

The credentialing process confirms public information about the providers' licenses and other credentials, but does not assure the quality of the services provided.

You will be given a directory of Network providers. However, before obtaining services you should always verify the Network status of a provider. A provider's status may change. You can verify the provider's status by calling the Claims Administrator.

It is possible that you might not be able to obtain services from a particular Network provider. The network of providers is subject to change. Or you might find that a particular Network provider may not be accepting new patients. If a provider leaves the Network or is otherwise not available to you, you must choose another Network provider to get Network Benefits.

Do not assume that a Network provider's agreement includes all Covered Health Services. Some Network providers contract to provide only certain Covered Health Services, but not all Covered Health Services. Some Network providers choose to be a Network provider for only some products. Refer to your provider directory or contact the Claims Administrator for assistance.

### *Care Coordination*SM

Your Network Physician is required to notify the Claims Administrator regarding certain proposed or scheduled health services. When your Network Physician notifies the Claims Administrator, they will work together to implement the Care

*To continue reading, go to right column on this page.*

CoordinationSM process and to provide you with information about additional services that are available to you, such as disease management programs, health education, pre-admission counseling and patient advocacy.

If you receive certain Covered Health Services from a Network provider, you must notify the Claims Administrator. The Covered Health Services for which notification is required is shown in (Section 1: What's Covered--Benefits). When you notify the Claims Administrator, you will receive the Care Coordination services described above.

### *HealtheNotes*SM

The Claims Administrator provides a service called HealtheNotes to help educate members and make suggestions regarding your medical care. HealtheNotes provides you and your Physician with suggestions regarding preventive care, testing or medications, potential interactions with medications you have been prescribed, and certain treatments. In addition, your HealtheNotes report may include health tips and other wellness information.

The Claims Administrator makes these suggestions through a software program that provides retrospective, claims-based identification of medical care. Through this process patients are identified whose care may benefit from suggestions using the established standards of evidence based medicine.

If your Physician identifies any concerns after reviewing his or her HealtheNotes report, he or she may contact you if he or she believes it to be appropriate. In addition, you may use the information in your report to engage your Physician in discussions regarding your health and the identified suggestions. Any decisions regarding your care, though, are always between you and your Physician.

*To continue reading, go to left column on next page.*

If you have questions or would like additional information about this service, please call the number on the back of your ID card.

### *Designated Facilities and Other Providers*

If you have a medical condition that the Claims Administrator believes needs special services, they may direct you to a Designated Facility or other provider chosen by them. If you require certain complex Covered Health Services for which expertise is limited, the Claims Administrator may direct you to a non-Network facility or provider.

In both cases, Network Benefits will only be paid if your Covered Health Services for that condition are provided by or arranged by the Designated Facility or other provider chosen by the Claims Administrator.

You or your Network Physician must notify the Claims Administrator of special service needs (including, but not limited to, transplants or cancer treatment) that might warrant referral to a Designated Facility or non-Network facility or provider. If you do not notify the Claims Administrator in advance, and if you receive services from a non-Network facility (regardless of whether it is a Designated Facility) or other non-Network provider, Network Benefits will not be paid. Non-Network Benefits may be available if the special needs services you receive are Covered Health Services for which Benefits are provided under the Plan.

### *Health Services from Non-Network Providers Paid as Network Benefits*

If specific Covered Health Services are not available from a Network provider, you may be eligible for Network Benefits when Covered Health Services are received from non-Network providers. In this situation, your Network Physician will notify the Claims

*To continue reading, go to right column on this page.*

Administrator, and they will work with you and your Network Physician to coordinate care through a non-Network provider.

When you receive Covered Health Services through a Network Physician, we will pay Network Benefits for those Covered Health Services, even if one or more of those Covered Health Services is received from a non-Network provider.

If no Network specialist is available within 30 miles, the member should contact Care Coordination to request Network Gap coverage at the Network Benefit level.

### *Limitations on Selection of Providers*

If the Claims Administrator determines that you are using health care services in a harmful or abusive manner, or with harmful frequency, your selection of Network providers may be limited. If this happens, you may be required to select a single Network Physician to provide and coordinate all future Covered Health Services.

If you don't make a selection within 31 days of the date we notify you, the Claims Administrator will select a single Network Physician for you.

If you fail to use the selected Network Physician, Covered Health Services will be paid as Non-Network Benefits.

## Non-Network Benefits

Non-Network Benefits are generally paid at a lower level than Network Benefits. Non-Network Benefits are payable for Covered Health Services which are either of the following:

- Provided by non-Network providers.

*To continue reading, go to left column on next page.*

- Provided under the direction of a Non-Network Physician, at a non-Network facility or program.

Depending on the geographic area and the service you receive, you may have access through the Claim's Administrator's Shared Savings Program to providers who have agreed to discount their charges for Covered Health Services. If you receive Covered Health Services from these providers, and if your Copayment is expressed as a percentage of Eligible Expenses for Non-Network Benefits, that percentage will remain the same as it is when you receive Covered Health Services from non-Network providers who have not agreed to discount their charges; however, the total that you owe may be less when you receive Covered Health Services from Shared Savings Program providers than from other non-Network providers, because the Eligible Expense may be a lesser amount.

### *Notification Requirement*

You must notify the Claims Administrator before getting certain Covered Health Services from non-Network providers. The details are shown in the *Must You Notify the Claims Administrator?* column in (Section 1: What's Covered--Benefits). If you fail to notify the Claims Administrator, Benefits are reduced or denied.

Prior notification does not mean Benefits are payable in all cases. Coverage depends on the Covered Health Services that are actually given, your eligibility status, and any benefit limitations.

### *Care Coordination*[SM]

When you notify the Claims Administrator as described above, they will work to implement the Care Coordination[SM] process and to provide you with information about additional services that are available to you, such as disease management programs, health education, pre-admission counseling and patient advocacy.

*To continue reading, go to right column on this page.*

## Emergency Health Services

We provide Benefits for Emergency Health Services when required for stabilization and initiation of treatment as provided by or under the direction of a Physician.

Network Benefits are paid for Emergency Health Services, even if the services are provided by a non-Network provider.

If you are confined in a non-Network Hospital after you receive Emergency Health Services, the Claims Administrator must be notified within one business day or on the same day of admission if reasonably possible. The Claims Administrator may elect to transfer you to a Network Hospital as soon as it is medically appropriate to do so. If you choose to stay in the non-Network Hospital after the date the Claims Administrator decides a transfer is medically appropriate, Non-Network Benefits may be available if the continued stay is determined to be a Covered Health Service.

*To continue reading, go to left column on next page.*

# Section 4: When Coverage Begins

This section includes information about:

- How to enroll.
- If you are hospitalized when this coverage begins.
- Who is eligible for coverage.
- When to enroll.
- When coverage begins.

## How to Enroll

To enroll, the Eligible Person must complete an enrollment form. The Plan Administrator or its designee will give the necessary forms to you, along with instructions about submitting your enrollment form and any required contribution for coverage. We will not provide Benefits for health services that you receive before your effective date of coverage.

## If You Are Hospitalized When Your Coverage Begins

If you are an inpatient in a Hospital, Skilled Nursing Facility or Inpatient Rehabilitation Facility on the day your coverage begins, we will pay Benefits for Covered Health Services related to that

*To continue reading, go to right column on this page.*

Inpatient Stay as long as you receive Covered Health Services in accordance with the terms of the Plan.

You should notify the Claims Administrator within 48 hours of the day your coverage begins, or as soon as is reasonably possible. Network Benefits are available only if you receive Covered Health Services from Network Providers.

## If You Are Eligible for Medicare

Your Benefits under the Plan may be reduced if you are eligible for Medicare but do not enroll in and maintain coverage under both Medicare Part A and Part B.

Your Benefits under the Plan may also be reduced if you are enrolled in a Medicare+Choice (Medicare Part C) plan but fail to follow the rules of that plan. Please see *Medicare Eligibility* in (Section 9: General Legal Provisions) for more information about how Medicare may affect your Benefits.

*To continue reading, go to left column on next page.*

# Who is Eligible for Coverage

| Who | Description | Who Determines Eligibility |
|---|---|---|
| **Eligible Person** | Eligible Person usually refers to an employee of ours who meets the eligibility rules. When an Eligible Person actually enrolls, we refer to that person as a Participant. For a complete definition of Eligible Person and Participant, see (Section 10: Glossary of Defined Terms).If both spouses are Eligible Persons under the Plan, each may enroll as a Participant or be covered as an Enrolled Dependent of the other, but not both.<br><br>Except as we have described in (Section 4: When Coverage Begins), Eligible Persons may not enroll without our written permission. | We determine who is eligible to enroll under the Plan. |
| **Dependent** | Dependent generally refers to the Participant's spouse and children. When a Dependent actually enrolls, we refer to that person as an Enrolled Dependent. For a complete definition of Dependent and Enrolled Dependent, see (Section 10: Glossary of Defined Terms).<br><br>Dependents of an Eligible Person may not enroll unless the Eligible Person is also covered under the Plan. If both parents of a Dependent child are enrolled as a Participant, only one parent may enroll the child as a Dependent.<br><br>Except as we have described in (Section 4: When Coverage Begins), Dependents may not enroll without our written permission. | We determine who qualifies as a Dependent. |

# When to Enroll and When Coverage Begins

| When to Enroll | Who Can Enroll | Begin Date |
|---|---|---|
| **Initial Enrollment Period**<br>The Initial Enrollment Period is the first period of time when Eligible Persons can enroll. | Eligible Persons may enroll themselves and their Dependents. | Coverage begins on the date identified by the Plan Administrator, if the Plan Administrator receives the completed enrollment form and any required contribution for coverage within 31 days of the date the Eligible Person becomes eligible to enroll. |
| **Open Enrollment Period** | Eligible Persons may enroll themselves and their Dependents. | The Plan Administrator determines the Open Enrollment Period. Coverage begins on the date identified by the Plan Administrator if the Plan Administrator receives the completed enrollment form and any required contribution within 31 days of the date the Eligible Person becomes eligible to enroll. |
| **New Eligible Persons** | New Eligible Persons may enroll themselves and their Dependents. | Coverage begins on the 1st of the month following 30 days of employment provided the Plan Administrator receives the properly completed enrollment form and any required contribution for coverage within the 31 days of the date the New Eligible Person becomes eligible to enroll. |
| **Adding New Dependents** | Participants may enroll Dependents who join their family because of any of the following events:<br>• Marriage. | Coverage begins on the date of the event if the Plan Administrator received the completed enrollment form and any required contribution for coverage within 60 days of the event that |

| When to Enroll | Who Can Enroll | Begin Date |
|---|---|---|
| | • Birth.<br>• Legal adoption.<br>• Placement for adoption.<br>• Legal guardianship.<br>• Court or administrative order. | makes the new Dependent eligible. |

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. - 01/01/13
54
(Section 4: When Coverage Begins)

| When to Enroll | Who Can Enroll | Begin Date |
| --- | --- | --- |
| **Special Enrollment Period**<br>An Eligible Person and/or Dependent may also be able to enroll during a special enrollment period. A special enrollment period is not available to an Eligible Person and his or her Dependents if coverage under the prior plan was terminated for cause, or because premiums were not paid on a timely basis. | A special enrollment period applies to an Eligible Person and any Dependents when one of the following events occurs:<br>• Birth.<br>• Legal Adoption.<br>• Placement for adoption.<br>• Marriage. | **Event Takes Place** (for example, a birth, marriage or determination of eligibility for state subsidy). Unless otherwise noted under the "Who Can Enroll" column, coverage begins on the date of the event if the Plan Administrator receives the completed enrollment information and any required contribution within 60 days of the event. |
| | A special enrollment period applies for an Eligible Person and/or Dependent who did not enroll during the Initial Enrollment Period or Open Enrollment Period if the following are true:<br>• The Eligible Person previously declined coverage under the Plan, but the Eligible Person and/or Dependent becomes eligible for a premium assistance subsidy under Medicaid or CHIP (you must notify the Plan Administrator within 60 days of determination of subsidy eligibility);<br>• The Eligible Person and/or Dependent had existing health coverage under another plan at the time they had an opportunity to enroll during the Initial Enrollment Period or Open Enrollment Period; and<br>• Coverage under the prior plan ended because of any of the following:<br>— Loss of eligibility (including, without limitation, legal separation, divorce or death). | **Missed Initial Enrollment Period or Open Enrollment Period.** Unless otherwise noted under the "Who Can Enroll" column, coverage begins on the day immediately following the day coverage under the prior plan ends if the Plan Administrator receives the completed enrollment form and any required contribution within 60 days of the date coverage under the prior plan ended. |

| When to Enroll | Who Can Enroll | Begin Date |
| --- | --- | --- |
| | — The employer stopped paying the contributions.<br>— termination of your or your Dependent's Medicaid or Children's Health Insurance Program (CHIP) coverage as a result of loss of eligibility (you must notify the Plan Administrator within 60 days of termination).<br>— In the case of COBRA continuation coverage, the coverage ended.<br>— The Eligible Person and/or Dependent no longer lives or works in an HMO service area if no other benefit option is available.<br>— The Plan no longer offers benefits to a class of individuals that include the Eligible Person and/or Dependent. | |

# Section 5: How to File a Claim

This section provides you with information about:

- How and when to file a claim.
- If you receive Covered Health Services from a Network provider, you do not have to file a claim. We pay these providers directly.
- If you receive Covered Health Services from a non-Network provider, you are responsible for filing a claim.

## If You Receive Covered Health Services from a Network Provider

We pay Network providers directly for your Covered Health Services. If a Network provider bills you for any Covered Health Service, contact the Claims Administrator. However, you are responsible for meeting the Annual Deductible and for paying Copayments to a Network provider at the time of service, or when you receive a bill from the provider.

## Filing a Claim for Benefits

When you receive Covered Health Services from a non-Network provider, you are responsible for requesting payment from us through the Claims Administrator. You must file the claim in a

*To continue reading, go to right column on this page.*

format that contains all of the information required, as described below.

You must submit a request for payment of Benefits within 90 days after the date of service. If you don't provide this information to the Claims Administrator within one year of the date of service, Benefits for that health service will be denied or reduced, in the Claims Administrator's discretion. This time limit does not apply if you are legally incapacitated. If your claim relates to an Inpatient Stay, the date of service is the date your Inpatient Stay ends.

If a Participant provides written authorization to allow direct payment to a provider, all or a portion of any Eligible Expenses due to a provider may be paid directly to the provider instead of being paid to the Participant. We will not reimburse third parties who have purchased or been assigned benefits by Physicians or other providers.

### *Pharmacy Benefit Claims*

If you are asked to pay the full cost of a prescription when you fill it at a retail or mail-order pharmacy and you believe that the Plan should have paid for it, you may submit a claim for reimbursement as set forth in the procedures for filing a post-service group health plan claim (described in this section). If you pay a Copayment and you believe that the amount of the Copayment was incorrect, you also may submit a claim for reimbursement as set forth in the procedures for filing a post-service group health plan claim.

If a retail or mail order pharmacy fails to fill a prescription that you have presented, you may contact the Claims Administer by submitting a claim for coverage as set forth in the procedures for filing a pre-service health plan claim (described in this section).

*To continue reading, go to left column on next page.*

### *Required Information*

When you request payment of Benefits from us, you must provide all of the following information:

A. Participant's name and address.
B. The patient's name, age and relationship to the Participant.
C. The member number stated on your ID card.
D. An itemized bill from your provider that includes the following:
   - Patient Diagnosis
   - Date of service
   - Procedure Code(s) and descriptions of service(s) rendered
   - Provider of service (Name, Address and Tax Identification Number)
E. The date the Injury or Sickness began.
F. A statement indicating either that you are, or you are not, enrolled for coverage under any other health insurance plan or program. If you are enrolled for other coverage you must include the name of the other carrier(s).

### *Payment of Benefits*

Through the Claims Administrator, we will make a benefit determination as set forth below.

You may not assign your Benefits under the Plan to a non-Network provider without our consent. The Claims Administrator may, however, in their discretion, pay a non-Network provider directly for services rendered to you.

The Claims Administrator will notify you if additional information is needed to process the claim. The Claims Administrator may request a one time extension not longer than 15 days and will pend your claim until all information is received. Once you are notified of the

*To continue reading, go to right column on this page.*

extension or missing information, you then have at least 45 days to provide this information.

### *Benefit Determinations*

*Post-Service Claims*

Post-Service Claims are those claims that are filed for payment of benefits after medical care has been received. If your post-service claim is denied, you will receive a written notice from the Claims Administrator within 30 days of receipt of the claim, as long as all needed information was provided with the claim. The Claims Administrator will notify you within this 30 day period if additional information is needed to process the claim, and may request a one time extension not longer than 15 days and pend your claim until all information is received.

Once notified of the extension you then have 45 days to provide this information. If all of the needed information is received within the 45 day time frame and the claim is denied, the Claims Administrator will notify you of the denial within 15 days after the information is received. If you don't provide the needed information within the 45 day period, your claim will be denied.

A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

*Pre-Service Claims*

Pre-service claims are those claims that require notification or approval prior to receiving medical care. If your claim was a pre-service claim, and was submitted properly with all needed information, you will receive written notice of the claim decision from the Claims Administrator within 15 days of receipt of the claim. If you filed a pre-service claim improperly, the Claims

*To continue reading, go to left column on next page.*

Administrator will notify you of the improper filing and how to correct it within 5 days after the pre-service claim was received. If additional information is needed to process the pre-service claim, the Claims Administrator will notify you of the information needed within 15 days after the claim was received, and may request a one time extension not longer than 15 days and pend your claim until all information is received. Once notified of the extension you then have 45 days to provide this information. If all of the needed information is received within the 45 day time frame, the Claims Administrator will notify you of the determination within 15 days after the information is received. If you don't provide the needed information within the 45 days period, your claim will be denied. A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

## *Urgent Requests for Benefits that Require Immediate Action*

Urgent claims are those claims that require notification or approval prior to receiving medical care, where a delay in treatment could seriously jeopardize your life or health or the ability to regain maximum function or, in the opinion of a physician with knowledge of your medical condition could cause severe pain. In these situations:

- You will receive notice of the benefit determination in writing or electronically within 72 hours after the Claims Administrator receives all necessary information, taking into account the seriousness of your condition.
- Notice of denial may be oral with a written or electronic confirmation to follow within 3 days.

If you filed an urgent claim improperly, the Claims Administrator will notify you of the improper filing and how to correct it within 24

*To continue reading, go to right column on this page.*

hours after the urgent claim was received. If additional information is needed to process the claim, the Claims Administrator will notify you of the information needed within 24 hours after the claim was received. You then have 48 hours to provide the requested information.

You will be notified of a determination no later than 48 hours after:

- The Claims Administrator's receipt of the requested information; or
- The end of the 48-hour period within which you were to provide the additional information, if the information is not received within that time.

A denial notice will explain the reason for denial, refer to the part of the Plan on which the denial is based, and provide the claim appeal procedures.

### *Concurrent Care Claims*

If an on-going course of treatment was previously approved for a specific period of time or number of treatments, and your request to extend the treatment is an Urgent Care request for Benefits as defined above, your request will be decided within 24 hours, provided your request is made at least 24 hours prior to the end of the approved treatment. The Claims Administrator will make a determination on your request for the extended treatment within 24 hours from receipt of your request.

If your request for extended treatment is not made at least 24 hours prior to the end of the approved treatment, the request will be treated as an urgent claim and decided according to the timeframes described above. If an on-going course of treatment was previously approved for a specific period of time or number of treatments, and you request to extend treatment in a non-urgent circumstance, your

*To continue reading, go to left column on next page.*

request will be considered a new claim and decided according to post-service or pre-service timeframes, whichever applies.

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. - 01/01/13
60
(Section 5: How to File a Claim)

# Section 6: Questions, Complaints and Appeals

This section provides you with information to help you with the following:

- You have a question or concern about Covered Health Services or your Benefits.
- You have a Complaint.
- How to handle an appeal that requires immediate action.
- You are notified that a claim has been denied because it has been determined that a service or supply is excluded under the Plan and you wish to appeal such determination.

To resolve a question or appeal, just follow these steps:

## What to Do First

If your question or concern is about a benefit determination, you may informally contact Customer Service before requesting a formal appeal.

If the Customer Service representative cannot resolve the issue to your satisfaction over the phone, you may submit your question in

*To continue reading, go to right column on this page.*

writing. However, if you are not satisfied with a benefit determination as described in (Section 5: How to File a Claim) you may appeal it as described below, without first informally contacting Customer Service. If you first informally contact Customer Service and later wish to request a formal appeal in writing, you should contact Customer Service and request an appeal. If you request a formal appeal, a Customer Service representative will provide you with the appropriate address of the Claims Administrator.

If you are appealing an urgent care claim denial, please refer to the "Urgent Claim Appeals that Require Immediate Action" section below and contact Customer Service immediately.

The Customer Service telephone number is shown on your ID card. Customer Service representatives are available to take your call.

## How to Appeal a Claim Decision

If you disagree with a pre-service or post-service claim determination after following the above steps, you can contact the Claims Administrator in writing to formally request an appeal.

Your request should include:

- The patient's name and the identification number from the ID card.
- The date(s) of medical service(s).
- The provider's name.
- The reason you believe the claim should be paid.
- Any documentation or other written information to support your request for claim payment.

Your first appeal request must be submitted to the Claims Administrator within 180 days after you receive the claim denial.

*To continue reading, go to left column on next page.*

## Appeal Process

A qualified individual who was not involved in the decision being appealed will be appointed to decide the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field who was not involved in the prior determination. The Claims Administrator may consult with, or seek the participation of, medical experts as part of the appeal resolution process. You consent to this referral and the sharing of pertinent medical claim information. Upon request and free of charge you have the right to reasonable access to and copies of, all documents, records, and other information relevant to your claim for benefits.

## Appeals Determinations

### Pre-Service and Post-Service Claim Appeals

You will be provided written or electronic notification of decision on your appeal as follows:

For appeals of pre-service claims, (as defined in Section 5: How to File a Claim), the first level appeal will be conducted and you will be notified by the Claims Administrator of the decision within 15 days from receipt of a request for appeal of a denied claim. The second level appeal will be conducted and you will be notified by the Claims Administrator of the decision within 15 days from receipt of a request for review of the first level appeal decision.

For appeals of post-service claims (as defined in Section 5: How to File a Claim), the first level appeal will be conducted and you will be notified by the Claims Administrator of the decision within 30 days from receipt of a request for appeal of a denied claim. The second level appeal will be conducted and you will be notified by the Claims Administrator of the decision within 30 days from receipt of a request for review of the first level appeal decision.

*To continue reading, go to right column on this page.*

For procedures associated with urgent claims, see "Urgent Claim Appeals that Require Immediate Action" below.

If you are not satisfied with the first level appeal decision of the Claims Administrator, you have the right to request a second level appeal from the Claims Administrator. Your second level appeal request must be submitted to the Claims Administrator in writing within 60 days from receipt of the first level appeal decision.

For pre-service and post-service claim appeals, we have delegated to the Claims Administrator the exclusive right to interpret and administer the provisions of the Plan. The Claims Administrator's decisions are conclusive and binding.

Please note that the Claims Administrator's decision is based only on whether or not Benefits are available under the Plan for the proposed treatment or procedure. The determination as to whether the pending health service is necessary or appropriate is between you and your Physician.

## Urgent Claim Appeals that Require Immediate Action

Your appeal may require immediate action if a delay in treatment could significantly increase the risk to your health or the ability to regain maximum function or cause severe pain. In these urgent situations:

The appeal does not need to be submitted in writing. You or your Physician should call the Claims Administrator as soon as possible. The Claims Administrator will provide you with a written or electronic determination within 72 hours following receipt by the Claims Administrator of your request for review of the determination taking into account the seriousness of your condition.

*To continue reading, go to left column on next page.*

For urgent claim appeals, we have delegated to the Claims Administrator the exclusive right to interpret and administer the provisions of the Plan. The Claims Administrator's decisions are conclusive and binding.

## Federal External Review Program

If, after exhausting your internal appeals, you are not satisfied with the determination made by UnitedHealthcare, or if UnitedHealthcare fails to respond to your appeal in accordance with applicable regulations regarding timing, you may be entitled to request an external review of UnitedHealthcare's determination. The process is available at no charge to you.

If one of the above conditions is met, you may request an external review of adverse benefit determinations based upon any of the following:

- clinical reasons;
- the exclusions for Experimental or Investigational Services or Unproven Services;
- rescission of coverage (coverage that was cancelled or discontinued retroactively); or
- as otherwise required by applicable law.

You or your representative may request a standard external review by sending a written request to the address set out in the determination letter. You or your representative may request an expedited external review, in urgent situations as detailed below, by calling the toll-free number on your ID card or by sending a written request to the address set out in the determination letter. A request must be made within four months after the date you received UnitedHealthcare's decision.

*To continue reading, go to right column on this page.*

An external review request should include all of the following:

- a specific request for an external review;
- the Covered Person's name, address, and insurance ID number;
- your designated representative's name and address, when applicable;
- the service that was denied; and
- any new, relevant information that was not provided during the internal appeal.

An external review will be performed by an Independent Review Organization (IRO). The Claims Administrator has entered into agreements with three or more IROs that have agreed to perform such reviews. There are two types of external reviews available:

- a standard external review; and
- an expedited external review.

***Standard External Review***

A standard external review is comprised of all of the following:

- a preliminary review by The Claims Administrator of the request;
- a referral of the request by The Claims Administrator to the IRO; and
- a decision by the IRO.

Within the applicable timeframe after receipt of the request, The Claims Administrator will complete a preliminary review to determine whether the individual for whom the request was submitted meets all of the following:

*To continue reading, go to left column on next page.*

- is or was covered under the Plan at the time the health care service or procedure that is at issue in the request was provided;
- has exhausted the applicable internal appeals process; and
- has provided all the information and forms required so that The Claims Administrator may process the request.

After The Claims Administrator completes the preliminary review, The Claims Administrator will issue a notification in writing to you. If the request is eligible for external review, The Claims Administrator will assign an IRO to conduct such review. The Claims Administrator will assign requests by either rotating claims assignments among the IROs or by using a random selection process.

The IRO will notify you in writing of the request's eligibility and acceptance for external review. You may submit in writing to the IRO within ten business days following the date of receipt of the notice additional information that the IRO will consider when conducting the external review. The IRO is not required to, but may, accept and consider additional information submitted by you after ten business days.

The Claims Administrator will provide to the assigned IRO the documents and information considered in making UnitedHealthcare's determination. The documents include:

- all relevant medical records;
- all other documents relied upon by UnitedHealthcare; and
- all other information or evidence that you or your Physician submitted. If there is any information or evidence you or your Physician wish to submit that was not previously provided, you may include this information with your external review request and The Claims Administrator will include it with the documents forwarded to the IRO.

*To continue reading, go to right column on this page.*

In reaching a decision, the IRO will review the claim anew and not be bound by any decisions or conclusions reached by UnitedHealthcare. The IRO will provide written notice of its determination (the "Final External Review Decision") within 45 days after it receives the request for the external review (unless they request additional time and you agree). The IRO will deliver the notice of Final External Review Decision to you and The Claims Administrator, and it will include the clinical basis for the determination.

Upon receipt of a Final External Review Decision reversing UnitedHealthcare's determination, the Plan will immediately provide coverage or payment for the benefit claim at issue in accordance with the terms and conditions of the Plan, and any applicable law regarding plan remedies. If the Final External Review Decision is that payment or referral will not be made, the Plan will not be obligated to provide Benefits for the health care service or procedure.

***Expedited External Review***

An expedited external review is similar to a standard external review. The most significant difference between the two is that the time periods for completing certain portions of the review process are much shorter, and in some instances you may file an expedited external review before completing the internal appeals process.

You may make a written or verbal request for an expedited external review if you receive either of the following:

- an adverse benefit determination of a claim or appeal if the adverse benefit determination involves a medical condition for which the time frame for completion of an expedited internal

*To continue reading, go to left column on next page.*

appeal would seriously jeopardize the life or health of the individual or would jeopardize the individual's ability to regain maximum function and you have filed a request for an expedited internal appeal; or

- a final appeal decision, if the determination involves a medical condition where the timeframe for completion of a standard external review would seriously jeopardize the life or health of the individual or would jeopardize the individual's ability to regain maximum function, or if the final appeal decision concerns an admission, availability of care, continued stay, or health care service, procedure or product for which the individual received emergency services, but has not been discharged from a facility.

Immediately upon receipt of the request, The Claims Administrator will determine whether the individual meets both of the following:

- is or was covered under the Plan at the time the health care service or procedure that is at issue in the request was provided.
- has provided all the information and forms required so that The Claims Administrator may process the request.

After The Claims Administrator completes the review, The Claims Administrator will immediately send a notice in writing to you. Upon a determination that a request is eligible for expedited external review, The Claims Administrator will assign an IRO in the same manner The Claims Administrator utilizes to assign standard external reviews to IROs. The Claims Administrator will provide all necessary documents and information considered in making the adverse benefit determination or final adverse benefit determination to the assigned IRO electronically or by telephone or facsimile or any other available expeditious method. The IRO, to the extent the information or documents are available and the IRO considers them

*To continue reading, go to right column on this page.*

appropriate, must consider the same type of information and documents considered in a standard external review.

In reaching a decision, the IRO will review the claim anew and not be bound by any decisions or conclusions reached by UnitedHealthcare. The IRO will provide notice of the final external review decision for an expedited external review as expeditiously as the claimant's medical condition or circumstances require, but in no event more than 72 hours after the IRO receives the request. If the initial notice is not in writing, within 48 hours after the date of providing the initial notice, the assigned IRO will provide written confirmation of the decision to you and to The Claims Administrator.

You may contact The Claims Administrator at the toll-free Customer Service number on your ID card for more information regarding external review rights, or if making a verbal request for an expedited external review.

*To continue reading, go to left column on next page.*

# Section 7: Coordination of Benefits

This section provides you with information about:

- What you need to know when you have coverage under more than one plan.
- Definitions specific to Coordination of Benefit rules.
- Order of payment rules.

## Benefits When You Have Coverage under More than One Plan

This section describes how Benefits under the Plan will be coordinated with those of any other plan that provides benefits to you.

## When Coordination of Benefits Applies

This coordination of benefits (COB) provision applies when a person has health care coverage under more than one benefit plan.

The order of benefit determination rules described in this section determine which Coverage Plan will pay as the Primary Coverage Plan. The Primary Coverage Plan that pays first pays without regard to the possibility that another Coverage Plan may cover some expenses. A Secondary Coverage Plan pays after the Primary Coverage Plan and may reduce the benefits it pays.

*To continue reading, go to right column on this page.*

## Definitions

For purposes of this section, terms are defined as follows:

1. "Coverage Plan" is any of the following that provides benefits or services for medical or dental care or treatment. However, if separate contracts are used to provide coordinated coverage for members of a group, the separate contracts are considered parts of the same Coverage Plan and there is no COB among those separate contracts.
   a. "Coverage Plan" includes: group insurance, closed panel or other forms of group or group-type coverage (whether insured or uninsured); medical care components of group long-term care contracts, such as skilled nursing care; medical benefits under group or individual automobile contracts; and Medicare or other governmental benefits, as permitted by law.
   b. "Coverage Plan" does not include: individual or family insurance; closed panel or other individual coverage (except for group-type coverage); school accident type coverage; benefits for non-medical components of group long-term care policies; Medicare supplement policies, Medicaid policies and coverage under other governmental plans, unless permitted by law.

   Each contract for coverage under a. or b. above is a separate Coverage Plan. If a Coverage Plan has two parts and COB rules apply only to one of the two, each of the parts is treated as a separate Coverage Plan.
2. The order of benefit determination rules determine whether this Coverage Plan is a "Primary Coverage Plan" or "Secondary Coverage Plan" when compared to another Coverage Plan covering the person.

   When this Coverage Plan is primary, its benefits are determined before those of any other Coverage Plan and without considering

*To continue reading, go to left column on next page.*

any other Coverage Plan's benefits. When this Coverage Plan is secondary, its benefits are determined after those of another Coverage Plan and may be reduced because of the Primary Coverage Plan's benefits.

3. "Allowable Expense" means a health care service or expense, including deductibles and copayments, that is covered at least in part by any of the Coverage Plans covering the person. When a Coverage Plan provides benefits in the form of services, (for example an HMO) the reasonable cash value of each service will be considered an Allowable Expense and a benefit paid. An expense or service that is not covered by any of the Coverage Plans is not an Allowable Expense. Dental care, routine vision care, outpatient prescription drugs, and hearing aids are examples of expenses or services that are not Allowable Expenses under the Plan. The following are additional examples of expenses or services that are not Allowable Expenses:
   a. If a Covered Person is confined in a private Hospital room, the difference between the cost of a Semi-private Room in the Hospital and the private room, (unless the patient's stay in a private Hospital room is medically necessary in terms of generally accepted medical practice, or one of the Coverage Plans routinely provides coverage for Hospital private rooms) is not an Allowable Expense.
   b. If a person is covered by two or more Coverage Plans that compute their benefit payments on the basis of usual and customary fees, any amount in excess of the highest of the usual and customary fees for a specific benefit is not an Allowable Expense.
   c. If a person is covered by two or more Coverage Plans that provide benefits or services on the basis of negotiated fees, an amount in excess of the highest of the negotiated fees is not an Allowable Expense.

*To continue reading, go to right column on this page.*

   d. If a person is covered by one Coverage Plan that calculates its benefits or services on the basis of usual and customary fees and another Coverage Plan that provides its benefits or services on the basis of negotiated fees, the Primary Coverage Plan's payment arrangements shall be the Allowable Expense for all Coverage Plans.
   e. The amount a benefit is reduced by the Primary Coverage Plan because a Covered Person does not comply with the Coverage Plan provisions. Examples of these provisions are second surgical opinions, precertification of admissions, and preferred provider arrangements.
4. "Closed Panel Plan" is a Coverage Plan that provides health benefits to Covered Persons primarily in the form of services through a panel of providers that have contracted with or are employed by the Coverage Plan, and that limits or excludes benefits for services provided by other providers, except in cases of emergency or referral by a panel member.
5. "Custodial Parent" means a parent awarded custody by a court decree. In the absence of a court decree, it is the parent with whom the child resides more than one half of the calendar year without regard to any temporary visitation.

## Order of Benefit Determination Rules

When two or more Coverage Plans pay benefits, the rules for determining the order of payment are as follows:

A. The Primary Coverage Plan pays or provides its benefits as if the Secondary Coverage Plan or Coverage Plans did not exist.
B. A Coverage Plan that does not contain a coordination of benefits provision that is consistent with this provision is always primary. There is one exception: coverage that is obtained by virtue of membership in a group that is designed to supplement a part of a basic package of benefits may provide that the supplementary

*To continue reading, go to left column on next page.*

coverage shall be excess to any other parts of the Coverage Plan provided by the contract holder. Examples of these types of situations are major medical coverages that are superimposed over base Coverage Plan hospital and surgical benefits, and insurance type coverages that are written in connection with a closed panel Coverage Plan to provide out-of-network benefits.

C. A Coverage Plan may consider the benefits paid or provided by another Coverage Plan in determining its benefits only when it is secondary to that other Coverage Plan.

D. The first of the following rules that describes which Coverage Plan pays its benefits before another Coverage Plan is the rule to use.

1. Non-Dependent or Dependent. The Coverage Plan that covers the person other than as a dependent, for example as an employee, member, subscriber or retiree is primary and the Coverage Plan that covers the person as a dependent is secondary. However, if the person is a Medicare beneficiary and, as a result of federal law, Medicare is secondary to the Coverage Plan covering the person as a dependent; and primary to the Coverage Plan covering the person as other than a dependent (e.g. a retired employee); then the order of benefits between the two Coverage Plans is reversed so that the Coverage Plan covering the person as an employee, member, subscriber or retiree is secondary and the other Coverage Plan is primary.

2. Child Covered Under More Than One Coverage Plan. The order of benefits when a child is covered by more than one Coverage Plan is:

   a. The Primary Coverage Plan is the Coverage Plan of the parent whose birthday is earlier in the year if:

      1) The parents are married;

*To continue reading, go to right column on this page.*

      2) The parents are not separated (whether or not they ever have been married); or

      3) A court decree awards joint custody without specifying that one party has the responsibility to provide health care coverage.

   If both parents have the same birthday, the Coverage Plan that covered either of the parents longer is primary.

   b. If the specific terms of a court decree state that one of the parents is responsible for the child's health care expenses or health care coverage and the Coverage Plan of that parent has actual knowledge of those terms, that Coverage Plan is primary. This rule applies to claim determination periods or plan years commencing after the Coverage Plan is given notice of the court decree.

   c. If the parents are not married, or are separated (whether or not they ever have been married) or are divorced, the order of benefits is:

      1) The Coverage Plan of the custodial parent;

      2) The Coverage Plan of the spouse of the custodial parent;

      3) The Coverage Plan of the noncustodial parent; and then

      4) The Coverage Plan of the spouse of the noncustodial parent.

3. Active or inactive employee. The Coverage Plan that covers a person as an employee who is neither laid off nor retired is primary. The same would hold true if a person is a dependent of a person covered as a retiree and an employee. If the other Coverage Plan does not have this rule, and if, as a result, the Coverage Plans do not agree on the order of benefits, this rule is ignored. Coverage provided an individual as a retired

*To continue reading, go to left column on next page.*

worker and as a dependent of an actively working spouse will be determined under the rule labeled D(1).

4. Continuation coverage. If a person whose coverage is provided under a right of continuation provided by federal or state law also is covered under another Coverage Plan, the Coverage Plan covering the person as an employee, member, subscriber or retiree (or as that person's dependent) is primary, and the continuation coverage is secondary. If the other Coverage Plan does not have this rule, and if, as a result, the Coverage Plans do not agree on the order of benefits, this rule is ignored.
5. Longer or shorter length of coverage. The Coverage Plan that covered the person as an employee, member, subscriber or retiree longer is primary.
6. If a husband or wife is covered under this Coverage Plan as a Participant and as an Enrolled Dependent, the dependent benefits will be coordinated as if they were provided under another Coverage Plan, this means the Participant's benefit will pay first.
7. If the preceding rules do not determine the Primary Coverage Plan, the Allowable Expenses shall be shared equally between the Coverage Plans meeting the definition of Coverage Plan under this provision. In addition, this Coverage Plan will not pay more than it would have paid had it been primary.

## Effect on the Benefits of this Plan

A. When this Coverage Plan is secondary, it may reduce its benefits by the total amount of benefits paid or provided by all Coverage Plans Primary to this Coverage Plan. As each claim is submitted, this Coverage Plan will:

1. Determine its obligation to pay or provide benefits under its contract;

*To continue reading, go to right column on this page.*

2. Determine the difference between the benefit payments that this Coverage Plan would have paid had it been the Primary Coverage Plan and the benefit payments paid or provided by all Coverage Plans Primary to this Coverage Plan.

If there is a difference, this Coverage Plan will pay that amount. Benefits paid or provided by this Coverage Plan plus those of Coverage Plans primary to this Coverage Plan may be less than 100 percent of total Allowable Expenses.

B. If a Covered Person is enrolled in two or more closed panel Coverage Plans and if, for any reason, including the provision of service by a non-panel provider, benefits are not payable by one closed panel Coverage Plan, COB shall not apply between that Coverage Plan and other closed panel Coverage Plans.

C. This Coverage Plan reduces its benefits as described below for Covered Persons who are eligible for Medicare when Medicare would be the Primary Coverage Plan.

Medicare benefits are determined as if the full amount that would have been payable under Medicare was actually paid under Medicare, even if:

- The person is entitled but not enrolled for Medicare. Medicare benefits are determined as if the person were covered under Medicare Parts A and B.
- The person is enrolled in a Medicare+Choice (Medicare Part C) plan and receives non-covered services because the person did not follow all rules of that plan. Medicare benefits are determined as if the services were covered under Medicare Parts A and B.
- The person receives services from a provider who has elected to opt-out of Medicare. Medicare benefits are determined as if the services were covered under Medicare Parts A and B

*To continue reading, go to left column on next page.*

and the provider had agreed to limit charges to the amount of charges allowed under Medicare rules.

- The services are provided in any facility that is not eligible for Medicare reimbursements, including a Veterans Administration facility, facility of the Uniformed Services, or other facility of the federal government. Medicare benefits are determined as if the services were provided by a facility that is eligible for reimbursement under Medicare.
- The person is enrolled under a plan with a Medicare Medical Savings Account. Medicare benefits are determined as if the person were covered under Medicare Parts A and B.

## Right to Receive and Release Needed Information

Certain facts about health care coverage and services are needed to apply these COB rules and to determine benefits payable under this Coverage Plan and other Coverage Plans. The Plan Administrator may get the facts it needs from, or give them to, other organizations or persons for the purpose of applying these rules and determining benefits payable under this Coverage Plan and other Coverage Plans covering the person claiming benefits.

The Plan Administrator need not tell, or get the consent of, any person to do this. Each person claiming benefits under this Coverage Plan must give us any facts we need to apply those rules and determine benefits payable. If you do not provide us the information we need to apply these rules and determine the Benefits payable, your claim for Benefits will be denied.

## Payments Made

A payment made under another Coverage Plan may include an amount that should have been paid under this Coverage Plan. If it

*To continue reading, go to right column on this page.*

does, we may pay that amount to the organization that made the payment. That amount will then be treated as though it were a benefit paid under this Coverage Plan. We will not have to pay that amount again. The term "payment made" includes providing benefits in the form of services, in which case "payment made" means reasonable cash value of the benefits provided in the form of services.

## Right of Recovery

If the amount of the payments we made is more than we should have paid under this COB provision, we may recover the excess from one or more of the persons we have paid or for whom we have paid; or any other person or organization that may be responsible for the benefits or services provided for you. The "amount of the payments made" includes the reasonable cash value of any benefits provided in the form of services.

*To continue reading, go to left column on next page.*

# Section 8: When Coverage Ends

This section provides you with information about all of the following:

- Events that cause coverage to end.
- The date your coverage ends.
- Extended coverage.
- Continuation of coverage under federal law (COBRA).

*To continue reading, go to right column on this page.*

## General Information about When Coverage Ends

We may discontinue this Benefit plan and/or all similar benefit plans at any time.

Your entitlement to Benefits automatically ends on the date that coverage ends, even if you are hospitalized or are otherwise receiving medical treatment on that date.

When your coverage ends, we will still pay claims for Covered Health Services that you received before your coverage ended. However, once your coverage ends, we do not provide Benefits for health services that you receive for medical conditions that occurred before your coverage ended, even if the underlying medical condition occurred before your coverage ended.

An Enrolled Dependent's coverage ends on the date the Participant's coverage ends.

*To continue reading, go to left column on next page.*

## Events Ending Your Coverage

Coverage ends on the earliest of the dates specified in the following table:

| Ending Event | What Happens |
|---|---|
| **The Entire Plan Ends** | Your coverage ends on the date the Plan ends. We are responsible for notifying you that your coverage has ended. |
| **You Are No Longer Eligible** | Your coverage ends on the date in which you are no longer eligible to be a Participant or Enrolled Dependent. Please refer to (Section 10: Glossary of Defined Terms) for a more complete definition of the terms "Eligible Person", "Participant", "Dependent" and "Enrolled Dependent".<br><br>If you terminate or are no longer eligible as referenced above, your benefits will continue through the current pay period. Based on your semi-monthly pay schedule, your coverage would terminate on either the 16th or the 1st of the month. |
| **The Plan Administrator Receives Notice to End Coverage** | Your coverage ends on the date in which the Plan Administrator receives written notice from the Participant or us instructing the Plan Administrator to end your coverage, or the date requested in the notice, if later. |

## Other Events Ending Your Coverage

When any of the following happen, we will provide prior written notice to the Participant that coverage will end on the date identified in the notice if::

| Ending Event | What Happens |
|---|---|
| **Fraud, Misrepresentation or False Information** | The Participant commits an act, practice, or omission that constituted fraud, or an intentional misrepresentation of a material fact. Examples include, but are not limited to, false information relating to another person's eligibility or status as a Dependent. |
| **Threatening Behavior** | You commit an act of physical or verbal abuse that imposes a threat to our staff, the Claims Administrator's staff, a provider, or other Covered Persons. |

## Coverage for a Handicapped Child

Coverage for an unmarried Enrolled Dependent child who is not able to be self-supporting because of mental retardation or a physical handicap will not end just because the child has reached a certain age. We will extend the coverage for that child beyond the limiting age if both of the following are true regarding the Enrolled Dependent child:

- Is not able to be self-supporting because of mental retardation or physical handicap.
- Depends mainly on the Participant for support.

Coverage will continue as long as the Enrolled Dependent is incapacitated and dependent unless coverage is otherwise terminated in accordance with the terms of the Plan.

We will ask you to furnish the Plan Administrator with proof of the child's incapacity and dependency within 31 days of the date coverage would otherwise have ended because the child reached a certain age. Before the Plan Administrator agrees to this extension of coverage for the child, the Plan Administrator may require that a Physician chosen by us examine the child. We will pay for that examination.

The Plan Administrator may continue to ask you for proof that the child continues to meet these conditions of incapacity and dependency. Such proof might include medical examinations at our expense. However, we will not ask for this information more than once a year.

If you do not provide proof of the child's incapacity and dependency within 31 days of the Plan Administrator's request as described above, coverage for that child will end.

*To continue reading, go to right column on this page.*

## Continuation of Coverage

If your coverage ends under the Plan, you may be entitled to elect continuation coverage (coverage that continues on in some form) in accordance with federal law.

Continuation coverage under COBRA (the federal Consolidated Omnibus Budget Reconciliation Act) is available only to Plans that are subject to the terms of COBRA. You can contact your Plan Administrator to determine if we are subject to the provisions of COBRA.

If you selected continuation coverage under a prior plan which was then replaced by coverage under this Plan, continuation coverage will end as scheduled under the prior plan or in accordance with the terminating events listed below, whichever is earlier.

## Continuation Coverage under Federal Law (COBRA)

Much of the language in this section comes from the federal law that governs continuation coverage. You should call your Plan Administrator if you have questions about your right to continue coverage.

In order to be eligible for continuation coverage under federal law, you must meet the definition of a "Qualified Beneficiary". A Qualified Beneficiary is any of the following persons who was covered under the Plan on the day before a qualifying event:

- A Participant.
- A Participant's Enrolled Dependent, including with respect to the Participant's children, a child born to or placed for adoption with the Participant during a period of continuation coverage under federal law.

*To continue reading, go to left column on next page.*

- A Participant's former spouse.

## Qualifying Events for Continuation Coverage under Federal Law (COBRA)

If the coverage of a Qualified Beneficiary would ordinarily terminate due to one of the following qualifying events, then the Qualified Beneficiary is entitled to continue coverage. The Qualified Beneficiary is entitled to elect the same coverage that she or he had on the day before the qualifying event.

The qualifying events with respect to an employee who is a Qualified Beneficiary are:

A. Termination of employment, for any reason other than gross misconduct.

B. Reduction in the Participant's hours of employment.

With respect to a Participant's spouse or dependent child who is a Qualified Beneficiary, the qualifying events are:

A. Termination of the Participant's employment (for reasons other than the Participant's gross misconduct).

B. Reduction in the Participant's hours of employment.

C. Death of the Participant.

D. Divorce or legal separation of the Participant.

E. Loss of eligibility by an Enrolled Dependent who is a child.

F. Entitlement of the Participant to Medicare benefits.

G. The Plan Sponsor's commencement of a bankruptcy under Title 11, United States Code. This is also a qualifying event for any retired Participant and his or her Enrolled Dependents if there is a substantial elimination of coverage within one year before or after the date the bankruptcy was filed.

*To continue reading, go to right column on this page.*

## Notification Requirements and Election Period for Continuation Coverage under Federal Law (COBRA)

### *Notification Requirements for Qualifying Event*

The Participant or other Qualified Beneficiary must notify the Plan Administrator within 60 days of the latest of the date of the following events:

- The Participant's divorce or legal separation, or an Enrolled Dependent's loss of eligibility as an Enrolled Dependent.
- The date the Qualified Beneficiary would lose coverage under the Plan.
- The date on which the Qualified Beneficiary is informed of his or her obligation to provide notice and the procedures for providing such notice.

The Participant or other Qualified Beneficiary must also notify the Plan Administrator when a second qualifying event occurs, which may extend continuation coverage.

If the Participant or other Qualified Beneficiary fails to notify the Plan Administrator of these events within the 60 day period, the Plan Administrator is not obligated to provide continued coverage to the affected Qualified Beneficiary. If a Participant is continuing coverage under federal law, the Participant must notify the Plan Administrator within 60 days of the birth or adoption of a child.

*To continue reading, go to left column on next page.*

### *Notification Requirements for Disability Determination or Change in Disability Status*

The Participant or other Qualified Beneficiary must notify the Plan Administrator as described under "Terminating Events for Continuation Coverage under Federal Law (COBRA)," subsection A. below.

The notice requirements will be satisfied by providing written notice to the Plan Administrator at the address stated in Attachment II to this Summary Plan Description. The contents of the notice must be such that the Plan Administrator is able to determine the covered employee and Qualified Beneficiary or Qualified Beneficiaries, the qualifying event or disability, and the date on which the qualifying event occurred.

None of the above notice requirements will be enforced if the Participant or other Qualified Beneficiary is not informed of his or her obligations to provide such notice.

After providing notice to the Plan Administrator, the Qualified Beneficiary shall receive the continuation coverage and election notice. Continuation coverage must be elected by the later of 60 days after the qualifying event occurs; or 60 days after the Qualified Beneficiary receives notice of the continuation right from the Plan Administrator.

The Qualified Beneficiary's initial premium due to the Plan Administrator must be paid on or before the 45th day after electing continuation.

The Trade Act of 2002 amended COBRA to provide for a special second 60-day COBRA election period for certain Participants who have experienced a termination or reduction of hours and who lose group health plan coverage as a result. The special second COBRA election period is available only to a very limited group of

*To continue reading, go to right column on this page.*

individuals: generally, those who are receiving trade adjustment assistance (TAA) or 'alternative trade adjustment assistance' under a federal law called the Trade Act of 1974. These Participants are entitled to a second opportunity to elect COBRA coverage for themselves and certain family members (if they did not already elect COBRA coverage), but only within a limited period of 60 days from the first day of the month when an individual begins receiving TAA (or would be eligible to receive TAA but for the requirement that unemployment benefits be exhausted) and only during the six months immediately after their group health plan coverage ended.

If a Participant qualifies or may qualify for assistance under the Trade Act of 1974, he or she should contact the Plan Administrator for additional information. The Participant must contact the Plan Administrator promptly after qualifying for assistance under the Trade Act of 1974 or the Participant will lose his or her special COBRA rights. COBRA coverage elected during the special second election period is not retroactive to the date that Plan coverage was lost, but begins on the first day of the special second election period.

## Terminating Events for Continuation Coverage under Federal Law (COBRA)

Continuation under the Plan will end on the earliest of the following dates:

A. Eighteen months from the date of the qualifying event, if the Qualified Beneficiary's coverage would have ended because the Participant's employment was terminated or hours were reduced (i.e., qualifying events A and B).

   If a Qualified Beneficiary is determined to have been disabled under the Social Security Act at any time within the first 60 days of continuation coverage for qualifying event A or B then the Qualified Beneficiary may elect an additional eleven months of

*To continue reading, go to left column on next page.*

continuation coverage (for a total of twenty-nine months of continued coverage) subject to the following conditions:

- Notice of such disability must be provided within the latest of 60 days after:
  - the determination of the disability; or
  - the date of the qualifying event; or
  - the date the Qualified Beneficiary would lose coverage under the Plan; and
  - in no event later than the end of the first eighteen months.
- The Qualified Beneficiary must agree to pay any increase in the required premium for the additional eleven months.
- If the Qualified Beneficiary who is entitled to the eleven months of coverage has non-disabled family members who are also Qualified Beneficiaries, then those non-disabled Qualified Beneficiaries are also entitled to the additional eleven months of continuation coverage.

Notice of any final determination that the Qualified Beneficiary is no longer disabled must be provided within 30 days of such determination. Thereafter, continuation coverage may be terminated on the first day of the month that begins more than 30 days after the date of that determination.

B. Thirty-six months from the date of the qualifying event for an Enrolled Dependent whose coverage ended because of the death of the Participant, divorce or legal separation of the Participant, or loss of eligibility by an Enrolled Dependent who is a child (i.e. qualifying events C, D, or E).

C. With respect to Qualified Beneficiaries, and to the extent that the Participant was entitled to Medicare prior to the qualifying event:

*To continue reading, go to right column on this page.*

- Eighteen months from the date of the Participant's Medicare entitlement; or
- Thirty-six months from the date of the Participant's Medicare entitlement, if a second qualifying event (that was due to either the Participant's termination of employment or the Participant's work hours being reduced) occurs prior to the expiration of the eighteen months.

D. With respect to Qualified Beneficiaries, and to the extent that the Participant became entitled to Medicare subsequent to the qualifying event:

- Thirty-six months from the date of the Participant's termination from employment or work hours being reduced (first qualifying event) if:
  - The Participant's Medicare entitlement occurs within the eighteen month continuation period; and
  - Absent the first qualifying event, the Medicare entitlement would have resulted in a loss of coverage for the Qualified Beneficiary under the group health plan.

E. The date coverage terminates under the Plan for failure to make timely payment of the premium.

F. The date, after electing continuation coverage, that coverage is first obtained under any other group health plan. If such coverage contains a limitation or exclusion with respect to any pre-existing condition, continuation shall end on the date such limitation or exclusion ends. The other group health coverage shall be primary for all health services except those health services that are subject to the pre-existing condition limitation or exclusion.

G. The date, after electing continuation coverage, that the Qualified Beneficiary first becomes entitled to Medicare, except that this shall not apply in the event that coverage was terminated because the Plan Sponsor filed for bankruptcy, (i.e. qualifying

*To continue reading, go to left column on next page.*

event G). If the Qualified Beneficiary was entitled to continuation because the Plan Sponsor filed for bankruptcy, (i.e. qualifying event G) and the retired Participant dies during the continuation period, then the other Qualified Beneficiaries shall be entitled to continue coverage for thirty-six months from the date of the Participant's death.

H. The date the entire Plan ends.

I. The date coverage would otherwise terminate under the Plan as described in this section under the heading *Events Ending Your Coverage*.

## Uniformed Services Employment and Reemployment Rights Act

A Participant who is absent from employment for more than 30 days by reason of service in the Uniformed Services may elect to continue coverage under the Plan for the Participant and the Participant's Enrolled Dependents in accordance with the Uniformed Services Employment and Reemployment Rights Act of 1984, as amended (USERRA).

The terms "Uniformed Services" or "Military Service" mean the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or national emergency.

If qualified to continue coverage pursuant to USERRA, Participants may elect to continue coverage under the Plan by notifying the Plan Administrator in advance, and providing payment of any required contribution for the health coverage. This may include the amount the Plan Administrator normally pays on a Participant's behalf. If a Participant's Military Service is for a period of time less than 31 days,

*To continue reading, go to right column on this page.*

the Participant may not be required to pay more than the regular contribution amount, if any, for continuation of health coverage.

A Participant may continue Plan coverage under USERRA for up to the lesser of:

- The 24 month period beginning on the date of the Participant's absence from work; or
- The day after the date on which the Participant fails to apply for, or return to, a position of employment.

Regardless of whether a Participant continues health coverage, if the Participant returns to a position of employment, the Participant's health coverage and that of the Participant's eligible Dependents will be reinstated under the Plan. No exclusions or waiting period may be imposed on a Participant or the Participant's eligible Dependents in connection with this reinstatement, unless a Sickness or Injury is determined by the Secretary of Veterans Affairs to have been incurred in, or aggravated during, the performance of military service.

You should call the Plan Administrator if you have questions about your rights to continue health coverage under USERRA.

*To continue reading, go to left column on next page.*

# Section 9: General Legal Provisions

This section provides you with information about:
- General legal provisions concerning your Plan.

## Plan Document

This Summary Plan Description presents an overview of your Benefits. In the event of any discrepancy between this Summary Plan Description and the official Plan Document, the Plan Document shall govern.

## Relationship with Providers

The relationships between us, the Claims Administrator, and Network providers are solely contractual relationships between independent contractors. Network providers are not our agents or employees. Nor are they agents or employees of the Claims Administrator. Neither we nor any of our employees are agents or employees of Network providers.

We do not provide health care services or supplies, nor do we practice medicine. Instead, we pay Benefits. Network providers are independent practitioners who run their own offices and facilities. The credentialing process confirms public information about the providers' licenses and other credentials, but does not assure the quality of the services provided. Network providers are not our employees or employees of the Claims Administrator; nor do we

*To continue reading, go to right column on this page.*

have any other relationship with Network providers such as principal-agent or joint venture. Neither we nor the Claims Administrator are liable for any act or omission of any provider.

The Claims Administrator is not considered to be an employer of the Plan Administrator for any purpose with respect to the administration or provision of benefits under this Plan.

We and the Plan Administrator are solely responsible for all of the following:

- Enrollment and classification changes (including classification changes resulting in your enrollment or the termination of your coverage).
- The timely payment of Benefits.
- Notifying you of the termination or modifications to the Plan.

## Your Relationship with Providers

The relationship between you and any provider is that of provider and patient.

- You are responsible for choosing your own provider.
- You must decide if any provider treating you is right for you. This includes Network providers you choose and providers to whom you have been referred.
- You must decide with your provider what care you should receive.
- Your provider is solely responsible for the quality of the services provided to you.

The relationship between you and us is that of employer and employee, Dependent or other classification as defined in the Plan.

*To continue reading, go to left column on next page.*

## Incentives to Providers

The Claims Administrator pays Network providers through various types of contractual arrangements, some of which may include financial incentives to promote the delivery of health care in a cost efficient and effective manner. These financial incentives are not intended to affect your access to health care.

Examples of financial incentives for Network providers are:

- Bonuses for performance based on factors that may include quality, member satisfaction, and/or cost effectiveness.
- Capitation - a group of Network providers receives a monthly payment for each Covered Person who selects a Network provider within the group to perform or coordinate certain health services. The Network providers receive this monthly payment regardless of whether the cost of providing or arranging to provide the Covered Person's health care is less than or more than the payment.
- Risk-sharing payments - the Network provider is paid a specific amount for a particular unit of service, such as an amount per day, an amount per stay, an amount per episode, an amount per case, an amount per period of illness, an amount per Covered Person or an amount per service with targeted outcome. If the amount paid is more than the cost of providing or arranging a Covered Person's health services, the Network provider may keep some of the excess. If the amount paid is less than the cost of providing or arranging a Covered Person's health services, the Network provider may bear some of the shortfall.

The methods used to pay specific Network providers may vary. From time to time, the payment method may change. If you have questions about whether your Network provider's contract includes any financial incentives, we encourage you to discuss those questions

*To continue reading, go to right column on this page.*

with your provider. You may also contact the Claims Administrator at the telephone number on your ID card. They can advise whether your Network provider is paid by any financial incentive, including those listed above; however, the specific terms of the contract, including rates of payment, are confidential and cannot be disclosed.

## Incentives to You

Sometimes the Claims Administrator may offer coupons or other incentives to encourage you to participate in various wellness programs or certain disease management programs. The decision about whether or not to participate is yours alone but we recommend that you discuss participating in such programs with your Physician. These incentives are not Benefits and do not alter or affect your Benefits. Contact the Claims Administrator if you have any questions.

## Interpretation of Benefits

We and the Claims Administrator have sole and exclusive discretion to do all of the following:

- Interpret Benefits under the Plan.
- Interpret the other terms, conditions, limitations and exclusions of the Plan, including this SPD and any Riders and Amendments.
- Make factual determinations related to the Plan and its Benefits.

We and the Claims Administrator may delegate this discretionary authority to other persons or entities who provide services in regard to the administration of the Plan.

In certain circumstances, for purposes of overall cost savings or efficiency, we may, in our sole discretion, offer Benefits for services that would otherwise not be Covered Health Services. The fact that

*To continue reading, go to left column on next page.*

we do so in any particular case shall not in any way be deemed to require us to do so in other similar cases.

## Administrative Services

We may, in our sole discretion, arrange for various persons or entities to provide administrative services in regard to the Plan, such as claims processing. The identity of the service providers and the nature of the services they provide may be changed from time to time in our sole discretion. We are not required to give you prior notice of any such change, nor are we required to obtain your approval. You must cooperate with those persons or entities in the performance of their responsibilities.

## Amendments to the Plan

We reserve the right, in our sole discretion and without your approval, to change, interpret, modify, withdraw or add Benefits or terminate the Plan. Plan Amendments and Riders are effective on the date we specify.

Any provision of the Plan which, on its effective date, is in conflict with the requirements of federal statutes or regulations, or applicable state law provisions not otherwise preempted by ERISA (of the jurisdiction in which the Plan is delivered) is hereby amended to conform to the minimum requirements of such statutes and regulations.

Any change or amendment to or termination of the Plan, its benefits or its terms and conditions, in whole or in part, shall be made solely in a written amendment (in the case of a change or amendment) or in a written resolution (in the case of a termination), whether prospective or retroactive, to the Plan, in accordance with the procedures established by us. Covered Persons will receive notice of

*To continue reading, go to right column on this page.*

any material modification to the Plan. No one has the authority to make any oral modification to the SPD.

## Clerical Error

If a clerical error or other mistake occurs, that error does not create a right to Benefits. These errors include, but are not limited to, providing misinformation on eligibility or Benefit coverages or entitlements. It is your responsibility to confirm the accuracy of statements made by us or our designees, including the Claims Administrator, in accordance with the terms of this SPD and other Plan documents.

## Information and Records

At times we or the Claims Administrator may need additional information from you. You agree to furnish us and/or the Claims Administrator with all information and proofs that we may reasonably require regarding any matters pertaining to the Plan. If you do not provide this information when we request it we may delay or deny payment of your Benefits.

By accepting Benefits under the Plan, you authorize and direct any person or institution that has provided services to you to furnish us or the Claims Administrator with all information or copies of records relating to the services provided to you. We or the Claims Administrator have the right to request this information at any reasonable time. This applies to all Covered Persons, including Enrolled Dependents whether or not they have signed the Participant's enrollment form. We and the Claims Administrator agree that such information and records will be considered confidential.

We and the Claims Administrator have the right to release any and all records concerning health care services which are necessary to

*To continue reading, go to left column on next page.*

implement and administer the terms of the Plan, for appropriate medical review or quality assessment, or as we are required to do by law or regulation. During and after the term of the Plan, we, the Claims Administrator, and our related entities may use and transfer the information gathered under the Plan for research and analytic purposes.

For complete listings of your medical records or billing statements we recommend that you contact your health care provider. Providers may charge you reasonable fees to cover their costs for providing records or completing requested forms.

If you request medical forms or records from us, we also may charge you reasonable fees to cover costs for completing the forms or providing the records.

In some cases, we or the Claims Administrator will designate other persons or entities to request records or information from or related to you, and to release those records as necessary. Such designees have the same rights to this information as the Plan Administrator.

## Examination of Covered Persons

In the event of a question or dispute regarding your right to Benefits, we may require that a Network Physician of our choice examine you at our expense.

## Workers' Compensation not Affected

Benefits provided under the Plan do not substitute for and do not affect any requirements for coverage by workers' compensation insurance.

*To continue reading, go to right column on this page.*

## Medicare Eligibility

Benefits under the Plan are not intended to supplement any coverage provided by Medicare. Nevertheless, in some circumstances Covered Persons who are eligible for or enrolled in Medicare may also be enrolled under the Plan.

### *If you are eligible for or enrolled in Medicare, please read the following information carefully.*

If you are eligible for Medicare on a primary basis (Medicare pays before Benefits under the Plan), you **should** enroll for and maintain coverage under both Medicare Part A and Part B. If you don't enroll and maintain that coverage, and if we are the secondary payer as described in (Section 7: Coordination of Benefits), we will pay Benefits under the Plan as if you were covered under both Medicare Part A and Part B. As a result, you will be responsible for the costs that Medicare would have paid and you will incur a larger out-of-pocket cost.

If you are enrolled in a Medicare+Choice (Medicare Part C) plan on a primary basis (Medicare pays before Benefits under the Plan), you **should** follow all rules of that plan that require you to seek services from that plan's participating providers. When we are the secondary payer, we will pay any Benefits available to you under the Plan as if you had followed all rules of the Medicare+Choice plan. You will be responsible for any additional costs or reduced Benefits that result from your failure to follow these rules, and you will incur a larger out-of-pocket cost.

## Subrogation and Reimbursement

The Plan has a right to subrogation and reimbursement, as defined below.

*To continue reading, go to left column on next page.*

### *Right to Subrogation*

The right to subrogation means the Plan is substituted to any legal claims that you may be entitled to pursue for Benefits that the Plan has paid. Subrogation applies when the Plan has paid Benefits for a Sickness or Injury for which a third party is considered responsible, e.g. an insurance carrier if you are involved in an auto accident.

The Plan shall be subrogated to, and shall succeed to, all rights of recovery from any or all third parties, under any legal theory of any type, for 100 percent of any services and Benefits the Plan has paid on your behalf relating to any Sickness or Injury caused by any third party.

### *Right to Reimbursement*

The right to reimbursement means that if a third party causes a Sickness or Injury for which you receive a settlement, judgment, or other recovery, you must use those proceeds to fully return to the Plan 100% of any Benefits you received for that Sickness or Injury.

### *Third Parties*

The following persons and entities are considered third parties:

- A person or entity alleged to have caused you to suffer a Sickness, Injury or damages, or who is legally responsible for the Sickness, Injury or damages.
- Any insurer or other indemnifier of any person or entity alleged to have caused or who caused the Sickness, Injury or damages.
- Any person or entity who is or may be obligated to provide you with benefits or payments under:
  - — Underinsured or uninsured motorist insurance.
  - — Medical provisions of no-fault or traditional insurance (auto, homeowners or otherwise).
  - — Workers' compensation coverage.
  - — Any other insurance carrier or third party administrator.

*To continue reading, go to right column on this page.*

### *Subrogation and Reimbursement Provisions*

As a Covered Person, you agree to the following:

- The Plan has a first priority right to receive payment on any claim against a third party before you receive payment from that third party. Further, our first priority right to payment is superior to any and all claims, debts or liens asserted by any medical providers, including but not limited to hospitals or emergency treatment facilities, that assert a right to payment from funds you recover from a third party.
- The Plan's subrogation and reimbursement rights apply to full and partial settlements, judgments, or other recoveries paid or payable to you or your representative, no matter how those proceeds are captioned or characterized. Payments include, but are not limited to, economic, non-economic, and punitive damages. The Plan is not required to help you to pursue your claim for damages or personal injuries, or pay any of your associated costs, including attorneys' fees. No so-called "Fund Doctrine" or "Common Fund Doctrine" or "Attorney's Fund Doctrine" shall defeat this right.
- The Plan may enforce its subrogation and reimbursement rights regardless of whether you have been "made whole" (fully compensated for your injuries and damages).
- You will cooperate with the Plan and its agents in a timely manner to protect its legal and equitable rights to subrogation and reimbursement, including, but not limited to:
  - — Complying with the terms of this section.
  - — Providing any relevant information requested.
  - — Signing and/or delivering documents at its request.

*To continue reading, go to left column on next page.*

- Appearing at medical examinations and legal proceedings, such as depositions or hearings.
  - Obtaining the Plan's consent before releasing any party from liability or payment of medical expenses.
- If you receive payment as part of a settlement or judgment from any third party as a result of a Sickness or Injury, and the Plan alleges some or all of those funds are due and owed to it, you agree to hold those settlement funds in trust, either in a separate bank account in your name or in your attorney's trust account. You agree that you will serve as a trustee over those funds to the extent of the Benefits the Plan has paid.
- If the Plan incurs attorneys' fees and costs in order to collect third party settlement funds held by you or your representative, the Plan has the right to recover those fees and costs from you.
- You may not accept any settlement that does not fully reimburse the Plan, without its written approval.
- You will assign to the Plan all rights of recovery against third parties to the extent of Benefits the Plan has provided for a Sickness or Injury caused by a third party.
- The Plan's rights will not be reduced due to your own negligence.
- The Plan may file suit in your name and take appropriate action to assert its rights under this section. The Plan is not required to pay you part of any recovery it may obtain from a third party, even if it files suit in your name.
- The provisions of this section apply to the parents, guardian, or other representative of an Enrolled Dependent child who incurs a Sickness or Injury caused by a third party.
- In case of your wrongful death, the provisions of this section apply to your estate, the personal representative of your estate, and your heirs.

*To continue reading, go to right column on this page.*

- Your failure to cooperate with the Plan or its agents is considered a breach of contract. As such, the Plan has the right to terminate your Benefits, deny future Benefits, take legal action against you, and/or set off from any future Benefits the value of Benefits the Plan has paid relating to any Sickness or Injury caused by any third party to the extent not recovered by the Plan due to you or your representative not cooperating with the Plan.
- If a third party causes you to suffer a Sickness or Injury while you are covered under this Plan, the provisions of this section continue to apply, even after you are no longer a Covered Person.

## Refund of Overpayments

If we pay Benefits for expenses incurred on account of a Covered Person, that Covered Person, or any other person or organization that was paid, must make a refund to us if either of the following apply:

- All or some of the expenses were not paid by the Covered Person or did not legally have to be paid by the Covered Person.
- All or some of the payment we made exceeded the Benefits under the Plan.

The refund equals the amount we paid in excess of the amount we should have paid under the Plan. If the refund is due from another person or organization, the Covered Person agrees to help us get the refund when requested.

If the Covered Person, or any other person or organization that was paid, does not promptly refund the full amount, we may reduce the amount of any future Benefits that are payable under the Plan. The reductions will equal the amount of the required refund. We may have other rights in addition to the right to reduce future benefits.

*To continue reading, go to left column on next page.*

## Limitation of Action

If you want to bring a legal action against us or the Claims Administrator you must do so within three years from the expiration of the time period in which a request for reimbursement must be submitted or you lose any rights to bring such an action against us or the Claims Administrator.

You cannot bring any legal action against us or the Claims Administrator for any other reason unless you first complete all the steps in the appeal process described in this document. After completing that process, if you want to bring a legal action against us or the Claims Administrator you must do so within three years of the date you are notified of our final decision on your appeal, or you lose any rights to bring such an action against us or the Claims Administrator.

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

# Section 10: Glossary of Defined Terms

This section:

- Defines the terms used throughout this SPD.
- Is not intended to describe Benefits.

***Alternate Facility*** - a health care facility that is not a Hospital and that provides one or more of the following services on an outpatient basis, as permitted by law:

- Surgical services.
- Emergency Health Services.
- Rehabilitative, laboratory, diagnostic or therapeutic services.

An Alternate Facility may also provide Mental Health Services or Substance Use Disorder Services on an outpatient or inpatient basis.

***Amendment*** - any attached written description of additional or alternative provisions to the Plan. Amendments are effective only when signed by us or the Plan Administrator. Amendments are subject to all conditions, limitations and exclusions of the Plan, except for those that are specifically amended.

*To continue reading, go to right column on this page.*

***Annual Deductible*** - the amount you must pay for Covered Health Services in a calendar year before we will begin paying for Benefits in that calendar year.

***Autism Spectrum Disorders*** - a group of neurobiological disorders that includes *Autistic Disorder, Rhett's Syndrome, Asperger's Disorder, Childhood Disintegrated Disorder*, and *Pervasive Development Disorders Not Otherwise Specified (PDDNOS)*.

***Benefits*** - your right to payment for Covered Health Services that are available under the Plan. Your right to Benefits is subject to the terms, conditions, limitations and exclusions of the Plan, including this SPD and any attached Riders and Amendments.

***Cancer Resource Services Program*** - the program made available by the Plan Sponsor to Participants. The Cancer Resource Services Program provides information to Participants or their Enrolled Dependents with cancer and offers access to additional cancer centers for the treatment of cancer.

***Claims Administrator*** - the company (including its affiliates) that provides certain claim administration services for the Plan.

***Congenital Anomaly*** - a physical developmental defect that is present at birth, and is identified within the first twelve months of birth.

***Copayment*** - the charge you are required to pay for certain Covered Health Services. A Copayment may be either a set dollar amount or a percentage of Eligible Expenses.

***Cosmetic Procedures*** - procedures or services that change or improve appearance without significantly improving physiological function, as determined by the Claims Administrator on our behalf.

*To continue reading, go to left column on next page.*

***Covered Health Service(s)*** -those health services provided for the purpose of preventing, diagnosing or treating a Sickness, Injury, Mental Illness, Substance Use Disorder, or their symptoms.

A Covered Health Service is a health care service or supply described in (Section 1: What's Covered–Benefits) as a Covered Health Service, which is not excluded under (Section 2: What's Not Covered--Exclusions).

***Covered Person*** - either the Participant or an Enrolled Dependent, but this term applies only while the person is enrolled under the Plan. References to "you" and "your" throughout this SPD are references to a Covered Person.

***Custodial Care*** - services that:

- Are non-health related services, such as assistance in activities of daily living (including but not limited to feeding, dressing, bathing, transferring and ambulating); or
- Are health-related services which do not seek to cure, or which are provided during periods when the medical condition of the patient who requires the service is not changing; or
- Do not require continued administration by trained medical personnel in order to be delivered safely and effectively.

***Dependent*** – the Participant's legal spouse or a dependent child of the Participant or the Participant's legal spouse. The term child includes any of the following:

- A natural child.
- A stepchild.
- A legally adopted child.
- A child placed for adoption.

*To continue reading, go to right column on this page.*

- A child for whom legal guardianship has been awarded to the Participant or the Participant's spouse.

The definition of Dependent is subject to the following conditions and limitations:

- A Dependent includes any dependent child under 26 years of age and who is not eligible to enroll in an eligible employer-sponsored health plan (as defined by law)

The Participant must reimburse us for any Benefits that we pay for a child at a time when the child did not satisfy these conditions.

A Dependent also includes a child for whom health care coverage is required through a 'Qualified Medical Child Support Order' or other court or administrative order. We are responsible for determining if an order meets the criteria of a Qualified Medical Child Support Order.

NOTE: If both you and your spouse are employees of the employer, you may be covered as either an employee or as a dependent, but not both. Your eligible dependent children may be covered under either parent's coverage, but not both.

***Designated Facility*** - a facility that has entered into an agreement on behalf of the facility and its affiliated staff with the Claims Administrator or with an organization contracting on its behalf to render Covered Health Services for the treatment of specified diseases or conditions. A Designated Facility may or may not be located within your geographic area. The fact that a Hospital is a Network Hospital does not mean that it is a Designated Facility.

***Durable Medical Equipment*** - medical equipment that is all of the following:

- Can withstand repeated use.

*To continue reading, go to left column on next page.*

- Is not disposable.
- Is used to serve a medical purpose with respect to treatment of a Sickness, Injury or their symptoms.
- Is generally not useful to a person in the absence of a Sickness, Injury or their symptoms.
- Is appropriate for use in the home.

***Eligible Expenses*** - for Covered Health Services incurred while the Plan is in effect, Eligible Expenses are determined as stated below:

For Network Benefits, Eligible Expenses are based on either of the following:

- When Covered Health Services are received from Network providers, Eligible Expenses are the contracted fee(s) with that provider.
- When Covered Health Services are received from non-Network providers as a result of an Emergency or as otherwise arranged through the Claims Administrator, Eligible Expenses are billed charges unless a lower amount is negotiated.

For Non-Network Benefits, Eligible Expenses are based on either of the following:

- When Covered Health Services are received from non-Network providers, Eligible Expenses are determined, at the Claims Administrator's discretion, based on:
  - Available data resources of competitive fees in that geographic area.
  - Fee(s) that are negotiated with the provider.
  - 50% of the billed charge.
  - A fee schedule that the Claims Administrator develops.

*To continue reading, go to right column on this page.*

- When Covered Health Services are received from Network providers, Eligible Expenses are the contracted fee(s) with that provider.

Eligible Expenses are determined solely in accordance with the Claims Administrator's reimbursement policy guidelines. The reimbursement policy guidelines are developed, in the Claims Administrator's discretion, following evaluation and validation of all provider billings in accordance with one or more of the following methodologies:

- As indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare and Medicaid Services (CMS).
- As reported by generally recognized professionals or publications.
- As used for Medicare.
- As determined by medical staff and outside medical consultants pursuant to other appropriate source or determination that the Claims Administrator accepts.

***Eligible Person*** - a regular full-time employee of the Plan Sponsor who is scheduled to work at his or her job at least 30 hours per week.

***Emergency*** - a serious medical condition or symptom resulting from Injury, Sickness or Mental Illness which is both of the following:

- Arises suddenly.

*To continue reading, go to left column on next page.*

- In the judgment of a reasonable person, requires immediate care and treatment, generally received within 24 hours of onset, to avoid jeopardy to life or health.

***Emergency Health Services*** - health care services and supplies necessary for the treatment of an Emergency.

***Enrolled Dependent*** - a Dependent who is properly enrolled under the Plan.

***Experimental or Investigational Services*** - medical, surgical, diagnostic, psychiatric, Substance Use Disorder or other health care services, technologies, supplies, treatments, procedures, drug therapies or devices that, at the time we make a determination regarding coverage in a particular case, are determined to be any of the following:

- Not approved by the U.S. Food and Drug Administration (FDA) to be lawfully marketed for the proposed use and not identified in the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information as appropriate for the proposed use.
- Subject to review and approval by any institutional review board for the proposed use.
- The subject of an ongoing clinical trial that meets the definition of a Phase 1, 2 or 3 clinical trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight.

If you have a life-threatening Sickness or condition (one which is likely to cause death within one year of the request for treatment) we may, in our discretion, determine that an Experimental or Investigational Service meets the definition of a Covered Health Service for that Sickness or condition. For this to take place, we must determine that the procedure or treatment is promising, but

*To continue reading, go to right column on this page.*

unproven, and that the service uses a specific research protocol that meets standards equivalent to those defined by the National Institutes of Health.

***Home Health Agency*** - a program or organization authorized by law to provide health care services in the home.

***Hospital*** - an institution, operated as required by law, that is both of the following:

- Is primarily engaged in providing health services, on an inpatient basis, for the acute care and treatment of injured or sick individuals. Care is provided through medical, diagnostic and surgical facilities, by or under the supervision of a staff of Physicians.
- Has 24 hour nursing services.

A Hospital is not primarily a place for rest, custodial care or care of the aged and is not a nursing home, convalescent home or similar institution.

***Initial Enrollment Period*** - the initial period of time, as determined by the Plan Administrator, during which Eligible Persons may enroll themselves and their Dependents under the Plan.

***Injury*** - bodily damage other than Sickness, including all related conditions and recurrent symptoms.

***Inpatient Rehabilitation Facility*** - a Hospital (or a special unit of a Hospital that is designated as an Inpatient Rehabilitation Facility) that provides rehabilitation health services (physical therapy, occupational therapy and/or speech therapy) on an inpatient basis, as authorized by law.

*To continue reading, go to left column on next page.*

***Inpatient Stay*** - an uninterrupted confinement, following formal admission to a Hospital, Skilled Nursing Facility or Inpatient Rehabilitation Facility.

***Intensive Outpatient Treatment*** - a structured outpatient Mental Health or Substance Use Disorder treatment program that may be free-standing or Hospital-based and provides services for at least three hours per day, two or more days per week.

***Medicare*** - Parts A, B, and C of the insurance program established by Title XVIII, United States Social Security Act, as amended by 42 U.S.C. Sections 1394, et seq. and as later amended.

***Mental Health Services*** - Covered Health Services for the diagnosis and treatment of Mental Illnesses. The fact that a condition is listed in the current Diagnostic and Statistical Manual of the American Psychiatric Association does not mean that treatment for the condition is a Covered Health Service.

***Mental Health/Substance Use Disorder Designee*** - the organization or individual, designated by the Claims Administrator, that provides or arranges Mental Health Services and Substance Use Disorder Services for which Benefits are available under the Plan.

***Mental Illness*** - those mental health or psychiatric diagnostic categories that are listed in the current Diagnostic and Statistical Manual of the American Psychiatric Association, unless those services are specifically excluded under the Plan.

***Network*** - when used to describe a provider of health care services, this means a provider that has a participation agreement in effect (either directly or indirectly) with the Claims Administrator or with their affiliate to participate in the Claims Administrator's Network; however, this does not include those providers who have agreed to discount their charges for Covered Health Services by way of their participation in the Shared Savings Program. The Claims

*To continue reading, go to right column on this page.*

Administrator's affiliates are those entities affiliated with them through common ownership or control with the Claims Administrator or with its ultimate corporate parent, including direct and indirect subsidiaries.

A provider may enter into an agreement to provide only certain Covered Health Services, but not all Covered Health Services, or to be a Network provider for only some of the Claims Administrator's products. In this case, the provider will be a Network provider for the Covered Health Services and products included in the participation agreement, and a non-Network provider for other Covered Health Services and products. The participation status of providers will change from time to time.

***Network Benefits*** - Benefits for Covered Health Services that are provided by (or directed by) a Network Physician or other Network provider in the provider's office or at a Network or non-Network facility.

***Non-Network Benefits*** - Benefits for Covered Health Services that are provided by or directed by a non-Network Physician either at a Network facility or at a non-Network facility.

***Open Enrollment Period*** - a period of time that follows the Initial Enrollment Period during which Eligible Persons may enroll themselves and Dependents under the Plan, as determined by us.

***Out-of-Pocket Maximum*** - the maximum amount of Coinsurance you pay every calendar year.

Coinsurance for some Covered Health Services will never apply to the Out-of-Pocket Maximum, as specified in (Section 1: What's Covered--Benefits) and those Benefits will never be payable at 100% even when the Out-of-Pocket Maximum is reached.

*To continue reading, go to left column on next page.*

The following costs will never apply to the Out-of-Pocket Maximum:

- Any charges for non-Covered Health Services;
- Copayments for Covered Health Services available by an optional Rider.
- The amount of any reduced Benefits if you don't notify the Claims Administrator as described in (Section 1: What's Covered--Benefits) under the *Must You Notify the Claims Administrator?* column.
- Charges that exceed Eligible Expenses.
- Any Coinsurance for Covered Health Services in (Section 1: What's Covered--Benefits) that do not apply to the Out-of-Pocket Maximum.

Even when the Out-of-Pocket Maximum has been reached, you will still be required to pay:

- Any charges for non-Covered Health Services.
- Charges that exceed Eligible Expenses.
- The amount of any reduced Benefits if you don't notify the Claims Administrator as described in (Section 1: What's Covered--Benefits) under the *Must You Notify the Claims Administrator?* column.
- Copayments for Covered Health Services available by an optional Rider.
- Coinsurance for Covered Health Services in (Section 1: What's Covered--Benefits) that are subject to Copayments that do not apply to the Out-of-Pocket Maximum.

***Partial Hospitalization/Day Treatment*** - a structured ambulatory program that may be a free-standing or Hospital-based program and that provides services for at least 20 hours per week.

*To continue reading, go to right column on this page.*

***Participant*** - an Eligible Person who is properly enrolled under the Plan. The Participant is the person (who is not a Dependent) on whose behalf the Plan is established.

***Physician*** - any Doctor of Medicine, "M.D.", or Doctor of Osteopathy, "D.O.", who is properly licensed and qualified by law.

Please Note: Any podiatrist, dentist, psychologist, chiropractor, optometrist, or other provider who acts within the scope of his or her license will be considered on the same basis as a Physician. The fact that we describe a provider as a Physician does not mean that Benefits for services from that provider are available to you under the Plan.

***Plan*** - UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. Health Benefit Plan.

***Plan Administrator*** - is C.H. Robinson Worldwide, Inc. or its designee as that term is defined under ERISA.

***Plan Sponsor*** - C.H. Robinson Worldwide, Inc.. References to "we", "us", and "our" throughout the SPD refer to the Plan Sponsor.

***Pregnancy*** - includes all of the following:

- Prenatal care.
- Postnatal care.
- Childbirth.
- Any complications associated with Pregnancy.

***Reproductive Resource Services (RRS)*** – a program administered by UnitedHealthcare or its affiliates made available to you by C. H. Robinson Worldwide, Inc. The RRS program provides:

*To continue reading, go to left column on next page.*

specialized clinical consulting services to Participants and enrolled Dependents to educate on infertility treatment options; and

access to specialized Network facilities and Physicians for infertility services.

***RRS*** – see Reproductive Resource Services (RRS).

***Rider*** - any attached written description of additional Covered Health Services not described in this SPD. Riders are effective only when signed by us and are subject to all conditions, limitations and exclusions of the Plan except for those that are specifically amended in the Rider.

***Semi-private Room*** - a room with two or more beds. When an Inpatient Stay in a Semi-private Room is a Covered Health Service, the difference in cost between a Semi-private Room and a private room is a Benefit only when a private room is necessary in terms of generally accepted medical practice, or when a Semi-private Room is not available.

***Shared Savings Program*** - the Shared Savings Program provides access to discounts from the provider's charges when services are rendered by those non-Network providers that participate in that program. The Claims Administrator will use the Shared Savings Program to pay claims when doing so will lower Eligible Expenses. The Claims Administrator does not credential the Shared Savings Program providers and the Shared Savings Program providers are not Network providers. Accordingly, Benefits for Covered Health Services provided by Shared Savings Program providers will be paid at the Non-Network Benefit level (except in situations when Benefits for Covered Health Services provided by non-Network providers are payable at Network Benefit levels, as in the case of Emergency Health Services). When the Claims Administrator uses the Shared Savings Program to pay a claim, patient responsibility is

*To continue reading, go to right column on this page.*

limited to Copayments calculated on the contracted rate paid to the provider, in addition to any required Annual Deductible.

***Sickness*** - physical illness, disease or Pregnancy. The term Sickness as used in this SPD does not include Mental Illness or Substance Use Disorder, regardless of the cause or origin of the Mental Illness or Substance Use Disorder.

***Skilled Nursing Facility*** - a Hospital or nursing facility that is licensed and operated as required by law.

***Spinal Treatment*** - detection or correction (by manual or mechanical means) of subluxation(s) in the body to remove nerve interference or its effects. The interference must be the result of, or related to, distortion, misalignment or subluxation of, or in, the vertebral column.

***Substance Use Disorder Services*** - Covered Health Services for the diagnosis and treatment of alcoholism and Substance Use Disorder disorders that are listed in the current Diagnostic and Statistical Manual of the American Psychiatric Association, unless those services are specifically excluded. The fact that a disorder is listed in the Diagnostic and Statistical Manual of the American Psychiatric Association does not mean that treatment of the disorder is a Covered Health Service.

***Total Disability or Totally Disabled*** - a Participant's inability to perform all of the substantial and material duties of his or her regular employment or occupation; and a Dependent's inability to perform the normal activities of a person of like age and sex.

***Transitional Care*** - Mental Health Services/Substance Use Disorder Services that are provided through transitional living facilities, group homes and supervised apartments that provide 24-hour supervision that are either:

*To continue reading, go to left column on next page.*

- sober living arrangements such as drug-free housing, alcohol/drug halfway houses. These are transitional, supervised living arrangements that provide stable and safe housing, an alcohol/drug-free environment and support for recovery. A sober living arrangement may be utilized as an adjunct to ambulatory treatment when treatment doesn't offer the intensity and structure needed to assist the Covered Person with recovery.
- supervised living arrangement which are residences such as transitional living facilities, group homes and supervised apartments that provide members with stable and safe housing and the opportunity to learn how to manage their activities of daily living. Supervised living arrangements may be utilized as an adjunct to treatment when treatment doesn't offer the intensity and structure needed to assist the Covered Person with recovery.

***Unproven Services*** - services that are not consistent with conclusions of prevailing medical research which demonstrate that the health service has a beneficial effect on health outcomes and that are not based on trials that meet either of the following designs.

- Well-conducted randomized controlled trials. (Two or more treatments are compared to each other, and the patient is not allowed to choose which treatment is received.)
- Well-conducted cohort studies. (Patients who receive study treatment are compared to a group of patients who receive standard therapy. The comparison group must be nearly identical to the study treatment group.)

Decisions about whether to cover new technologies, procedures and treatments will be consistent with conclusions of prevailing medical

*To continue reading, go to right column on this page.*

research, based on well-conducted randomized trials or cohort studies, as described.

If you have a life-threatening Sickness or condition (one that is likely to cause death within one year of the request for treatment) we and the Claims Administrator may, in our discretion, determine that an Unproven Service meets the definition of a Covered Health Service for that Sickness or condition. For this to take place, we and the Claims Administrator must determine that the procedure or treatment is promising, but unproven, and that the service uses a specific research protocol that meets standards equivalent to those defined by the National Institutes of Health.

***Urgent Care Center*** - a facility, other than a Hospital, that provides Covered Health Services that are required to prevent serious deterioration of your health, and that are required as a result of an unforeseen Sickness, Injury, or the onset of acute or severe symptoms.

*To continue reading, go to left column on next page.*

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. - 01/01/13
94
(Section 10: Glossary of Defined Terms)

# Riders, Amendments, Notices

Attachment I

Attachment II

Attachment III

# Attachment I

## Women's Health and Cancer Rights Act of 1998

As required by the Women's Health and Cancer Rights Act of 1998, we provide Benefits under the Plan for mastectomy, including reconstruction and surgery to achieve symmetry between the breasts, prostheses, and complications resulting from a mastectomy (including lymphedema).

If you are receiving Benefits in connection with a mastectomy, Benefits are also provided for the following Covered Health Services, as you determine appropriate with your attending Physician:

- All stages of reconstruction of the breast on which the mastectomy was performed;
- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and
- Prostheses and treatment of physical complications of the mastectomy, including lymphedema.

The amount you must pay for such Covered Health Services (including Copayments and any Annual Deductible) are the same as

*To continue reading, go to right column on this page.*

are required for any other Covered Health Service. Limitations on Benefits are the same as for any other Covered Health Service.

## Statement of Rights under the Newborns' and Mothers' Health Protection Act

Group health plans and health insurance issuers generally may not, under federal law, restrict Benefits for any Hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under federal law, require that a provider obtain authorization from the Plan or the insurance issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

*To continue reading, go to left column on next page.*

# Attachment II

## Summary Plan Description

**Name of Plan:** C.H. Robinson Worldwide, Inc. Welfare Benefit Plan.

**Name, Address and Telephone Number of Plan Sponsor and Named Fiduciary:**

C.H. Robinson Worldwide, Inc.
14701 Charlson Road Suite 1600
Eden Prairie, MN 55347
1-877-692-4791

The Plan Sponsor retains all fiduciary responsibilities with respect to the Plan except to the extent the Plan Sponsor has delegated or allocated to other persons or entities one or more fiduciary responsibility with respect to the Plan.

**Employer Identification Number (EIN):** 41-1883630

**IRS Plan Number:** 501

**Effective Date of Plan:** January 1, 2013

**Type of Plan:** Group health care coverage plan

*To continue reading, go to right column on this page.*

**Name, Business address, and Business Telephone Number of Plan Administrator:**

C.H. Robinson Worldwide, Inc.
14701 Charlson Road Suite 1600
Eden Prairie, MN 55347
1-877-692-4791

**Claims Administrator:** The company which provides certain administrative services for the Plan.

United HealthCare Services, Inc./ Medica Self-Insured
185 Asylum Street
Hartford, CT 06103-3408

The Claims Administrator shall not be deemed or construed as an employer for any purpose with respect to the administration or provision of benefits under the Plan Sponsor's Plan. The Claims Administrator shall not be responsible for fulfilling any duties or obligations of an employer with respect to the Plan Sponsor's Plan.

**Type of Administration of the Plan:** The Plan Sponsor provides certain administrative services in connection with its Plan. The Plan Sponsor may, from time to time in its sole discretion, contract with outside parties to arrange for the provision of other administrative services including arrangement of access to a Network Provider; claims processing services, including coordination of benefits and subrogation; utilization management and complaint resolution assistance. This external administrator is referred to as the Claims Administrator. The Plan Sponsor also has selected a provider network established by United HealthCare Services, Inc./ Medica Self-Insured. The named fiduciary of Plan is C.H. Robinson Worldwide, Inc., the Plan Sponsor.

*To continue reading, go to left column on next page.*

**Person designated as agent for service of legal process:** Service of process may also be made upon the Plan Administrator.

**Source of contributions under the Plan:** There are no contributions to the Plan. All Benefits under the Plan are paid from the general assets of the Plan Sponsor. Any required employee contributions are used to partially reimburse the Plan Sponsor for Benefits under the Plan.

**Method of calculating the amount of contribution:** Employee-required contributions to the Plan Sponsor are the employee's share of costs as determined by Plan Sponsor. From time to time, the Plan Sponsor will determine the required employee contributions for reimbursement to the Plan Sponsor and distribute a schedule of such required contributions to employees.

**Date of the end of the year for purposes of maintaining Plan's fiscal records:** Plan year shall be a twelve month period ending January 1.

**Determinations of Qualified Medical Child Support Orders.**

The Plan's procedures for handling qualified medical child support orders are available without charge upon request to the Plan Administrator.

---

Although the Plan Sponsor currently intends to continue the Benefits provided by this Plan, the Plan Sponsor reserves the right, at any time and for any reason or no reason at all, to change, amend, interpret, modify, withdraw or add Benefits or terminate this Plan or this Summary Plan Description, in whole or in part and in its sole discretion, without prior notice to or approval by Plan participants and their beneficiaries. Any change or amendment to or termination

*To continue reading, go to right column on this page.*

of the Plan, its benefits or its terms and condition, in whole or in part, shall be made solely in a written amendment (in the case of a change or amendment) or in a written resolution (in the case of termination), whether prospective or retroactive, to the Plan. The amendment or resolution is effective only when approved by the body or person to whom such authority is formally granted by the terms of the Plan. No person or entity has any authority to make any oral changes or amendments to the Plan.

Benefits under the Plan are furnished in accordance with the Plan Description issued by the Plan Sponsor, including this Summary Plan Description.

Participant's rights under the Employee Retirement Income Security Act of 1974 (ERISA) and the procedures to be followed in regard to denied claims or other complaints relating to the Plan are set forth in the body of this Summary Plan Description.

## Statement of Employee Retirement Income Security Act of 1974 (ERISA) Rights

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S.

*To continue reading, go to left column on next page.*

Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated Summary Plan Description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of the summary annual report.

### Continue Group Health Plan Coverage

Continue health care coverage for yourself, spouse or dependents if there is a loss of coverage under the Plan as a result of a qualifying event. You or your dependents may have to pay for such coverage. Review this Summary Plan Description and the documents governing the plan on the rules governing your COBRA continuation coverage rights.

Reduction or elimination of exclusionary periods of coverage for preexisting conditions under your group health plan, if you have creditable coverage from another group health plan. You should be provided a certificate of creditable coverage, free of charge, from your group health plan or health insurance issuer when you lose coverage under the plan, when you become entitled to elect COBRA continuation coverage, when your COBRA continuation coverage ceases, if you request it before losing coverage, or if you request it up to 24 months after losing coverage. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after your enrollment date in your coverage.

*To continue reading, go to right column on this page.*

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union, or any other person may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person

*To continue reading, go to left column on next page.*

you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, United States Department of Labor listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publication hotline of the Employee Benefits Security Administration.

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

# Attachment III

## Patient Protection and Affordable Care Act ("PPACA")

### *Grandfathered Health Plan Notice*

This group health plan believes this Plan is a "grandfathered health plan" under the Patient Protection and Affordable Care Act (the Affordable Care Act). As permitted by the Affordable Care Act, a grandfathered health plan can preserve certain basic health coverage that was already in effect when that law was enacted. Being a grandfathered health plan means that your Plan may not include certain consumer protections of the Affordable Care Act that apply to other plans, for example, the requirement for the provision of preventive health services without any cost sharing. However, grandfathered health plans must comply with certain other consumer protections in the Affordable Care Act, for example, the elimination of lifetime limits on benefits.

Questions regarding which protections apply and which protections do not apply to a grandfathered health plan and what might cause a plan to change from grandfathered health plan status can be directed to the Plan Administrator at Plan Administrator's Phone Number. You may also contact the Employee Benefits Security Administration, U.S. Department of Labor at 1-866-444-3272 or www.dol.gov/ebsa/healthreform.

*To continue reading, go to right column on this page.*

This website has a table summarizing which protections do and do not apply to grandfathered health plans.

*To continue reading, go to left column on next page.*

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc.

II

(Attachment IIII)

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc.

III

(Attachment IIII)

*To continue reading, go to right column on this page.*

*To continue reading, go to left column on next page.*

UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc.

IV

(Attachment IIII)

859965 - 11/27/2012

# EXHIBIT 2



LEVENBAUM
TRACHTENBERG
AN INJURY LAW FIRM

October 2, 2014

Sender's Email:
justinhenry@LTinjurylaw.com

C.H. Robinson Worldwide, Inc.
Attn: Heather Blackwell
heather.blackwell@chrobinson.com
1470 Charlson Road, Suite 1600
Eden Prarie, MN 55347

Re: Our Client/Your Insured: David Gay
Date of Injury: 07/09/13

Dear Sir/Madam:

Per your conversation with paralegal Maribel Buford, this letter is a follow up to our letter of April 3, 2014 requesting plan documents pursuant to 29 U.S.C. 1024(b). To date, we have only received the Summary Plan Description. We hope to settle Mr. Gay's personal injury claim in the near future and need the information requested. Please provide the following information:

Written Instrument" (sometimes referred to as "Plan Document", Master Plan", or General Plan";

Amendments to the "Written Instrument" or Plan Document" including but not limited to the medical plan subrogation and/or lien provisions;

The Summary of Material Modifications (SMM) statements;

Copies of all of the above employers ERISA plan contracts;

The Form 5500(s) including all attached schedules and attachments, filed with the U.S. Department of Labor;

Also please provide the determination by the U.S. Secretary of Labor that the above employer's Medical Plan is established or maintained pursuant to a collective bargaining agreement;

Please provide the above requested plan documents to my law firm on behalf of my client. It is preferred if you can e-mail the requested plan documents to this office at Justinhenry@ltinjurylaw.com; Maribel@ltinjurylaw.com. If the documents mentioned above do not exist please let us know in writing. Failure to timely respond to the request will result in my client seeking to offset any reimbursement claim by the Plan with any statutory penalties he is entitled to pursuant to U.S.C. 1132(c) for the plan administrator's failure to provide the plan

(800) 433-5336 • LTinjurylaw.com

Phoenix
362 North Third Avenue
Phoenix, Arizona 85003
(602) 271-0183 - voice
(602) 271-4018 - facsimile

Tucson
333 N. Wilmot Road, Suite 340
Tucson, AZ 85711
(520) 624-7619 - voice
(520) 979-3539 - facsimile

San Diego
402 West Broadway, Ste 400
San Diego, California 92101
(619) 265-2006 - voice
(619) 923-0011 - facsimile

Los Angeles
3500 W. Olive, Ste 300
Burbank, California 91505
(323) 264-7014 - voice
(323) 978-1477 - facsimile

Orange County
4695 MacArthur Court, 11th Flr
Newport Beach, California 92660
(949) 717-7709 - voice
(949) 258-5127 - facsimile

Salt Lake City
299 South Main Street, 13th Floor
Salt Lake City, Utah 84111
(801) 355-4529 - voice
(801) 907-7996 - facsimile

documents within 30 days. As of today, the current statutory penalty is $16,390.00, and continuing to accrue at $110 per day until we receive the requested documents. Please see a copy of our original letter attached.

If you require any additional information, please do not hesitate to contact me directly.

Sincerely,
**LEVENBAUM TRACHTENBERG, PLC**

Justin Henry

MJH/mdb
cc: David Gay

# EXHIBIT 3

**Justin Henry**

---

| | |
|---|---|
| **From:** | Maribel Buford |
| **Sent:** | Tuesday, October 28, 2014 9:20 AM |
| **To:** | heather.blackwell@chrobinson.com |
| **Cc:** | Justin Henry |
| **Subject:** | David Gay - CH Robinson World Wide Inc 000706717 |
| **Attachments:** | CH Robinson Worldwide Inc request plan docs.pdf |

Sometime has passed since we last mailed you the letter attached dated October 2, 2014 regarding our request for the plan documents for David Gay.

Please provide the plan documents at your earliest opportunity.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

# EXHIBIT 4

**Justin Henry**

---

| | |
|---|---|
| **From:** | Heather Blackwell <HEATHER.BLACKWELL@chrobinson.com> |
| **Sent:** | Wednesday, November 05, 2014 11:01 AM |
| **To:** | Maribel Buford |
| **Cc:** | Justin Henry |
| **Subject:** | RE: David Gay - CH Robinson World Wide Inc 000706717 |
| **Attachments:** | CH Robinson Ch Plus 1-1-2013.pdf; ATT00001.txt |

Hello there,
I apologize for the delay. I thought this was previously sent. Attached is the Plan Summary for the C.H. Robinson group medical plan for 2013. Please let me know if you have any questions. Thanks.

**From:** Maribel Buford [mailto:Maribel@ltinjurylaw.com]
**Sent:** Tuesday, October 28, 2014 11:20 AM
**To:** Heather Blackwell
**Cc:** Justin Henry
**Subject:** David Gay - CH Robinson World Wide Inc 000706717

Sometime has passed since we last mailed you the letter attached dated October 2, 2014 regarding our request for the plan documents for David Gay.

Please provide the plan documents at your earliest opportunity.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

# EXHIBIT 5

**Justin Henry**

---

| | |
|---|---|
| **From:** | Justin Henry |
| **Sent:** | Thursday, November 06, 2014 11:41 AM |
| **To:** | Heather Blackwell; Maribel Buford |
| **Subject:** | RE: David Gay - CH Robinson World Wide Inc 000706717 |

Ms. Blackwell,

Thank you for providing the Summary Plan Description for the health plan. However, I also need the actual "written instrument" creating the plan pursuant to 29 U.S.C. s. 1102.

**Justin Henry**
Attorney

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you.

---

**From:** Heather Blackwell [mailto:HEATHER.BLACKWELL@chrobinson.com]
**Sent:** Wednesday, November 05, 2014 11:01 AM
**To:** Maribel Buford
**Cc:** Justin Henry
**Subject:** RE: David Gay - CH Robinson World Wide Inc 000706717

Hello there,
I apologize for the delay. I thought this was previously sent. Attached is the Plan Summary for the C.H. Robinson group medical plan for 2013. Please let me know if you have any questions. Thanks.

**From:** Maribel Buford [mailto:Maribel@ltinjurylaw.com]
**Sent:** Tuesday, October 28, 2014 11:20 AM
**To:** Heather Blackwell

**Cc:** Justin Henry
**Subject:** David Gay - CH Robinson World Wide Inc 000706717

Sometime has passed since we last mailed you the letter attached dated October 2, 2014 regarding our request for the plan documents for David Gay.

Please provide the plan documents at your earliest opportunity.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

**EXHIBIT 6**

**Justin Henry**

---

**From:** Maribel Buford
**Sent:** Wednesday, December 03, 2014 10:46 AM
**To:** Heather Blackwell
**Cc:** Justin Henry
**Subject:** FW: David Gay - CH Robinson World Wide Inc 000706717

Good morning Heather,

I'm following up on Mr. Henry's email of November 6, 2014 regarding the need for the actual "written instrument" creating the plan pursuant to 29 U.S.C. s. 1102. Please see the email exchanges below and let us know how soon we can expect the written instrument.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney-privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

---

**From:** Justin Henry
**Sent:** Thursday, November 06, 2014 11:41 AM
**To:** Heather Blackwell; Maribel Buford
**Subject:** RE: David Gay - CH Robinson World Wide Inc 000706717

Ms. Blackwell,

Thank you for providing the Summary Plan Description for the health plan. However, I also need the actual "written instrument" creating the plan pursuant to 29 U.S.C. s. 1102.

**Justin Henry**

Attorney

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road. Suite 340 / Tucson. AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you.

**From:** Heather Blackwell [mailto:HEATHER.BLACKWELL@chrobinson.com]
**Sent:** Wednesday, November 05, 2014 11:01 AM
**To:** Maribel Buford
**Cc:** Justin Henry
**Subject:** RE: David Gay - CH Robinson World Wide Inc 000706717

Hello there,
I apologize for the delay. I thought this was previously sent. Attached is the Plan Summary for the C.H. Robinson group medical plan for 2013. Please let me know if you have any questions. Thanks.

**From:** Maribel Buford [mailto:Maribel@ltinjurylaw.com]
**Sent:** Tuesday, October 28, 2014 11:20 AM
**To:** Heather Blackwell
**Cc:** Justin Henry
**Subject:** David Gay - CH Robinson World Wide Inc 000706717

Sometime has passed since we last mailed you the letter attached dated October 2, 2014 regarding our request for the plan documents for David Gay.

Please provide the plan documents at your earliest opportunity.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

 

**PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY**
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney-privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

# EXHIBIT 7

**Justin Henry**

| | |
|---|---|
| **From:** | Heather Blackwell <HEATHER.BLACKWELL@chrobinson.com> |
| **Sent:** | Wednesday, December 03, 2014 10:54 AM |
| **To:** | Maribel Buford |
| **Cc:** | Justin Henry |
| **Subject:** | RE: David Gay - CH Robinson World Wide Inc 000706717 |

We do not have a written instrument separate from our SPD.

**From:** Maribel Buford [mailto:Maribel@ltinjurylaw.com]
**Sent:** Wednesday, December 03, 2014 11:46 AM
**To:** Heather Blackwell
**Cc:** Justin Henry
**Subject:** FW: David Gay - CH Robinson World Wide Inc 000706717

Good morning Heather,

I'm following up on Mr. Henry's email of November 6, 2014 regarding the need for the actual "written instrument" creating the plan pursuant to 29 U.S.C. s. 1102. Please see the email exchanges below and let us know how soon we can expect the written instrument.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

**From:** Justin Henry
**Sent:** Thursday, November 06, 2014 11:41 AM

**To:** Heather Blackwell; Maribel Buford
**Subject:** RE: David Gay - CH Robinson World Wide Inc 000706717

Ms. Blackwell,

Thank you for providing the Summary Plan Description for the health plan. However, I also need the actual "written instrument" creating the plan pursuant to 29 U.S.C. s. 1102.

**Justin Henry**
Attorney

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

**From:** Heather Blackwell [mailto:HEATHER.BLACKWELL@chrobinson.com]
**Sent:** Wednesday, November 05, 2014 11:01 AM
**To:** Maribel Buford
**Cc:** Justin Henry
**Subject:** RE: David Gay - CH Robinson World Wide Inc 000706717

Hello there,
I apologize for the delay. I thought this was previously sent. Attached is the Plan Summary for the C.H. Robinson group medical plan for 2013. Please let me know if you have any questions. Thanks.

**From:** Maribel Buford [mailto:Maribel@ltinjurylaw.com]
**Sent:** Tuesday, October 28, 2014 11:20 AM
**To:** Heather Blackwell
**Cc:** Justin Henry
**Subject:** David Gay - CH Robinson World Wide Inc 000706717

Sometime has passed since we last mailed you the letter attached dated October 2, 2014 regarding our request for the plan documents for David Gay.

Please provide the plan documents at your earliest opportunity.

Thank you.

**Maribel D. Buford**
Paralegal

(800) 433-5336
LTinjurylaw.com

PHOENIX / TUCSON / LOS ANGELES / ORANGE COUNTY / SAN DIEGO / SALT LAKE CITY
*362 North 3rd Avenue / Phoenix, Arizona 85003 / P (602) 271-0183 / F (602) 271-4018*
*333 North Wilmot Road, Suite 340 / Tucson, AZ 85711 / P (520) 624-7619 / F (520) 979-3539*
*3500 West Olive, Suite 300 / Burbank, California 91505 / P (323) 264-7014 / F (323) 978-1477*
*4695 MacArthur Court, 11th Floor / Newport Beach, California 92660 / P (949) 717-7709 / F (949) 258-5127*
*402 West Broadway, Suite 400 / San Diego, California 92101 / P (619) 265-2006 / F (619) 923-0011*
*299 South Main Street, 13th Floor / Salt Lake City, Utah 84111 / P (801) 355-4529 / F (801) 907-7996*

The information contained in this e-mail message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (602) 271-0183 reply by e-mail and delete or discard the message. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Levenbaum Trachtenberg PLC for any loss or damage arising in any way from its use. Thank you

************************************************************************************************************************

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of C.H. Robinson. C.H. Robinson accepts no liability for any damage caused by any virus transmitted by this email. (IP)

C.H. Robinson Worldwide, 14701 Charlson Road, Eden Prairie, MN, USA
************************************************************************************************************************

**EXHIBIT 8**



LEVENBAUM
TRACHTENBERG
AN INJURY LAW FIRM

May 20, 2015

Sender's Email:
justinhenry@LTinjurylaw.com

Optum
Attn: Carol McKissick
10701 West Research Drive
WI030-3550, N360
Milwaukee, WI 53226-3452
carol.mckissick.@optum.com

Re: Our Client/Your Insured: David Gay
Date of Injury: 07/09/13
Your File Number: 22992959

Dear Ms. McKissick:

As you are aware, we represent David Gay in a tort claim against Almira Guderjohn for personal injuries he sustained in a motor vehicle collision on July 9, 2013. It is our understanding Optum, on behalf of C.H. Robinson Worldwide, Inc., is claiming it is entitled to reimbursement for medical expenses paid on behalf of David by the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan.

We appreciate some states do not have anti-subrogation statutes or case law, and in such states, the fact the health plan contains subrogation and/or reimbursement lien language may create enforceable lien rights. In Arizona, however, there is a long line of controlling anti-subrogation case law. The common law rule in Arizona is an assignment of a cause of action for personal injuries against a third-party tortfeasor is unenforceable. *E.g., Brockman v. Metropolitan Life Ins. Co.*, 125 Ariz. 249, 609 P.2d 61 (1980) (group health insurance); *Piano v. Hunter*, 173 Ariz. 172, 840 P.2d 1037 (App. 1992) (prohibition against assignment also applies to local school district health trust fund). As such, under Arizona law, the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan does not possess valid and enforceable subrogation and/or reimbursement rights against any recovery obtained by Mr. David.

Optum, however, has alleged the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan is a self-funded employee benefit plan entitled to preemption of Arizona law pursuant to 29 U.S.C. § 1144(a) (express preemption clause), 29 U.S.C. § 1144(b)(2)(A) (savings clause) and 29 U.S.C. § 1144(b)(2)(B) (deemer clause). In an effort to determine whether the Plan is entitled to federal preemption, our office mailed a letter to the Plan Administrator for the C.H. Robinson Worldwide, Inc. Welfare Benefit Plan pursuant to 29 U.S.C. § 1024(b) requesting all applicable plan documents for the health plan, including, but not limited to, the written instrument required by 29 U.S.C. § 1102, the summary plan description required by 29 U.S.C. § 1022, the Administrative Services Contract between the health plan and the claims administrator, and the applicable Form

(800) 433-5336 • LTinjurylaw.com

Phoenix
362 North Third Avenue
Phoenix, Arizona 85003
(602) 271-0183 - voice
(602) 271-4018 - facsimile

Tucson
333 N. Wilmot Road, Suite 340
Tucson, AZ 85711
(520) 624-7619 - voice
(520) 979-3539 - facsimile

San Diego
402 West Broadway, Ste 400
San Diego, California 92101
(619) 265-2006 - voice
(619) 923-0011 - facsimile

Los Angeles
3500 W. Olive, Ste 300
Burbank, California 91505
(323) 264-7014 - voice
(323) 978-1477 - facsimile

Orange County
4695 MacArthur Court, 11th Flr
Newport Beach, California 92660
(949) 717-7709 - voice
(949) 258-5127 - facsimile

Salt Lake City
299 South Main Street, 13th Floor
Salt Lake City, Utah 84111
(801) 355-4529 - voice
(801) 907-7996 - facsimile

5500 filed by the plan.

In response to the request, the Plan Administrator provided a document entitled "Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc. Despite repeated requests to produce the actual "written instrument" for the health plan, the Plan Administrator could not provide one. Finally, the Plan Administrator admitted "We do not have a written instrument separate from our SPD." It would seem the Plan Administrator is attempting to rely on the SPD as the written instrument required under ERISA. However, the Summary Plan Description states otherwise.

On Page 79 of the Summary Plan Description, it provides:

> **Plan Document**
>
> This Summary Plan Description presents an overview of your Benefits. In the event of any discrepancy between this Summary Plan Description and the official Plan Document, the Plan Document shall govern.

Thus, it is clear the SPD is not the written instrument. To the extent Optum intends to produce an affidavit from the Plan Administrator stating the SPD is the plan document, please be advised we will not accept it; nor does the case law support a self-serving affidavit to controvert the plain language of the SPD. *See Prichard v. Metropolitan Life Ins. Co.*, --- F.3d ---, 2015 WL 1783507 at *4 (9th Cir. April 21, 2015) (Plan Administrator's statement that the SPD is the plan document is in sufficient when the language in the plan documents indicate to the contrary).

As such, it is clear C.H. Robinson Worldwide, Inc., as the Plan Sponsor, failed to draft and execute a written instrument providing the health plan with subrogation and reimbursement rights. Accordingly, the health plan does not have any enforceable subrogation or reimbursement rights against any recovery by Mr. Gay.

Please immediately close your file and discontinue your collection efforts against my client. As we advised you previously, this case has settled and your client's continued attempts to assert reimbursement rights are preventing finalization of the case and disburse of the proceeds to my client thereby prejudicing my client.

Sincerely,
**LEVENBAUM TRACHTENBERG, PLC**

Justin Henry

**EXHIBIT 9**

**AFFIDAVIT**

I, Troy A. Renner, being duly sworn according to law, state as follows:

1. I am over eighteen (18) years of age and competent to testify. The statements contained in this Affidavit are based on my own personal knowledge, my review of the attached documents, and are true and correct to the best of my knowledge.

2. I am employed by C.H. Robinson Worldwide, Inc. (hereinafter, the "Plan Sponsor") as its Treasurer. My job duties include, among other things, administration of the UnitedHealthcare Choice Plus Plan for C.H. Robinson Worldwide, Inc. Health Benefit Plan (hereinafter, the "Plan").

3. All benefits under the Plan are paid by the Plan Sponsor from its general assets. Any required employee contributions are used to partially reimburse the Plan Sponsor for the benefits paid under the Plan. No monies are contributed to or set aside in any trust or fund to pay Plan benefits.

6. The payment of the Plan benefits is administered, not insured, by our claims administrator, United HealthCare Services, Inc. All benefit claims are paid from a fund pool, the source of which is the employer and employee. Benefit claims under the Plan are not paid by an insurance company.

7. All of the rights, terms, and conditions related to the operation and administration of the Plan are set forth in the Plan document titled Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc. The Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc. contains the provisions required by ERISA §102 and § 402. Attached hereto is a true and correct copy of the Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc.

8. The Summary Plan Description UnitedHealthcare/Medica Choice Plus Plan for C.H. Robinson Worldwide, Inc. is the ERISA Plan document that is used to govern the administration of the Plan.

FURTHER YOUR AFFIANT SAYETH NOT.

Troy A. Renner, Treasurer

Subscribed and sworn to

before me on this 10th day of

November, 2014.

Notary Public

My commission expires: Jan 31, 2017

SARA ANN BUESGENS
Notary Public-Minnesota
My Commission Expires Jan 31, 2017